# EXHIBIT 2

Exhibit 2 Page 1

FILED
U.S. DISTRICT COURT
DISTRICT OF ALASKA
2003 JUN 24 PH 3: 20

Bruce A. Bookman, Esq.
BOOKMAN & HELM, LLP
810 N. Street, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 279-4889
Facsimile: (907) 279-4851

Attorneys for Plaintiff,
Arctic Circle Enterprises, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

ARCTIC CIRCLE ENTERPRISES, INC.,       )
                                        )
                  Plaintiff,            )
                                        )
vs.                                     )
                                        )
SANDY ROTH and TANDEM IMPORTS, INC.,    )
a WASHINGTON CORPORATION,               )     A 03 - C 139 CV
LAWRENC E H. PRESS d/b/a PIERCE         )
DISTRIBUTORS                            )
                                        )
                  Defendants.           )     Case No. A03-          Civ.(    )
                                        )

### COMPLAINT
### (15 U.S.C. § 1125(a) and § 1114; AS 45.50.471 et. seq.)

COMES NOW plaintiff, Arctic Circle Enterprises, Inc., (hereinafter "Arctic Circle") by and

through its attorneys, Bookman & Helm, and for its complaint against defendants alleges as follows:

### PARTIES

1.      Plaintiff, Arctic Circle, is a corporation duly organized and existing under the laws

of the state of Alaska with its principal place of business in Anchorage, Alaska.

2.      Defendant, Tandem Imports, Inc., is a Washington Corporation, doing business in

Alaska, and Sandy Roth is a resident of the state of Washington. Both defendants are engaged in

trade and commerce in Alaska. Roth is an owner, officer and employee of Tandem Imports, Inc. and

was acting within the course and scope of her employment at all times relevant to the allegations of

the complaint. Lawrence H. Press is a Vermont resident, who does business in Alaska as Pierce

BOOKMAN & HELM, LLP
Attorneys At Law
810 N Street, Suite 200
Anchorage, AK 99501
Telephone: (907) 279-4889
Facsimile: (907) 279-4851

Exhibit 2 Page 2

Distributors and who is acting in concert with defendant Sandy Roth by allowing her to use his Uniform Price Code number on all of her merchandise. Hereinafter all defendants shall be referred to as "Roth."

## JURISDICTION AND VENUE

3.    This is an action for federal trademark infringement and federal unfair competition under the provision of the Trademark Act of 1946, 15 U.S.C. §1051 et seq., particularly under 15 U.S.C. §1125(a) and §1114; for violation of Alaska's Unfair Business Practices and Consumer Protection Act, AS 45.50.471, et seq., for common law trade name infringement and unfair competition; for breach of contract, and for tortious interference with prospective economic advantage.

4.    This court has jurisdiction over the subject matter of this claim pursuant to 15 U.S.C. §1121 and 28 U.S.C §1331, as well as the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. §1367.

5.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTS COMMON TO ALL COUNTS

6.    Arctic Circle is engaged in the business of wholesale manufacturing and importing tourist goods and souvenirs for sale to retailers in Alaska and the Pacific Northwest. Among the goods that Arctic Circle sells are various kinds of dolls, photo albums, mugs, playing cards, small vials of gold flakes, umbrellas, hats, golf balls and candles. Arctic Circle has been in business for over 45 years and has developed a large number of distinctive products which are manufactured in P.R. China by Keystar International Ltd. in Hong Kong, Hvar International Co. in Taipei, Ideal Gift Ltd., Hong Kong and Golden Shell International Gifts (hereinafter "Suppliers").

BOOKMAN & HELM, LLP
Attorneys At Law
810 N Street, Suite 200
Anchorage, AK 99501
Telephone: (907) 279-4889
Facsimile: (907) 279-4851

7.     Over the course of many years, Arctic Circle has sold its goods to certain Alaska retailers, namely, David Coates and Kathy Fleener at Dockside Trading and Ketchikan Mining Company in Ketchikan, Alaska, Toni and Neal Murphy at Glacier Bear Gifts in Juneau, Dennis Corrington at Skagway Outlet Store and Skagway Brewing Co. of Skagway, Alaska, and Craig Carson at Great Alaska Clothing Co. Ketchikan, Alaska (hereinafter "Retailers").

8.     Arctic Circle has a registered trademark "Alaska Friends"  Registration No. 2,155,444, which it has used continuously for over 5 years on various plush toys, stuffed toys, soft sculpture toys, dolls, and stuffed toy animals.

9.     On January 11, 2000, Arctic Circle hired Roth as a product development employee at an annual salary of $70,000.  Roth signed an employment contract in which she agreed not to disclose or use the confidential information belonging to Arctic Circle at any time during or after her employment with Arctic Circle terminated.  She further agreed that for a period of 24 months following her termination, she would not compete with Arctic Circle nor would she solicit any customer, vendor or supplier of Arctic Circle to do business with a competitor of Arctic Circle.  Ex. A hereto is a true copy of the agreement signed by Roth and Arctic Circle.

10.     During her employment with Arctic Circle, Roth gained access to the confidential business information of Arctic Circle including knowledge of its designs, costs, pricing, suppliers, customers and sales data.  During her employment, Arctic Circle sent her to Asia to work with its Suppliers.

11.     On November 14, 2000, Roth terminated her employment with Arctic Circle effective December 1, 2000.  Ex. B.  Arctic sent her a letter of November 15, 2000, reminding her of her obligations under her employment contract for the two years following her termination.  Ex. C. Pursuant to the employment contract, Arctic Circle paid Roth $25,000 per year for the two years following her termination until December 2002.

BOOKMAN & HELM, LLP
Attorneys At Law
810 N Street, Suite 200
Anchorage, AK 99501
Telephone: (907) 279-4889
Facsimile: (907) 279-4851

COMPLAINT
*Arctic Circle Enterprises Inc. v. Roth*
Case No.                                    Page 3 of 9

Exhibit 2 Page 4

12.    Prior to December 1, 2002, Roth arranged for Arctic Circle's Suppliers to copy many of the goods in Arctic Circle's product line in order to sell them to Arctic Circle's Retailers at lower prices. Prior to December 1, 2002, Roth contacted, solicited and placed orders with Arctic Circle's Suppliers in China.  Prior to December 1, 2002, she solicited and took sales orders from Arctic Circle's Retailers in Alaska. All of these actions were in direct competition with Arctic Circle and constituted a breach of her employment contract.

13.    Arctic Circle's Suppliers produced the copied goods ordered by Roth, and Roth has sold them and continues to sell them in large quantities to Arctic Circle's Retailers for resale during the 2003 tourist season in Southeast Alaska. Arctic Circle believes that she may have sold as much as $800,000 worth of copied goods to Arctic Circle's Retailers.

14.    The goods produced and sold by Roth are deceptively similar to those of Arctic Circles, and Roth's goods have the capacity and are likely to deceive, cause confusion and mistake as to the origin, sponsorship or approval of Roth's goods with Arctic Circle's commercial activities. Examples of some of Roth's goods that are deceptively similar to Arctic Circle's goods are the

| | |
|---|---|
| Totem box, | Ex. D. page 1 |
| Baseball cap, | Ex. D. page 1 |
| Knit watch cap, | Ex. D. page 2 |
| Dipper playing cards, | Ex. D. page 2 |
| Chenille husky dog, | Ex. D. page 2 |
| Coffee mug, | Ex. D. page 3 |
| Gold vial, | Ex. D. page 3 |
| Large Photo album, | Ex. D. page 4 |
| Eskimo Doll | Ex. D. page 4 |

To date, Arctic Circle has discovered that Roth has copied approximately 50 products that are deceptively similar to products offered by Arctic Circle.  For the "Totem Box" listed above, Roth

BOOKMAN & HELM, LLP
Attorneys At Law
810 N Street, Suite 200
Anchorage, AK 99501
Telephone: (907) 279-4889
Facsimile: (907) 279-4851

had Arctic Circle's supplier use Arctic Circle's own product mold that Arctic Circle paid for and that was designed by Arctic Circle's art department on April 14, 2000. In general, Roth's goods are of inferior quality and will tend to damage Arctic Circle's goodwill and reputation in the business community.

15.     Without the knowledge or permission of Arctic Circle, Roth has labeled her chenille husky dog and other products as "Frontier Alaska Friends" which infringes on Arctic Circle's registered trademark "Alaska Friends" used by Arctic Circle on a similar chenille husky dog toy. Ex. D. page 2. By virtue of her employment at Arctic Circle, Roth had actual knowledge of Arctic Circle's registered trademark "Alaska Friends."

16.     Roth has mislabeled her 10 inch porcelain-face doll, her plush angel ornament and other dolls as "Handcrafted Alaska Native Dolls" which falsely implies that the dolls are hand crafted, made in Alaska or made by Alaska Natives. Ex. E. Roth's misrepresentation was and is material and made with the intent that others rely upon it in connection with the sale of the goods.

17.     Both Arctic Circle and Roth sell identical small vials filled with liquid and containing pieces of gold leaf in the liquid; however, Roth has falsely labeled the gold vials she sells by attaching them to cards that state that the gold is "Exclusively Mined for Alaska" falsely implying that the gold was mined and was mined in Alaska. Ex. D. page 3. Roth's misrepresentations were and are material and made with the intent that others rely upon them in connection with the sale of the goods.

18.     Upon information and belief, the activities of Roth set forth herein constitute willful, malicious and intentional infringement on Arctic Circle's trademark and common law and statutory rights and were commenced and have continued despite Roth's knowledge that the sale of deceptively similar goods and use of "Alaska Friends" on stuffed animal toys was and is in direct contravention of Arctic Circle's rights.

BOOKMAN & HELM, LLP
Attorneys At Law
810 N Street, Suite 200
Anchorage, AK 99501
Telephone: (907) 279-4889
Facsimile: (907) 279-4851

19.    By reason of the acts of Roth alleged herein, Arctic Circle has sustained actual damages in excess of $1,000,000.  In addition, Arctic Circle has suffered, is suffering and will continue to suffer damages and irreparable harm to its goodwill and customer relationships, and, unless Roth is restrained from her wrongful conduct, the damage to Arctic Circle will be greatly increased.

20.    Though some damages may be quantified, Arctic Circle has no adequate remedy at law for the destruction of its business relationships with its Retailers and its good will.

21.    On June 5, 2003, Arctic Circle sent a cease and desist letter to Roth demanding that Roth stop her unlawful actions.  Ex. F.  Roth has not stopped any of her unlawful acts.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

22.    Arctic Circle repeats and realleges the allegations contained in paragraphs 1 through 21 above.

23.    Roth's conduct as alleged above in connection with the promotion and sale of her goods using Arctic Circle's registered trademark constitutes trademark infringement in violation of section 32 of the Lanham Act, 15 U.S.C §1114.

## COUNT II
## FEDERAL UNFAIR COMPETITION

24.    Arctic Circle repeats and realleges the allegations contained in paragraphs 1 through 21 above.

25.    Roth's conduct as alleged above in connection with the promotion and sale of her goods in Alaska constitutes unfair competition, false advertising, false designation of origin and false or misleading description of fact, in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

COMPLAINT
*Arctic Circle Enterprises Inc. v. Roth*
Case No.                                    Page 6 of 9

BOOKMAN & HELM, LLP
Attorneys At Law
810 N Street, Suite 200
Anchorage, AK 99501
Telephone: (907) 279-4889
Facsimile: (907) 279-4851

Exhibit 2 Page 7

## COUNT III
## UNFAIR COMPETITION UNDER ALASKA LAW

26.    Arctic Circle repeats and realleges the allegations contained in paragraphs 1 through 21 above.

27.    The acts of Roth constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Alaska's Unfair Business Practices and Consumer Protection Act, AS 45.50.471(3), (11) and (12) and at common law.

## COUNT IV
## BREACH OF CONTRACT

28.    Arctic Circle repeats and realleges the allegations contained in paragraphs 1 through 21 above.

29.    Roth has materially breached her contract of employment by soliciting Arctic Circle's Suppliers and Retailers within 24 months of her termination of employment.

30.    Roth has materially breached her contract of employment by competing with Arctic Circle by booking sales orders within 24 months of her termination of employment.

31.    Roth has materially breached her contract of employment by disclosing and using confidential information of Arctic Circle in order to compete directly with Arctic Circle in the sale of goods to Arctic Circle's Retailers.

## COUNT V
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE
## ECONOMIC ADVANTAGE

32.    Arctic Circle repeats and realleges the allegations contained in paragraphs 1 through 21 above.

33.    Arctic Circle had prospective business relationships with its Retailers, and Roth, knowing of these relationships, intentionally prevented or lessened those relationships by selling to the Retailers inferior, lower cost goods that were deceptively similar.

BOOKMAN & HELM, LLP
Attorneys At Law
810 N Street, Suite 200
Anchorage, AK 99501
Telephone: (907) 279-4889
Facsimile: (907) 279-4851

34.    Roth's conduct constituted a malicious, unprivileged and unjustified interference with Arctic Circle's prospective business relationship and has caused Arctic Circle damages as set forth herein.

WHEREFORE, Arctic Circle prays for the following relief

1.    That defendants their agents, employees, attorneys, any related business entities and all persons acting for, with, by, through or under them be preliminarily enjoined during the pendency of this action and thereafter be permanently enjoined and restrained from the manufacture and sale of products that are so deceptively similar to those of Arctic Circle as to create a likelihood of confusion, mistake or deception.

2.    That defendants be ordered to buy back from the Retailers and destroy all unsold merchandise that is so deceptively similar to those of Arctic Circle as to create a likelihood of confusion, mistake or deception, and that Roth and Tandem Imports, Inc. be ordered to deliver up for destruction all advertisements, catalogs, products or other similar material in her possession or under her control that are so deceptively similar to those of Arctic Circle as to create a likelihood of confusion, mistake or deception.

3.    That pursuant to U.S.C. §1116, defendants  and their agents, employees, attorneys, any related business entities and all persons acting for, with, by, through or under them be preliminarily enjoined during the pendency of this action and thereafter be permanently enjoined and restrained from using on or in connection with the importation, sale, offering for sale or distribution of her goods the Arctic Circle trademark "Alaska Friends" and any other marks or words that are confusingly or deceptively similar to Arctic Circle's trademark.

4.    That defendants be required to account to Arctic Circle for the profits they have made, and that Arctic Circle be awarded damages incurred as a result of their actions in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a), §32 of the Lanham Act, 15 U.S.C. §1114, and AS 45.50.471.

BOOKMAN & HELM, LLP
Attorneys At Law
810 N Street, Suite 200
Anchorage, AK 99501
Telephone: (907) 279-4889
Facsimile: (907) 279-4851

5.     That defendants compensate Arctic Circle for its lost sales profits and other actual damages in an amount in excess of $1,000,000.

6.     That Arctic Circle be awarded treble damages pursuant to §35 of the Lanham Act, 15 U.S.C. §1117(a) and AS45.50.531(a).

7.     That Arctic Circle be awarded punitive damages in excess of $1,000,000.

8.     That pursuant to 15 U.S.C §1117 and AS 45.50.537(a) Arctic Circle be awarded its actual reasonable attorney's fees and costs incurred in bringing this action.


DATED at Anchorage, Alaska this 24th day of June, 2003.

                          BOOKMAN & HELM, LLP
                          Attorneys for Plaintiff
                          Arctic Circle Enterprises, Inc.

                          By:_____
                              Bruce A. Bookman
                              Alaska Bar # 6802002

**BOOKMAN & HELM, LLP**
Attorneys At Law
810 N Street, Suite 200
Anchorage, AK 99501
Telephone: (907) 279-4889
Facsimile: (907) 279-4851

COMPLAINT
*Arctic Circle Enterprises Inc. v. Roth*
Case No.                                    Page 9 of 9

Exhibit 2 Page 10

# Arctic Circle Enterprises, Inc.

Corporate Offices and Showroom:  3812 Spenard Rd. #100, Anchorage, Alaska 99517-2679
Phone: 907-272-4366 • Fax: 907-272-4122 • Alaska Toll Free: 800-478-2234

January 7, 2000

Ms. Sandy Roth
4560 NE 89th St.
Seattle, WA  98115

**Re:    Offer of Employment**

Dear Sandy:

We are pleased to offer you employment with Arctic Circle Enterprises, Inc. starting on February 1, 2000.  This letter sets forth certain terms, conditions and benefits related to this offer of employment.

You agree to perform all duties as may be assigned from time to time which relate to Arctic Circle's business or the business of its subsidiaries.  You agree to devote your entire productive time, ability, attention and effort to Arctic Circle's business and will skillfully serve its interests during your employment.  Your annual salary will be $70,000, less all customary and required payroll deductions, which will be paid in substantially equal installments and at the same intervals as other employees are paid.  You will receive three weeks of paid vacation per year.  You will also be entitled to participate, subject to and in accordance with applicable eligibility requirements, in other employee benefit programs.

You and Arctic Circle agree that the maximum term of your employment will be three years from your start date.  You and Arctic Circle further agree that you are not guaranteed employment for three years because Arctic Circle is an "at-will" employer, which means that either you or Arctic Circle may terminate your employment at any time, for any reason or no reason at all, with or without notice. Unless terminated sooner by you or Arctic Circle, your employment will expire automatically on February 1, 2003.  Upon termination of your employment, all compensation and benefits shall terminate, except as follows:

[02882-0026/PA003670.315]

Ms. Sandy Roth
January 7, 2000
Page 2

If Arctic Circle terminates your employment at any time before completion of your first year of employment, you will receive your monthly salary for the number of months necessary to complete your first year of employment, plus $50,000 per year for two years, all of which shall payable over the twenty-four month period following your termination. This amount will be subject to all customary and required payroll deductions, and will be paid in substantially equal installments and at the same intervals as other employees are paid beginning the first month following the termination of employment.

If you voluntarily quit your employment at any time before completion of your first year of employment, you will receive your monthly salary for the number of months necessary to complete your first year of employment, plus $25,000 per year for two years, all of which shall be payable over the twenty-four month period following your termination. This amount will be subject to all customary and required payroll deductions, and will be paid in substantially equal installments and at the same intervals as other employees are paid beginning the first month following the termination of employment.

Example: Based on an annual salary of $70,000, your monthly rate of pay is $5,833.33. If your employment ends on July 31, 2000, you receive approximately $35,000 (6 months x $5,833.33), plus either $50,000 per year or $25,000 per year for two years from the date of your termination.

Arctic Circle's confidential and proprietary information is among the company's most important assets. As a condition of employment, you must sign the Non-Competition and Nonsolicitation Agreement, and the Agreement to Avoid Conflicts of Interest, included with this letter.

By accepting employment with Arctic Circle, you represent and warrant that your employment with Arctic Circle will not violate or conflict in any way with any other employment duties to which you may be bound.

[02882-0026/PA003670.315]

Ms. Sandy Roth
January 7, 2000
Page 3


     To accept this offer, please sign the acknowledgement below and the enclosed agreements, and return the documents to me. We look forward to working with you!

               Very truly yours,

               Mitchell D. Godfred
               President

Enclosures

ACKNOWLEDGED AND ACCEPTED:

_SANDY ROTH_____  (206) 524-5060
Print Name

_____  Jan 11th, 2000
Signature             Date

## Agreement to Avoid Conflicts of Interest

This Agreement is entered into by and between **Arctic Circle Enterprises, Inc.** ("The Company") and **Sandy Roth** ("Employee") as of the date first written below.

### Recitals

A.  The Company is engaged in the business of wholesale marketing of Alaska souvenirs and apparel and corporate ad specialty merchandise at various locations throughout the State of Alaska.

B.  The Company's Confidential Information is among its most important assets.  "Confidential Information" means any confidential, proprietary or trade secret information of the Company, whether of a technical, business or other nature, including, without limitation, information about the identity of and the Company's contracts and relationships with its customers, suppliers, sources of supplies, and vendors; information regarding the market conditions prevailing in the Company's market areas; and information regarding the Company's manufacturing techniques, business plans, strategies, projections, exciting new product lines, and similar information and know-how.

C.  In the course of their employment, employees of the Company learn and acquire Confidential Information.

D.  It is in the best interests of the Company that Employee remain undivided in her loyalty to the Company and that neither Employee nor her immediate family, friends or customers use Confidential Information acquired in the course of Employee's employment in any manner that competes or conflicts with the Company's business or interests.

Now, therefore, in consideration of the mutual benefits, duties, rights, obligations and continued employment with and for the Company, Company and Employee agree:

### Agreements

1.  **No Conflicts of Interest .**  Employee agrees that neither she nor any member of her household or immediate family, friends or customers shall engage directly or indirectly, as an owner, employee, officer, director, shareholder, partner, or principal, or become otherwise affiliated with, any business entity in the State of Alaska, other than the Company, that is engaged in the business of wholesale marketing of Alaska souvenirs and apparel and corporate ad specialty merchandise, or that is engaged in any other activity that competes with the business of the Company or whose interests conflict with those of the Company.

2.  **Amendments**.  This Agreement may be amended only by a written instrument signed by both the Company and the Employee.

3.  **Severability.**  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision, and any partially invalid or unenforceable provision shall be enforced to the fullest extent permitted by applicable law.

4.  **Governing Law.**  This Agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of Alaska.

Date _Jan. 11th, 2000_   Employee _Sandy Roth_
                                   _SANDY ROTH_
                                   (Please Print Name)

Date _JANUARY 13, 2000_   By _Michael Dooley_
for Arctic Circle Enterprises, Inc.   Its _PRESIDENT_

### Non-Competition and Nonsolicitation Agreement

This Agreement is entered into by and between **Arctic Circle Enterprises, Inc.** (the "Company") and **Sandy Roth** ("Employee") as of the date first written below.

### Recitals

A.  The Company is engaged in the business of wholesale marketing of Alaska souvenirs and apparel and corporate ad specialty merchandise at various locations throughout the State of Alaska.

B.  The Company's Confidential Information is among its most important assets.  "Confidential Information" means any confidential, proprietary or trade secret information of the Company, whether of a technical, business or other nature, including, without limitation, information about the identity of and the Company's contracts and relationships with its customers, suppliers, sources of supplies, and vendors; information regarding the market conditions prevailing in the Company's market areas; and information regarding the Company's manufacturing techniques, business plans, strategies, projections, exciting new product lines, and similar information and know-how.

C.  In the course of their employment, employees of the Company learn and acquire Confidential Information.

D.  The Company's business would be harmed, and the security of its employees jeopardized, if any employee of the Company either disclosed the Company's Confidential Information to competitors of the Company or left the Company's employment and became engaged in or initiated a competing business.

E.  The Company and its employees have therefore agreed that it is in their mutual best interests that every employee of the Company, including but not limited to top management level employees, enter into a non-competition agreement with the Company substantially similar to this Agreement.

Now, therefore, in consideration of the mutual benefits, duties, rights, obligations and continued employment with and for the Company, Employee and Company agree:

### Agreement

1.  **Agreement Not to Disclose Confidential Information.**  Employee acknowledges that the Company's Confidential Information constitutes valuable, special, and unique assets of the Company's business, access to and knowledge of which are essential to the performance of Employee's duties.  Employee will not, during or at any time after the term of her employment, disclose the Company's Confidential Information to any person, partnership, corporation, or other entity for any reason or purpose whatsoever; nor shall Employee make use of any of the Company's Confidential Information for her own purposes or for the benefit of any person, partnership, corporation or other entity (except the Company) under any circumstances during or after her employment.

2.  **Agreement Not to Compete.**  During her employment and for a period of twenty-four (24) months after termination of her employment with the Company for any reason, Employee agrees not to compete with the Company, directly or indirectly, in the wholesale marketing of Alaska souvenirs and apparel and corporate ad specialty merchandise within two hundred fifty (250) miles of any city or village in which the Company is doing business or has taken any step toward beginning to do business at the time Employee's employment with the Company terminates.  Employee agrees that she shall not engage in any such competing business in her individual capacity or as an employee, officer, director, owner, partner or principal of any business entity that competes with the Company.

3. **Nonsolicitation**.  Employee shall not for herself, nor on behalf of any other person, firm, partnership, corporation, or other entity, directly or indirectly (1) solicit, request, encourage, or advise any employee or consultant of the Company to cease his or her relationship with the Company, and/or (2) solicit, request, encourage, or advise any employee or consultant of the Company to become employed by Employee or any person, firm partnership, corporation, or other entity which employs Employee or with which Employee is associated.  Employee shall not for herself, nor on behalf of any other person, firm, partnership, corporation, or other entity, directly or indirectly solicit, influence, entice or in any way divert any past, present, or prospective customer, distributor, partner, joint venturer, vendor or supplier of the Company to do business or in any way become associated with any competitor, or request, encourage or advise any past, present, or prospective customer, distributor, partner, joint venturer, vendor or supplier of the Company to discontinue any business or decline to contract with the Company.  This paragraph 3 shall apply during the time period and geographical area described in paragraph 2 hereof.

4. **Enforcement**.  Employee agrees that any breach or threatened breach by her of this Agreement will cause the Company irreparable harm and injury.  Employee agrees that in the event of such breach or threatened breach, the Company will have the right to obtain a restraining order and/or an injunction to restrain any breach by Employee, Employee's partners, agents, servants, employers, and employees, and all persons acting for or with Employee.  Employee agrees that any bond required of the Company in connection with any restraining order or preliminary injunction shall not exceed $500.  The Company's right to an injunction pursuant to this Agreement shall be in addition to any other right the Company has against Employee for any breach or threatened breach of this Agreement.  Employee agrees that if she breaches or threatens to breach this Agreement, Employee will pay reasonable attorneys' fees and court costs incurred by the Company in restraining and remedying such breach or threatened breach, and in otherwise enforcing this Agreement.

5. **Survival**.  This Agreement shall survive the termination of Employee's employment with the Company hereunder, regardless of who initiated the termination.  For purposes of this Agreement, the "Company" shall include any and all subsidiaries of Arctic Circle Enterprises, Inc., and any business venture in which Arctic Circle Enterprises, Inc. or its subsidiaries may participate.

6. **Amendments/Assignment**.  This Agreement may be amended only by a written instrument signed by both the Company and the Employee.  This Agreement shall not be assignable by Employee.  The Company may assign its rights hereunder to (a) any corporation resulting from any merger, consolidation or other reorganization to which the Company is a party or (b) any corporation, partnership, association or other person to which the Company may transfer all or substantially all of the assets and business of the Company existing at such time.  All of the terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of and be enforceable by the parties hereto and their respective successors and permitted assigns.

7. **Severability.**  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision, and any partially invalid or unenforceable provision shall be enforced to the fullest extent permitted by applicable law.

8. **Governing Law.**  This Agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of Alaska.

Date _Jan. 1/14, 2000_ Employee _____

_____
(Please Print Name)

Date _JANUARY 13, 2000_  By _____
for Arctic Circle Enterprises, Inc.  Its _PRESIDENT_

[02882-0026/PA993350.033]

Exhibit _A_
Page _16_ of _16_
Exhibit 2 Page 16

Nov. 14th, 2000

Arctic Circle Enterprises

Attn: Mr. Gordon Godfred
        Mr. Mitchell Godfred

        Re: Resignation Notice

Please kindly accept this letter as my notice to resign from my current employment with
Arctic Circle Enterprises.  Effective Dec. 1st, 2000, I intend to start pursuing a new career
in a different industry.  Please be assured that I will complete my pending projects, both
in sales and import before my departure.

Thank you very much for your kindness and friendship.


Sincerely,

Sandy Roth

# Arctic Circle Enterprises, Inc.

Corporate Offices and Showroom:  3812 Spenard Rd. #100, Anchorage, Alaska 99517-2679
Phone: 907-272-4366 • Fax: 907-272-4122 • Alaska Toll Free: 800-478-2234
aceak2@pobox.alaska.net

November 15, 2000

Ms. Sandy Roth
4560 NE 89th Street
Seattle, Wa 98115

Re:  **Continuing Obligations to Arctic Circle**

Dear Sandy:

In connection with the recent termination of your employment with Arctic Circle, I am writing to remind you of your continuing obligations under the Non-Competition and Nonsolicitation Agreement which you signed (copies of which are attached).  In summary:

1. You have agreed not to, at any time during or after your employment, disclose the confidential information of Arctic Circle to any person or entity for any reason, or to use it yourself for any purpose.

2. You have agreed, for a period of 24 months from the termination of your employment, not to compete, directly or indirectly, with Arctic Circle in the wholesale marketing of Alaska souvenirs and apparel and corporate ad specialty merchandise within 250 miles of any city or village in which Arctic Circle currently does business of has taken any steps toward beginning to do business.  This includes not competing either in your individual capacity or as an employee, officer, director, owner, partner or principal of any entity that competes with Arctic Circle.

3. You have agreed not to, directly or indirectly, solicit, request, encourage or advise any employee or consultant of Arctic Circle to cease his employment or relationship with Arctic Circle or to become employed by you or any entity with which you become affiliated.  The same time period and geographical limits described in paragraph 2 above apply here.  You have also agreed not to solicit or encourage any customer, distributor, partner, joint venturer, vendor or supplier of Arctic Circle to either cease doing business with Arctic Circle or to begin doing business with a competitor of Arctic Circle.

As I said above, I am writing at this time simply to remind you of these continuing obligations.  Be assured that Arctic Circle will take whatever actions might be necessary to enforce its rights in this regard.

Very truly yours,

Mitchell Godfred

Exhibit  C
Page  1  of  1

Exhibit 2 Page 18



Baseball Cap by
Arctic Circle



Roth Copy



Totem Box by Arctic Circle



Roth Copy



Totem Box by Arctic Circle                     Roth Copy

Exhibit    D

Page    1   of   4

Exhibit 2 Page 19



Knit Watch Cap by
Arctic Circle



Roth Copy



Dipper Playing Cards by
Arctic Circle



Roth Copy



Roth Copy
Frontier Alaska Friends



Arctic Circle
Husky Alaska Friends TM

Exhibit ___D___
Page ___2___ of ___4___

Exhibit 2 Page 20



Mug by Arctic Circle



Mug by Arctic Circle



Roth Copy



Roth Copy



Gold Vial by Arctic Circle



Arctic Circle's Gold Vial Next to Roth's Vial Mounted
on Cardboard

Exhibit 2 Page 21

Exhibit __D__
Page __3__ of __4__



Arctic Circle Doll
Alaska Friends TM



Roth Copy



Large Photo Album by
Arctic Circle



Roth Copy