# EXHIBIT 9

Exhibit 9 Page 1

RECEIVED
MAR 1 5 2004
Carney Badley Spellman

Bruce A. Bookman, Esq.
BOOKMAN & HELM, LLP
810 N. Street, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 279-4889
Facsimile: (907) 279-4851

Attorneys for Plaintiff,
Arctic Circle Enterprises, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ARCTIC CIRCLE ENTERPRISES, INC.,          )
                                          )
                Plaintiff,                )
                                          )
vs.                                       )
                                          )
SANDY ROTH, TANDEM IMPORTS, INC.,         )
a WASHINGTON CORPORATION,                 )
LAWRENCE H. PRESS d/b/a PIERCE            )
DISTRIBUTORS, and KEYSTAR                 )
INTERNATIONAL, LTD.                       )
                                          )
                Defendants.               )    Case No. A03-139 CV (JWS)
                                          )

**SECOND AFFIDAVIT OF MITCHELL GODFRED**

I, Mitchell Godfred, being first duly sworn, state:

1.      I am the president of Arctic Circle Enterprises, Inc., and I make this affidavit upon my personal knowledge.

2.      Arctic Circle is presently engaged in the business of wholesale manufacturing and importing tourist goods and souvenirs for sale to retailers in Alaska and the Pacific Northwest. We are a family-owned business and usually have about 65 employees in our Alaska operation. We are not a particularly large company. There are hundreds of suppliers of gift ware to the Alaska market. We do not dominate nor control the market. For example, defendant Keystar

BOOKMAN & HELM, LLP
Attorneys At Law
810 N Street, Suite 200
Anchorage, AK 99501
Telephone: (907) 279-4889
Facsimile: (907) 279-4851

Exhibit 9 Page 2

International, Ltd. is a multi-national company with offices in Hong Kong, Seattle, Taiwan and is likely larger than Arctic Circle.

3.    I believe that David Coates may be involved in Ms. Roth's business. As shown by Exhibit A hereto, in 2002 Arctic Circle' Alaska operation sold goods worth $626,350 to Mr. Coates' businesses. In 2003, he only ordered $176,409 in goods from our Alaska operation, a decline of 72%. We observed that during the summer of 2003, Mr. Coates's stores were heavily engaged in retailing most of Ms. Roth's line of imitation goods.   Because of the drastic decline in his orders to us we concluded that he had decided to make Ms. Roth his major supplier. During the summer of 2003, Mr. Coates began selling an imitation of a key chain that we had copyrighted the year before.   In fact, we believe that he supplied our key chain to a manufacturer in order to make a cheaper copy. His sales took place in spite of the fact that we advised him of our copyright. We have also learned that Mr. Coates has begun to sell to other retailers thus competing with us. For these reasons, we decided not to do business with him in the coming season. We are not "punishing" him or trying to drive him out of business. We are just reacting to Mr. Coates' decisions to use other suppliers and to compete with us.   His claim that we charged him more for our goods than we charged others is misleading.   Like most businesses, our prices depend on the quantities ordered.

4.    Mr. Coates' claims that we have driven other, smaller companies out of business are untrue. Kipmik, cited by Coates as an example,  is still in business and has not complained to us about our business practices. We did sue P.C. Marketing on a copyright violation, they paid our claim and are still in business as far as I know.   Johnson Pacific is a national gift ware company in Oregon and is still in business.   Bloom Bros. made no complaint against us. Bloom Bros. owned Indian Arts & Crafts for a time and was part of Vaughn Communications. Vaughn Communications was a very large business, and we believe that Indian Arts & Crafts had almost

SECOND AFFIDAVIT OF MITCHELL GODFRED
*Arctic Circle Enterprises Inc. v. Roth*
Case No. A03-139 CV (JWS)                    Page 2 of 4

Exhibit 9 Page 3

$8 Million in gross sales. Bloom Brothers approached us to see if we wanted to buy Indian Arts & Crafts, but their art work was outdated and their inventory was poor. There was really nothing of value to buy. We did not cause Indian Arts & Crafts to fail. It had been a family-owned business for 50 years and then was sold and owned by 4 different companies in 5 years.

5.    Ms. Roth's statements about Chinese culture and the absence of business records are not credible. I have done business with Keystar for many years and they kept detailed and complete records of our transactions. When I visited them at their offices, they showed me their extensive file on Arctic Circle. I have had similar experiences with other Chinese suppliers. Ms. Roth worked for Arctic Circle and she worked for Indian Arts & Crafts for almost 20 years. She kept records all during that time. Howard Lowen, the former owner of Indian Arts & Crafts, would testify that it kept extensive records of its transactions. The IRS requires that businesses keep documentation of its sales. It is a misdemeanor not to keep required tax records. Ms. Roth is a U.S. citizen and she and Tandem Inc. will have to file federal tax returns. She will have to document her gross revenue and her costs of goods sold. We believe that she did almost a million in sales in 2003. The souvenir market is composed of very large quantities of many different kinds of small items that are relatively inexpensive. Our Alaska retailers, and Ms. Roth's, are not Chinese, and they demand written confirmations of purchases in order to record their costs and to facilitate reordering of profitable items. Ms. Roth's statement that she has all her records in her head is absurd.

Mitchell Godfred

BOOKMAN & HELM, LLP
Attorneys At Law
810 N Street, Suite 200
Anchorage, AK 99501
Telephone: (907) 279-4889
Facsimile: (907) 279-4851

SECOND AFFIDAVIT OF MITCHELL GODFRED
*Arctic Circle Enterprises Inc. v. Roth*
Case No. A03-139 CV (JWS)        Page 3 of 4

Exhibit 9 Page 4

Sworn before me this 9th day of March 2004, in Anchorage, Alaska, by Mitchell Godfred.

Notary Public for Alaska
Commission Date: 3 - 21 - 05

I HEREBY CERTIFY that on this 10th day
of March, 2004, a true and correct copy
of the foregoing document was served by
first-class mail, postage pre-paid on:

Erin B. Marston
Marston & Cole P.C.
745 West 4th Ave. Suite 502
Anchorage, Alaska 99501

Kenneth S. Kagan
Carney Badley Spellman, P.S.
700 Fifth Ave. Suite 5800
Seattle, Washington 98104-5017

Mary G. Rearden

BOOKMAN & HELM, LLP
Attorneys At Law
810 N Street, Suite 200
Anchorage, AK 99501
Telephone: (907) 279-4889
Facsimile: (907) 279-4855

SECOND AFFIDAVIT OF MITCHELL GODFRED
*Arctic Circle Enterprises Inc. v. Roth*
Case No. A03-139 CV (JWS)                Page 4 of 4

Exhibit 9 Page 5

PURCHASES FROM ARCTIC CIRCLE ENT., INC.

| Summary | | | 2002 | | 2003 | |
|---|---|---|---|---|---|---|
| 100993 | DOCKSIDE TRADING | | $ | 239,733.00 | $ | 79,149.00 |
| 101255 | KETCHIKAN MINING CO | | $ | 32,614.00 | $ | 11,705.00 |
| 101758 | KETCHIKAN OUTLET STORE | | $ | 8,430.00 | $ | 3,452.00 |
| 101664 | SKAGWAY MINING COMPANY | | $ | 268,199.00 | $ | 69,400.00 |
| 100532 | GREAT ALASKAN GIFTS | | $ | 77,374.00 | $ | 12,703.00 |
| | | | $ | 626,350.00 | $ | 176,409.00 |

# EXHIBIT 10

Exhibit 10 Page 1

1
C. Craig Holley                                    The Honorable J.W. Sedwick
Linville Clausen Linton & Holley, PLLC
2
800 Fifth Avenue, Suite 3850
Seattle, WA 98104
3
Telephone (206) 515-0640
Facsimile (206) 515 0646
4

5
Attorneys for defendants Sandy Roth,
Tandem Imports, Inc., and Lawrence H. Press
6
d/b/a Pierce Distributors

7
UNITED STATES DISTRICT COURT

8
FOR DISTRICT OF ALASKA

9

10
ARCTIC CIRCLE ENTERPRISES, INC.         )
                                                                      )
                      Plaintiff,                                )
11                                                                    )
        v.                                                         )
12                                                                    )
SANDY ROTH and TANDEM IMPORTS, INC. )
13
and LAWRENCE H. PRESS d/b/a PIERCE    )
DISTRIBUTORS,                                           )
14                                                                    )
                      Defendants.                          )
15                                                                    )    Case No. A-03-0139 CV
                                                                      )
16
_____)

17
**DECLARATION OF DAVID LEE COATES, JR.**

18
        1.        I am the owner of Dockside Trading Company, Ketchikan Mining Company and The

19
Outlet Store in the State of Alaska.

20
        2.        The retail business includes, among other items, various novelty, souvenir, and

21
clothing items for sale to tourists visiting our state.

22
        3.        The tourist business is extremely important to the overall economy of Alaska and my

23
livelihood, as well as that of many others, depends on that trade.

24

25

DECLARATION OF DAVID   COATES - 1

LINVILLE CLAUSEN & LINTON PLLC
800 FIFTH AVENUE · SUITE 3850
SEATTLE, WASHINGTON 98104
(206) 515-0640 · FAX (206) 515-0846

Exhibit 10 Page 2

4.    Accordingly, it is extremely important to me and others in the business, that there be fair, open and honest competition in the marketplace so that we may provide the best goods at the best price through our retail outlets.

5.    I invested with others in the purchase of all rights of the company formerly known as Indian Arts and Crafts, including rights to all original designs of that company.

6.    On January 1, 2003, I sold a twenty five percent (25%) undivided interest in Indian Arts and Crafts' rights regarding its designs to Sandy Roth.

7.    One of my retail stores, Dockside Trading Company, purchases souvenir items from Arctic Circle Enterprises, Inc.

8.    I have reviewed the Complaint and Mr. Godfred's Affidavit in Support of Motion for Preliminary Injunction. Exhibit A, pages 5 of 6 to Mr. Godfred's affidavit shows pictures of "polystone" totem poles and a totem box allegedly copied by Ms. Roth.

9.    Ms. Roth did not import this totem pole or totem box. The samples found in our store, Dockside Trading Company, were indeed Arctic Circle Enterprises, Inc. supplied merchandise, i.e., sold to us by Arctic Circle Enterprises.

10.    Dockside Trading Company assigns a vendor number for each of its 170 different suppliers. Our vendor number for Arctic Circle Enterprises, Inc. is 128. The totem poles bear the number 12831099 and were therefore sold to us by Arctic Circle Enterprises, Inc. The totem box bears the number 12831073 and was therefore also sold to us by Arctic Circle Enterprises, Inc.

11.    Accordingly, the allegations regarding Ms. Roth copying or "knocking off" those items are utterly false.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF

**DECLARATION OF DAVID  COATES - 2**

LINVILLE CLAUSEN & LINTON PLLC
800 FIFTH AVENUE · SUITE 3850
SEATTLE, WASHINGTON 98104
(206) 515-0640 · FAX (206) 515-0646

Exhibit 10 Page 3

WASHINGTON THE FOREGOING IS TRUE AND CORRECT.

DATED this ____14ᵗʰ____ day of September, 2003, at Ketchikan,

Alaska.

_David Lee Coates, Jr._

David  Lee Coates, Jr.

Exhibit 10 Page 4

# EXHIBIT 11

Exhibit 11 Page 1

Sandy Roth                                                              May 20, 2004

RECEIVED

AUG 23 2004

KEENE & CURRALL

Page 1

COPY

```
 1              UNITED STATES DISTRICT
 2         FOR THE DISTRICT OF ALASKA
 3    ------------------------------------------------
 4    ARCTIC CIRCLE ENTERPRISES, INC.,    ) No. A03-139 CV (JWS)
                                          )
 5                    Plaintiff,          )
                                          )
 6              vs.                       )
                                          )
 7    SANDY ROTH and TANDEM IMPORTS, INC., )
      a Washington corporation, LAWRENCE H. )
 8    PRESS d/b/a PIERCE DISTRIBUTORS,    )
      KEYSTAR INTERNATIONAL LIMITED,      )
 9                                        )
                      Defendants.         )
10
      ------------------------------------------------
11
              Videotaped Deposition Upon Oral Examination Of
12                        SANDY ROTH
13    ------------------------------------------------
14
15
16
                         May 20, 2004
17                    Seattle, Washington
18
19
20
21         REPORTED BY: Cathy M. Zak, CCR# 1922
22            SEATTLE DEPOSITION REPORTERS
            600 University Street, Suite 320
23            Seattle, Washington  98101
                     206.622.6661
24                  1.800.657.1110
                Fax:  206.622.6236
25          courtreporters@seadep.com
```

Sandy Roth

May 20, 2004

Page 58

1    Q  Did they give you orders before they faxed you
2  the order?
3    A  We sat over the Christmas dinner and he was
4  telling me -- he asked me am I legal to practice this
5  business.  He went to Gatlinburg show.  He found a lot of
6  good deals.  He has three suppliers he has in mind.  He
7  asked me who is this guy, who is this guy, who is that guy.
8  All these people were my old customers when I was with
9  Indian Trading Company in Taiwan.
10       So he say they are going to start designing
11  this and this and this for me.  Can you get me some of the
12  stuff?  So I say, yeah, I can try.  He said, are you sure
13  you can get them in for the season?  I say, yeah, I can try.
14  So he say, well, you are the best in this industry.  You
15  know our merchandise, so can we try some, so he did.
16    Q  So this was at a Christmas dinner or --
17    A  Christmastime.
18    Q  Christmastime?
19    A  They came here for Christmas.
20    Q  They came to Seattle?
21    A  Yes.
22    Q  Did you cook them dinner?
23    A  We were cooking dinner.  They cook dinner.  I
24  cook dinner.  We were there about two, three hours.  I was
25  requested to spend three nights there.

Page 59

1    Q  You were requested to spend three nights there?
2    A  They would love me to stay there for two, three
3  nights.
4    Q  In Kechikan?
5    A  In Kent.
6    Q  Oh, in Kent at their place in Kent.  I see.
7  Where were you living then?
8    A  Downstairs guest room.
9    Q  No, before you stayed at their house.
10    A  I still live where I live now.
11    Q  So you spent a couple of days with them or
12  three days with them?
13    A  We are family friends.  I think Gordon can
14  testify to that.
15    Q  And at that time, did Mr. Coates have a list of
16  items he was looking for a source for?
17    A  Not really a list of items source for.  He just
18  go through the Indian Arts and Crafts old catalog.  He told
19  me he purchase the right to use Indian Arts and Crafts'
20  artwork.  He would like to get some forget-me-not stuff.  He
21  would like to get this and that and that and that.  Can you
22  do it?  Some item I turn down because I didn't know where my
23  suppliers are such as the socks guy, so I say, well, I have
24  faith in my brother, so I took -- most of the items belong
25  to my brother and the rest of the items, say I don't know.

Page 60

1  I'd get back to you.
2    Q  And when you say your brother, are you
3  referring to Brownson?
4    A  Keystar, Brownson, yes.
5    Q  And that's how he decided or that's how the
6  decision was made of what you would try to get for him from
7  Keystar?
8    A  Correct.  He also tell me similar items he
9  already place order with Arctic Circle, but he didn't have
10  the faith I could bring it in the spring, so he say, it
11  doesn't matter I order from them.  I order from you too, so
12  in case we had duplicate inventory, we'll just use it up in
13  two years.
14    Q  Was one of the items the photograph albums?
15    A  What he order from me?
16    Q  Yes.
17    A  Yes.
18    Q  Did he tell you what he thought were his best
19  sellers from the year before?
20    A  He didn't tell me the best seller.  He told me
21  what he wants.  I'm sure if he wants something, it must be
22  okay item.  Don't you think?  Or he needs it or inventory
23  running low.
24    Q  So did you tell him what had been best sellers
25  back in '95?

Page 61

1    A  I think Mr. Coates has a lot of retail
2  experience ever since day when he owned Schellerer's.  He's
3  very good at record keeping what he buys.  I don't need to
4  tell him what sells.  He tells me what sells.
5    Q  So you didn't have that discussion?
6    A  No.  Don't forget, I also left the industry for
7  a few years.
8    Q  I know.
9    A  He knows more than I did.
10    Q  Do you know when those faxes from Coates came
11  in to you, the faxed orders?
12    A  End of January, February.  When the merchandise
13  started coming in March, then he realize he need to give me
14  the quantity for each store to sort, so I don't remember
15  when was the PO got.
16    Q  Let me show you Exhibit 4 which has a lot of
17  blackouts and ask if you can identify that exhibit.
18    A  Okay.
19    Q  Can you identify it?
20    A  Yeah.
21    Q  What is it?
22    A  It's Sandy number 1, number 2, 2003 orders,
23  yeah.
24    Q  From Mr. Coates's stores?
25    A  Yeah, it look like the format.

SEATTLE DEPOSITION REPORTERS
(206)622-6661 * (800)657-1110

www.seadep.com

FAX: (206)622-6236
03797e4f-26d7-4c08-b256-e7ede1e78ab5

Exhibit 11 Page 3

Sandy Roth                                                                                May 20, 2004

---

Page 62

1    Q  So these were the orders that you got in by
2  fax?
3    A  Yes.
4    Q  And you threw them away?
5    A  Correct, because after I ship the merchandise,
6  its invoice, what's the point of keeping these?
7    Q  Did Mr. Coates give you any samples of what he
8  wanted during that Christmas vacation dinner?
9    A  No, I was in — most of the items are from
10  Indian Arts and Crafts' catalog and no sample needed. I can
11  go to brother and say item number 1234, Indian Arts and
12  Crafts, and he knows what it is.
13    Q  And so the items that he picked out of the
14  Indian Arts and Crafts catalog that you felt you could get,
15  those items were then manufactured exactly as they looked in
16  the Indian Arts and Crafts catalog?
17    A  I think so. I know so, yes, otherwise I would
18  hear from my customer, I'm sure.
19    Q  On these orders which are Exhibit 4, did you
20  save them until Coates physically got his product that he
21  ordered?
22    A  I save them when I invoice them and then I
23  trash them.
24    Q  You threw them away at the time you invoiced
25  them?

Page 63

1    A  Right.
2    Q  What would you have done if they questioned
3  your invoice and said, wait, you have the wrong quantity on
4  something; we didn't order that?
5    A  Well, it all depends on the relationship then.
6  Sometimes I ship more. Sometimes I ship less because of
7  case pack is different. I always write a note, say, this is
8  more than what you order. We have to adjust the quantity
9  because of the carton pack or minimum order. Dave always
10  say, no problem, just do it.
11    Q  So you didn't have to save their order. You
12  could throw it away?
13    A  Dave Coates and I went back to '90s. We are
14  the best friends. The daughter was born as a baby. We
15  become very close family friends. He trusted me. He
16  doesn't think I'm going to gouge him. Price is going to be
17  different. He doesn't think I'm going to adjust the
18  quantity because of the order because Indian Arts
19  and Crafts never practiced that way, so I think he trust me
20  not to do that.
21    Q  But for the 2004 season, you're saving all your
22  transactions with Mr. Coates?
23    A  Yeah, because I got litigation right now.
24  That's why I learned I need to do some bookkeeping now.
25    Q  I noticed that the invoices that you sent to

Page 64

1  Coates or his stores, up in the corner where it said PO, it
2  just had somebody's name, Sherry, Kathy, and so on, Toni.
3    A  That's how Indian Arts and Crafts practice.
4    Q  How did you know which items went on the
5  invoice to Sherry and Kathy or Toni when what you had were
6  faxed orders that said Sandy 1, Sandy 2, Sandy 3?
7    A  Well, under these stores is Kechikan Mining,
8  Dockside Trading, Kechikan Outlet Store, Skagway Mining
9  Company, so the store manager at Dockside is Kathy, so when
10  I put in the invoice, who did I order, who does — Indian
11  Arts and Crafts' practice is this when we invoice the
12  merchandise, we invoice based on the owner of the company,
13  the store, so if Kathy manages Dockside Trading, we
14  immediately put down purchase order by Kathy. We don't say
15  purchase order by Dave.
16    Q  There were some purchase orders by Dave.
17    A  All the orders were purchased by Dave.
18    Q  Pardon?
19    A  All the orders were given to me by Dave.
20         (Mr. G. Godfred exits.)
21
22    Q  (By Mr. Bookman) Dave gave you all the orders?
23    A  Right. Kathy never gave an order.
24    Q  Or Toni or Sherry?
25    A  (Shakes head negatively.)

Page 65

1    Q  So he gave you the orders and what you did is
2  just put down the manager of each store?
3    A  Correct.
4    Q  For the orders?
5    A  Right.
6    Q  How did you know which items were going to
7  which stores?
8    A  Look at sorting spreadsheet he get me.
9    Q  So this was useful for that then, wasn't it?.
10    A  Yes, for invoicing.·
11    Q  Why did you use Sandy 1, Sandy 2, Sandy 3 in
12  your —
13    A  That was not my computer keeping. That's his
14  computer keeping, so I don't know. You should ask
15  Mr. Coates.
16    Q  Were these orders all given at once or were
17  they all the orders were — of Sandy 1 were given at one
18  time, Sandy 2 was given at another time?
19    A  Well, all the orders were given me verbally a
20  few item at a time, so when did he do Sandy 1? I don't
21  know. When did he do Sandy 2? I don't know. I got the
22  last version of Sandy however number it is. I never look at
23  the top and say what version is this.
24    Q  And when he gave you verbal orders, he noted
25  which store it was for?

17 (Pages 62 to 65)

---

SEATTLE DEPOSITION REPORTERS
www.seadep.com          (206)622-6661 * (800)657-1110          FAX: (206)622-6236
03797e4f-26d7-4c08-b256-e7ede1e76ab5

Exhibit 11 Page 4

Sandy Roth

May 20, 2004

**Page 86**

1    A  Yes.

2    Q  Do you recall what their e-mail addresses are?

3    A  All go through Keystar because Keystar always

4  forward attachment.

5    Q  What directions did you give your artists on

6  the photo albums for the 2003 season?

7    A  Indian Arts and Crafts — Dave Coates, first

8  thing he say, I need a photo album with some map design on

9  it, so he give me the specs.  Then he went through Indian

10  Arts and Crafts' 2000 catalog or 1998.  I don't remember

11  which year.  2000.  And there was a map design.  Then he

12  give me JC Marketing photo album sample of map with animals

13  on it, so he say, you know, somewhere look like this, so I

14  send those samples and the black and white copy of Indian

15  Arts and Crafts' catalog clipping and then I mail it to

16  Keystar.

17    Q  When did he give you these catalog things?  Was

18  that at Christmastime?

19    A  Indian Arts and Crafts' catalog?

20    Q  Yeah.

21    A  January.

22    Q  So this didn't take place in the Christmas

23  meeting?

24    A  No.

25    Q  This was in January?

**Page 87**

1    A  Right.  December is the old Indian Arts and

2  Crafts reorder merchandise.

3    Q  In December, you were just reordering?

4    A  Forget-me-not and all the old stuff.

5    Q  The old stuff?

6    A  Right.

7    Q  So then in January, did you personally meet

8  with Mr. Coates?

9    A  They were here throughout January during the

10  holiday season, I think, either that or by phone.  Then he

11  told me page number.  Do you have 2000 catalog?  If you

12  don't, I send you a copy.

13    Q  Did you have the 2000 catalog?

14    A  Not anymore.  I think counsel has everything in

15  file.

16    Q  I mean, when he called you, did you have the

17  2000 catalog?

18    A  No.

19    Q  When he called you, did you have the Arctic

20  Circle catalog?

21    A  I have Arctic Circle 2000 catalog, yes, because

22  I work for them in 2000.

23    Q  Did Mr. Coates make any reference to the Arctic

24  Circle catalog?

25    A  No.

**Page 88**

1    Q  So Mr. Coates said he wanted a photo album with

2  an antique map of Alaska?

3    A  That's 2004, I decided I want antique map.

4    Q  For 2003, what was your discussion with

5  Mr. Coates about the photo album?

6    A  Can I find the photo album look like Indian

7  Arts and Crafts' 2000 da, da, da, da, and he was on the

8  catalog page something and I would like to have beige color

9  and I would like to have one color print and that's what he

10  told me.

11    Q  Did he tell you —

12    A  He send me JC Marketing sample.

13    Q  He sent you a JC Marketing sample?

14    A  Correct.

15    Q  He didn't send you an Arctic Circle sample?

16    A  No, it was paper.

17    Q  It was a flat paper?

18    A  Yes.

19    Q  And did he discuss whether he wanted flat paper

20  or embossed plastic?

21    A  He say it look Indian Arts and Crafts' 2000

22  catalog.

23    Q  Well, that was flat paper, wasn't it?

24    A  No, it was embossed.

25    Q  The plastic and —

**Page 89**

1    A  Stamped.

2    Q  Stamped?

3    A  Yeah.

4    Q  Do you recall if those were there when you were

5  there?

6    A  Indian Arts and Crafts did an embossed design.

7  When I was there, it's a big dipper design.

8    Q  It wasn't the map design?

9    A  It wasn't the map.

10    Q  So that design came after you left?

11    A  Right, but I did have a map design with

12  wildlife on T-shirt in 1990 and '91.  In Alaska, the

13  supplementary artwork is very universal.  If it's not a map,

14  it's wildlife.  If it's not wildlife, it's wild flowers, so

15  we all use the same material.

16    Q  So Lu Fei did the artwork for the album?

17    A  Correct.

18    Q  For 2003?

19    A  Right.

20    Q  And this was done in January?

21    A  It was done January, February.

22    Q  And you don't have a copy of what she did?

23    A  No.  As a matter of fact, all the artists, they

24  send me the e-mail revision three, four times.  The sample

25  comes in.  Look good.  I didn't see any compelling reason to

23 (Pages 86 to 89)

SEATTLE DEPOSITION REPORTERS
(206)622-6661 * (800)657-1110
www.seadep.com
FAX: (206)622-6236
03797e4f-26d7-4c08-b256-e7ede1e76ab5

Exhibit 11 Page 5

Sandy Roth                                                                May 20, 2004

Page 146

1   A   No.
2   Q   Do you now have any overseas bank accounts?
3   A   No.
4   Q   And Tandem doesn't have any overseas bank
5   accounts?
6   A   No.
7   Q   And from spring of 2002 to the end of 2002, you
8   earned no income?
9   A   Correct. I had income from Arctic Circle
10  non-compete.
11  Q   Right. And let's see. When Brownson came to
12  Seattle in June or July of 2002 --
13  A   Right.
14  Q   -- he stayed with you?
15  A   Yes.
16  Q   And his wife and daughter?
17  A   Right.
18  Q   And did you discuss business?
19  A   I would say we were more interested in how many
20  accounts he has at Keystar, who he sells to, what sells in
21  his market because Keystar has 150 accounts in the United
22  States, I think he told me, what his plan about growing
23  his business and investment in China and so, more about
24  personal instead of business -- business about I go to
25  industry and so on, more like how Keystar want to develop.

Page 147

1   Q   So he told you how Keystar wanted to develop?
2   A   Right.
3   Q   At that point, he had had 150 customers in
4   America?
5   A   I think that's what he said, worldwide or --
6   Q   Worldwide?
7   A   I think so.
8   Q   And did you talk about the Alaska trade?
9   A   No. Actually, I wasn't in.it, so, therefore,
10  we spent most of the time looking for school for the
11  daughter and finding a place to live for the daughter and
12  the wife.
13  Q   Did you talk about Mr. Press, his account?
14  A   Did we talk about Mr. Press? No, it was more
15  personal vacation.
16  Q   When did you find out that Steve Hogberg had
17  possession of the rights of Indian Arts and Crafts?
18  A   Was December 2002, Dave came to me and say he
19  purchase the rights with Steve Hogberg to own the IAAC
20  merchandise artwork.
21  Q   Did you understand that Dave and Steve were --
22  A   50/50.
23  Q   -- half and half?
24  A   Yes.
25  Q   And did you then come to an agreement with

Page 148

1   Mr. Coates that you could use the Indian Arts and Crafts
2   work to make products for him?
3   A   That's what Mr. Coates offer, I sell you 25
4   percent of the whole thing.
5   Q   Mr. Coates sold you 25 percent of the whole
6   thing?
7   A   50 percent of what he has.
8   Q   I see. Did you pay him for that?
9   A   Yeah.
10  Q   How much did you pay him?
11  A   Dollar.
12  Q   So you're a 25 percent owner?
13  A   Yes. It was more like a shake-hands deal.
14  Q   Nothing in writing?
15  A   I don't think there was writing. I remember a
16  very short sentence, one piece of paper maybe. I don't
17  recall.
18  Q   He didn't just give you the right to use the
19  artwork and their concepts to produce things for him?
20  A   No, he said I have 20 (sic) percent of right to
21  use IAAC merchandise.
22  Q   You said you have 25 percent?
23  A   25 percent of the whole thing.
24          (Exhibit No. 26 marked
25              for identification.)

Page 149

1   Q   (By Mr. Bookman) Can you identify this
2   document that consists of several pages?
3   A   It's Dennis Corrington purchase order.
4   Q   To you at Tandem Imports?
5   A   Yes.
6   Q   And is he asking you to have your own UPC code?
7   A   Right.
8   Q   Didn't you tell him that you couldn't do it?
9   A   Right, this is a request. I called him back.
10  I said I don't have bar code.
11  Q   And this document is dated December 19, 2002?
12  A   Correct.
13  Q   You think that's the date he faxed it to you?
14  A   I don't know that date he faxed to me. This is
15  the date he print out a PO.
16  Q   So by December 19th, 2002, you were taking
17  orders from Mr. Corrington?
18  A   I would say I get artwork ready and I send him
19  the artwork and that's the extent of it. I didn't know I
20  was going to get an order.
21  Q   When did you get the artwork ready?
22  A   Couple days before this. The same day that he
23  saw it.
24  Q   And so you sent him the artwork. You didn't
25  send him a sample?

38 (Pages 146 to 149)

SEATTLE DEPOSITION REPORTERS
www.seadep.com                    (206)622-6661 * (800)657-1110                    FAX: (206)622-6236
03797e4f-26d7-4c08-b256-e7ede1e76ab5

Exhibit 11 Page 6

Sandy Roth                                                                                              May 20, 2004

Page 202

1    Q  Do you recall how much you had to pay --
2    A  No.
3    Q  -- in that lawsuit?
4    A  No, Howard settle it.
5    Q  Did he settle it or did it go to trial?
6    A  I don't think there was a trial. I don't
7    remember. I think Howard Lowen has better understanding of
8    that case than I do.
9    Q  Well, we'll probably depose him too. Do you
10   have any information on how tourists react to various
11   souvenir goods in retail stores?
12       A  No. I would say since I left the industry in
13   1996, I don't go to stores anymore. I used to go five
14   months -- about three trips in the summer to go to store to
15   do the inventory, but since 1996, I went in the store. Like
16   last year, I went in to say hello to customer and they left.
17   I wasn't long enough to understand what customers say.
18       Q  Do you think that the photo album that you
19   used -- the photo album cover that you used in 2003 could
20   have been mistaken for the one that Arctic Circle used in
21   the mind's of a tourist consumer?
22       A  Well, I'd have to see their album with our
23   album side by side to decide that. Even so, Alaska map is a
24   map. You cannot remove Anchorage or Juno out of map.
25       Q  The question is whether you think a tourist

Page 203

1    might think they were the same?
2        A  Just like porcelain doll you just show me, they
3    all look alike. Don't they? I really can't answer that
4    question. I can't. I'm not a consumer.
5        Q  Have you ever copied a Ty or T-Y product?
6        A  Have I ever copy a T-Y product? No.
7        Q  I noticed that in your invoices some of your
8    goods were labeled, you know, Ty something or you had used
9    the name Ty to identify one of the --
10       A  Oh, no, no, no, that's a factory abbreviation.
11       Q  T-Y?
12       A  No, the factory is Tau* something, Tau Nguyen*
13   or something. That's abbreviation. It has nothing to do
14   with T-Y company. They're too big of a company you want to
15   knockoff. They'll sue you. I don't think you want to go
16   there.
17       Q  Do you know how much business you did with
18   Coates in 2003?
19       A  I don't think I ever add it up.
20       Q  Could be $770,000?
21       A  If that's the number, you got all the invoices.
22   People ask me today how much business do I do. I don't know
23   how much business do I do because I don't add them. One
24   invoice at a time. That's all I do.
25       Q  Did Coates ever offer you a position in

Page 204

1    Skagway?
2        A  No, we were talking -- he was asking me do I
3    want to be his partner when he went into Skagway.
4        Q  When was that conversation?
5        A  Skagway was opened 2002, 2001. I don't
6    remember when he opened Skagway. Skagway store should be
7    only two, three years old, so must be 2001. Yeah, I think
8    2001.
9        Q  And you responded that you didn't want to?
10       A  Skagway is not a town I want to live.
11       Q  He wanted you to live there?
12       A  To manage his store.
13       Q  Are you doing business now with Steve Hogberg
14   in any way?
15       A  No. You know what? He's my competition.
16       Q  But he has the right to do these Indian Arts
17   and Crafts products too?
18       A  So do I.
19       Q  Can you do the same ones that he does?
20       A  Yes, if it's old Indian Arts and Crafts
21   merchandise. If it's new merchandise, I wouldn't.
22       Q  In your earlier affidavit, you stated that you
23   had introduced Mitchell Godfred to Hvar and Keystar.
24       A  I did not introduce him to Hvar and Keystar.
25   Hvar and Keystar would not do business with Arctic Circle

Page 205

1    until I left Indian Arts and Crafts in '95. It's their
2    choice.
3        Q  So you weren't the one that introduced Mitchell
4    to Hvar and Keystar?
5        A  No, Mitchell got a supplier name from software,
6    so he know who they are. He had been e-mailing them. They
7    said they don't want to do business with them.
8        Q  But he did business with them before he hired
9    you, didn't he?
10       A  Did he do business with them? Yes, after I
11   left Indian Arts and Crafts.
12       Q  So the statement in your affidavit wasn't
13   really correct then?
14       A  I interpret --
15       MR. KAGAN: Objection. Counsel, do you
16   have a copy of it to show her?
17       MR. BOOKMAN: Yeah, I do, but I don't want
18   to take the time to find it.
19       A  I did introduce Mitchell to other vendors.
20       Q  (By Mr. Bookman)  Yeah.
21       MR. KAGAN: Well, I'm going to instruct
22   her not to adopt the truthfulness of something that's not in
23   front of her.
24       MR. BOOKMAN: Let's go off the record for
25   a second.

'. (Pages 202 to 205)

SEATTLE DEPOSITION REPORTERS
www.seadep.com                  (206)622-6661 * (800)657-1110                  FAX: (206)622-6236
03797e4f-26d7-4c08-b256-e7ede1e76ab5

Exhibit 11 Page 7

**Paul L. Davis**
Email:  paul.davis@klgates.com
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
420 L Street, Suite 400
Anchorage, AK  99501-1971
Phone:  907-276-1969
Fax: 907-276-1365

**Gregory Wesner,** *Pro Hac Vice*
Email:  gregory.wesner@klgates.com
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA  98104-1158
Phone:  206-623-7580
Fax: 206-623-7022

**J. Michael Keyes,** *Pro Hac Vice*
**Brooke Kuhl,** *Pro Hac Vice*
Email:  mike.keyes@klgates.com
Email:  brooke.kuhl@klgates.com
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
618 West Riverside Avenue, Suite 300
Spokane, WA  99201
Phone:  509-624-2100
Fax: 509-456-0146

Attorneys for Defendant
Alaska-Juneau Mining Company, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| **ARCTIC CIRCLE ENTERPRISES, LLC.,** | |
| Plaintiff, | **Case No. 3:06-cv-00170-TMB** |
| v. | **AFFIDAVIT OF J. Michael Keyes** |
| **ALASKA-JUNEAU MINING COMPANY LLC.,** | |
| Defendant. | |

**Exhibit 12 Page 1 through Exhibit 12 Page 9** withheld pursuant to Protective Order filed February 6, 2007, designated "ATTORNEYS' EYES ONLY."  Exhibit will be provided to counsel and courtesy copy to Honorable Timothy M. Burgess.

# EXHIBIT 13

Exhibit 13 Page 1

Erin B. Marston
MARSTON & COLE, P.C.
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501
(907) 277-8001

FILED

MAY 2 3 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____Deputy
11:21

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| ARCTIC CIRCLE ENTERPRISES, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SANDY ROTH and TANDEM IMPORTS, | ) |
| INC., a WASHINGTON CORPORATION, | ) |
| and KEYSTAR INTERNATIONAL, LTD. | ) |
| | ) |
| Defendants. | ) |
| | ) Case No. A03-139 CV (JWS) |

### STIPULATION FOR DISMISSAL WITH PREJUDICE

Defendants and Counterclaimants, by and through counsel, Marston & Cole, P.C., and plaintiff, Arctic Circle Enterprises, Inc., through counsel, Bookman & Helm, LLP, stipulate to dismiss the above-captioned case, including all counterclaims, with prejudice, each party to bear its own costs and fees.

DATED this 19th day of May, 2005, at Anchorage, Alaska.

MARSTON & COLE, P.C.
Attorneys for Defendants and Counterclaimants

By: _Erin B. Marston_
Erin B. Marston
Alaska State Bar No. 8511177

LAW OFFICES OF
**MARSTON
& COLE, P.C.**
745 WEST FOURTH AVENUE
SUITE 502
ANCHORAGE, AK 99501
TEL. (907) 277-8001
FAX (907) 277-8002

*Arctic Circle Enterprises, Inc. v. Roth, et al. Case No. A03-139 CV (JWS), Stipulation for Dismissal with Prejudice*
*Page 1 of 3*

Exhibit 13 Page 2    168

DATED this 20th day of May, 2005, at Anchorage, Alaska.

BOOKMAN & HELM, LLP
Attorneys for Plaintiff

By: _Bruce A. Bookman_

Bruce A. Bookman
Alaska State Bar No. 6802002

**FILED**

MAY 2 4 2005

### ORDER

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

By _____ Deputy

HAVING REVIEWED the stipulation of the parties, IT IS HEREBY ORDERED that

the above-captioned matter, including all counterclaims, is DISMISSED WITH

PREJUDICE, each party to bear its own costs and fees.

DATED this 24th day of May, 2005, at Anchorage, Alaska.

_John W. Sedwick_

John W. Sedwick
U.S. District Court Judge

A03-0139--CV (JWS)  5-24-05
-----------------------------------------------------------------
B. BOOKMAN
G. CURRALL
E. MARSTON (MARSTON)

LAW OFFICES OF
**MARSTON
& COLE, P.C.**
745 WEST FOURTH AVENUE
SUITE 502
ANCHORAGE, AK 99501
TEL. (907) 277-8001
FAX (907) 277-8002

*Arctic Circle Enterprises, Inc. v. Roth, et al. Case No. A03-139 CV (JWS), Stipulation for Dismissal with Prejudice*
*Page 2 of 3*

Exhibit 13 Page 3

Certificate of Service

I certify that on the _____ day of
May, 2005, a copy of the
foregoing document was sent to
the following parties by mail

Bruce Bookman, Esq.
Bookman & Helm, LLP
810 N St., Ste. 200
Anchorage, Alaska 99501

LAW OFFICES OF
**MARSTON
& COLE, P.C.**
745 WEST FOURTH AVENUE
SUITE 502
ANCHORAGE, AK 99501
TEL. (907) 277-8001
FAX (907) 277-8002

By:_____

*Arctic Circle Enterprises, Inc. v. Roth, et al.  Case No. A03-139 CV (JWS), Stipulation for Dismissal with Prejudice*
*Page 3 of 3*

Exhibit 13 Page 4