**Paul L. Davis**
Email: paul.davis@klgates.com
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
420 L Street, Suite 400
Anchorage, AK 99501-1971
Phone: 907-276-1969
Fax: 907-276-1365

**Gregory F. Wesner**
Email: gregory.wesner@klgates.com
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Phone: 206-623-7580
Fax: 206-623-7022

**J. Michael Keyes**
**Brooke Castle Kuhl**
Email: mike.keyes@klgates.com
Email: brooke.kuhl@klgates.com
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
618 West Riverside Avenue, Suite 300
Spokane, WA 99201
Phone: 509-624-2100
Fax: 509-456-0146

Attorneys for Defendant
Alaska-Juneau Mining Company, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| **ARCTIC CIRCLE ENTERPRISES, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**ALASKA-JUNEAU MINING COMPANY LLC.,**<br><br>Defendant. | **Case No. 3:06-cv-00170-TMB**<br><br>**DEFENDANT ALASKA-JUNEAU MINING COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

## I.  INTRODUCTION AND SUMMARY OF THE ARGUMENT

Alaska-Juneau Mining Company, LLC ("AJMC") respectfully submits this memorandum in support of its motion for summary judgment on the copyright infringement action brought on behalf of Arctic Circle Enterprises, Inc. ("ACE").[1]  ACE claims to own the rights in an Alaska Map Photo Album Design (the "ACE Alaska Map Photo Album Design" or "ACE Design").  Setting aside for the moment that ACE did not, in fact, own the necessary rights when it sued AJMC—a violation of Federal Copyright law[2]--AJMC is entitled to summary judgment as set forth herein.

AJMC is entitled to summary judgment based on the settlement agreement reached in *Arctic Circle Enterprises, Inc. v. Roth, et al.*, Civil Action No. A-03-0139.  *ACE v. Roth* was filed in this Court, presided over by the Honorable John Sedwick, and involved a claim by ACE regarding its purported rights to the ACE Design, the exact same Design at issue in this case.  That case was resolved through a written settlement agreement whereby ACE fully and finally settled any and all claims, "known or unknown" and "of any nature whatsoever" against several parties,

---

[1]     The named plaintiff in this case is Arctic Circle Enterprises, LLC, a Washington limited liability company.  However, the Copyright Registrations attached as Exhibits to the Complaint indicate that Arctic Circle Enterprises, Inc. is the copyright author and claimant.  *See* Affidavit of David Coates ("Coates Aff."), ¶ 12, Ex. 7, p. 10-11; p. 13-14; *see also*, Affidavit of J. Michael Keyes ("Keyes Aff."), ¶ 10, Ex. 14 (a recent search of U.S. Copyright Office's online records review that Arctic Circle Enterprises, Inc. is still the owner of record).  It is not clear why the "LLC" is prosecuting this action instead of Arctic Circle Enterprises, Inc.  Pursuant to Fed. R. Civ. Pro. 17, AJMC hereby objects to this action not being prosecuted in the name of the real party in interest, Arctic Circle Enterprises, Inc.

[2]     When ACE initiated this lawsuit, it did not have an assignment from Ms. Pam Ruatto, the individual who created the Alaska Map design.  ACE LLC subsequently received a partial assignment from Ms. Ruatto in September 2006.  Keyes Aff., ¶ 11, Ex. 15.  Thus, ACE's conduct of bringing this suit does not comport with 17 U.S.C. § 501(b) ("[t]he legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it.").

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

including an individual by the name of Mr. David Coates regarding his use and reproduction of the Indian Arts & Crafts Alaska Map Photo Album Design (the "IAAC Design")[3], the copyright to which was owned by Mr. Coates.    That settlement was arrived at by means of an in-court mediation conducted by Magistrate Judge Harry Branson. Keyes Aff., Ex. 1, p. 13. The case was dismissed "with prejudice."

Under the express terms of the settlement in *ACE v. Roth*, Mr. Coates was in **no way** required to stop using that IAAC Design nor was he required to stop supplying albums with the IAAC Design to companies owned by him.  It is undisputed that at the time of the settlement that ACE: (i) **knew** Coates claimed rights in the IAAC Design; (ii) **actually asserted** that Coates was "largely responsible" for the supposed infringement in that case based upon his IAAC Design; (iii) **knew** that his practice was to have gift and souvenir items created and then supplied to his various companies for sale in the Alaska gift and souvenir market; and (iv) **knew** that Coates had just launched one of his new businesses, AJMC: the defendant in this action.  ACE could have easily reserved claims against Mr. Coates or AJMC, but clearly chose not to do so.  Consequently, after the settlement of that suit, Mr. Coates had photo albums created with the IAAC Design reproduced on them and then supplied those albums to AJMC.  Soon thereafter, ACE brought suit against AJMC claiming that it was "infringing" on ACE's copyright to the ACE Alaska Map Photo Album Design.

ACE is entitled to summary judgment on this claim for two powerful reasons.

---

[3]    This design is also referred to as a "Gift Connections" design in the Roth Litigation. Gift Connections produced the IAAC 2000 catalog that advertised the album design. Hogberg Aff., Ex. 1, p. 2-4.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

First, the settlement in *ACE v. Roth* completely extinguished any and all claims against Mr. Coates and his company AJMC for the use of the IAAC Design. ACE could have bargained for Coates to refrain from exercising his rights under the Copyright Act when ACE settled the Roth Suit, but ACE clearly did not do so. ACE cannot now attempt an end run around the Copyright Act and the settlement agreement that unmistakably allowed Coates to continue using the IAAC Design.

Moreover, it is undisputed that the present claim brought by ACE is "substantially related" to the prior suit. Under well-settled Alaska law regarding the interpretation of settlement agreements, a subsequent suit will be barred when the claims asserted are "substantially related" to a prior suit settled with broadly worded "general release" language, unless there is a clear reservation of the claim in the settlement agreement. Here, there is no dispute that this suit is "substantially related" to the claims at issue in *ACE v. Roth* and there is nothing in the broadly-worded, all-encompassing settlement agreement that reserved this claim—or any other claim—against Coates or AJMC. Indeed, the express terms of the settlement indicated that it was a global settlement meant to extinguish "**all** claims", "of **any** nature whatsoever" that were "**known or unknown**." As such, and as a matter of law, AJMC is entitled to summary judgment based on the settlement agreement reached in *ACE v. Roth*.

Second, notwithstanding the express terms of the settlement agreement, ACE is estopped from bringing this action under the doctrine of *res judicata* - the civil "double jeopardy" doctrine. The doctrine of *res judicata* is intended to force a plaintiff to explore all the facts, develop all the theories, and demand all the remedies in the initial suit. As explained herein, ACE failed to initiate suit against Coates in the *Roth* case even though ACE accused Coates of being "largely

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

responsible" for the infringement in that case. Because ACE failed to initiate suit against Coates or AJMC in the first suit, it cannot now attempt to do an end run around the *res judicata* doctrine by suing AJMC.

In sum, ACE simply has no basis for bringing this legally deficient, burdensome lawsuit. Given the legal and factual maladies plaguing ACE's claim, this Court should award AJMC its attorneys' fees and costs under 17 U.S.C. § 505. Such an award is wholly consistent with that statutory provision and the policy underlying the award of attorneys' fees to prevailing defendants under the Copyright Act.

## II.  STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

AJMC's reasons for requesting summary judgment become apparent from a review of the facts and procedural history of *Arctic Circle Enterprises, Inc. v. Roth et al*, Civil Action No. A-03-0139 – JWS. As indicated above, that suit was filed in this District, involved the identical subject matter, and was resolved through a global settlement agreement during the settlement conference presided over by Magistrate Judge Branson. Keyes Aff., ¶ 8, Ex. 12; Ex. 1, p. 13 docket entry 164. A dismissal with prejudice was thereafter entered by Judge Sedwick. Keyes Aff., ¶ 9, Ex. 13.

### A.  ACE sued Ms. Sandy Roth, and others, in this Court; that suit included claims regarding the same ACE Alaska Map Photo Album Design at issue in the instant case.

Arctic Circle Enterprises, Inc. ("ACE") is a wholesale manufacturer and importer of goods and souvenirs sold in retail shops in Alaska. Keyes Aff., ¶ 13, Ex. 18, p.3 (ACE's 2007 30(b)(6) Depo.) at p. 8, lns. 1-4. On June 24, 2003, ACE filed a Complaint (the "Roth Complaint") in this Court against Ms. Sandy Roth and Tandem Imports, Inc. (collectively "Roth"). Keyes Aff., ¶ 3,

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC       -5-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\JMK\JMK_P21J

Ex. 2. Among other things, that Complaint alleged that Roth imported photo albums with a map of Alaska on them and that this map was an alleged "copy" of an Alaska map photo album design purportedly owned by ACE (the "ACE Alaska Map Photo Album Design" or "ACE Design"). Keyes Aff., Ex. 2, ¶¶ 12-14; Ex. 3, ¶¶ 12-14. ACE alleged various violations of the Federal Trademark Act and various Alaska statutory and common laws arising from this alleged "copying" of the ACE Alaska Map Photo Album Design. Keyes Aff., Ex. 3, ¶¶ 23-34.

The Roth Complaint also alleged that Roth sold "copies" of the ACE Alaska Map Photo Album to Mr. David Coates ("Coates"), an Alaska gift and souvenir retailer, and his businesses. Keyes Aff., Ex. 3, ¶¶ 7, 13-14. ACE sought damages and injunctive relief against Roth and "all persons acting for, with, by, through, or under [her]." Keyes Aff., Ex. 3, p. 9 at ¶ 1.

During the Roth Suit, the following facts were made known to ACE:

- Coates had ownership interests in several companies that operated gift and souvenir stores in Alaska. Mr. Coates ordered gifts and souvenirs for these stores.[4]

- In approximately 2002, Coates purchased the rights to an Alaska map photo album design that was produced and sold by a company named Indian Arts & Crafts.[5] In fact, Coates testified in a Declaration dated September 14, 2003 (in the Roth Litigation) that he "purchased all rights of the company formerly known as Indian Arts and Crafts, including rights to all original designs of that company." Keyes Aff., Ex. 10, ¶¶ 5-6. The Alaska map design will be referred to as the "IAAC Alaska Map Photo Album

---

[4]    Keyes Aff., Ex. 10 at ¶¶ 1-2; Ex. 18, p. 8, ("ACE 2007 Depo.") at p. 118, lns. 13-25; p. 120, lns. 4-19.

[5]    Keyes Aff., ¶ 7, Ex. 10 at ¶¶ 5- 6; Ex. 11, p. 11 ("Roth 2004 Depo.") p. 59, lns. 15-20; Coates Aff., Ex. 2; Ex. 3, p. 3, lns. 17-21; Ex. 6 at ¶ 10; Hogberg Aff., ¶¶ 5-6.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

Design" or "IAAC Design."  A true and correct copy of the IAAC Design that was purchased by Coates is attached as Exhibit 1, p. 2 and p. 4 to the Affidavit of Steve Hogberg.

- Coates gave Roth permission to reproduce copies of the IAAC Design.[6]  Per this permission, Roth used the IAAC Alaska Map Photo Album Design and created photo albums with a modified version of the Alaska Map on them.[7]

- Roth sold these albums that she had created from the IAAC Design to Dave Coates so that he could sell them in the various retail stores throughout Alaska that were operated by his companies.[8]

- Roth's reproduction of the IAAC Alaska Map Photo Album Design on her photo albums are the same albums at issue in the Roth Litigation.[9]

- During the Roth Litigation, ACE claimed that Coates was the individual that was "largely responsible" for the design of the infringing photo albums that Roth imported and sold.[10]

---

[6]     Keyes Aff., Ex. 10, ¶¶ 5-6; Coates Aff., ¶ 6; Ex. 3, p. 7, lns. 7-11.

[7]     Keyes Aff., Ex. 11, p. 5 ("Roth 2004 Depo.") at p. 86, lns. 5-16; p. 88, lns. 4-10.

[8]     Coates Aff., ¶ 8, Ex. 3, p. 11, lns. 4-7; p. 13, lns. 21-25; p. 14, lns. 1- 4; Ex. 8, p. 7 ("Coates II Depo.") at p.49, lns. 10-22.

[9]     Keyes Aff., Ex. 3, ¶¶ 12-14; Ex. 8, p. 5.

[10]    Keyes Aff., ¶ 6, Ex. 8, p. 5.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC          -7-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\JMK\JMK_P21J

- In 2004, during the pendency of ACE's suit against Roth, Coates opened Alaska Juneau Mining Company ("AJMC"), the Defendant in the present action,[11] and AJMC immediately became a Roth customer.[12]

On approximately May 12, 2005, ACE and Roth entered into a Settlement Agreement And Mutual Release (hereinafter the "Roth Settlement"). Keyes Aff., ¶ 8, Ex. 12 ("Settlement Agreement"). Pursuant to that Agreement, ACE released:

REDACTED

Settlement Agreement, Ex. 12, p. 4 at 2(b) (emphasis added).

ACE did not reserve *any* claims against Coates, AJMC, or any other Roth Releasee even though ACE claimed during the Roth Litigation that "Mr. Coates was largely responsible for the design of the infringing photo album cover in 2003" (*supra,* n.9) and ACE knew that he was

---

[11]    Coates Aff., ¶ 9, Ex. 4 (AJMC was incorporated in April 2004); Coates Aff., ¶ 10, Ex. 6 at ¶ 2 (Declaration by David Coates in the Roth Litigation dated February 26, 2004 states that Coates is in the "souvenir business as a retailer, with multiple locations in Ketchikan, a location in Skagway, and a new location in Juneau."); Coates Aff., Ex. 3, p. 18, lns 3-7; p. 19, lns. 15-24 (discussing the opening of Coates' new store in Juneau during his 2004 deposition in the Roth Litigation).

[12]    Coates Aff., ¶ 9, Ex. 5; Keyes Aff., ¶ 13, Ex. 18, p. 22 ("ACE 2007 Depo.") at p. 24, lns. 19-25; p. 25, lns. 1-15.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC          -8-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\JMK\JMK_P21J

claiming rights to the IAAC Alaska Map Photo Album Design (*supra*, n.4)—the same design that Roth used to create the allegedly-illicit copies (*supra*, n.5, n.6).

Following the execution of the Roth Settlement Agreement the parties stipulated to a dismissal of all claims and counterclaims and Judge Sedwick dismissed the matter "WITH PREJUDICE." Keyes Aff., Ex. 13.

**B.**    **ACE files the present suit against Roth's customer, AJMC, regarding alleged copying of the ACE Alaska Map Photo Album Design that was squarely at issue and disposed of in the Roth Litigation.**

Approximately one year after the Roth Settlement was executed, Coates had photo albums created using the IAAC Alaska Map Photo Album Design—the exact same IAAC Design that Roth had used to create her allegedly-illicit copies in the Roth Suit—and began supplying those photo albums to his AJMC store. Coates Aff., ¶ 11; Ex. 8, p. 5-6 ("Coates II Depo.") p. 14, lns. 6-21; p. 15, lns. 19-24; p. 18, lns. 16-25; p. 19, lns. 1-23; p. 20, lns. 18-22. Soon thereafter, ACE initiated the present lawsuit alleging that AJMC copied the ACE Design, which was the same claim at issue in the Roth Litigation. Coates Aff., Ex. 7; Keyes Aff., Ex. 18, p. 7 ("ACE 2007 Depo.") at p. 114, lns. 2-15. Citing the existence of the Roth Settlement Agreement, counsel for AJMC requested in writing that ACE dismiss the present suit against AJMC. Keyes Aff., ¶ 12, Ex. 16. AJMC's counsel also indicated that if ACE refused to dismiss this action, AJMC would "move forward with defending the case" and "ask the court to award our fees and costs upon prevailing." Keyes Aff., Ex. 17. ACE refused to dismiss the suit.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE (907) 276-1969

## III.  LAW AND ARGUMENT

### A.     Summary judgment standard.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A fact is "material" when, under the governing substantive law, it could affect the outcome of the case.  *Thrifty Oil Co. v. Bank of America Nat. Trust and Sav. Ass'n,* 322 F.3d 1039, 1045-46 (9th Cir. 2003).  A "genuine issue" of material fact arises only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving part." *Id.* quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### B.     Alaska law controls the interpretation of the Roth Settlement Agreement.

The law of Alaska applies to the interpretation of the Roth Settlement Agreement.  Under Alaska law, "[a] release is interpreted in the same manner as any other contract." *Martech Const. Co., Inc. v. Ogden Environmental Services, Inc.*, 852 P.2d 1146, 1149 (Alaska, 1993).  "When interpreting contracts, the trial court's goal is to give effect to the reasonable expectations of the parties." *Monzingo v. Alaska Air Group, Inc.*, 112 P.3d 655, 660 (Alaska, 2005).  Accordingly, "[c]ourts look to the language of the contract as a whole, the objects sought to be accomplished by the contract, the circumstances surrounding its adoption, and case law interpreting its provisions to ascertain the reasonable expectations of the parties." *Id.*  "While extrinsic evidence should be consulted, 'after the transaction has been shown in all its length and breadth, the words of an integrated agreement remain the most important evidence of intention.'" *Id.* at 660-61.  Additionally, "the law presumes a release to be a satisfaction unless the plaintiff can prove otherwise." *Mitchell v. Mitchell*, 655 P.2d 748, 751 (Alaska, 1982).  "As a matter of law, there is

no doubt that a valid release of all claims will bar any subsequent claims covered by the release. A policy favoring termination of litigation and encouraging settlement agreements should prevail." *Id.* (internal citation omitted). As set forth herein, ACE cannot meet its burden of proving that the present claim for copyright infringement survives in light of the Roth Settlement Agreement and the circumstances surrounding its execution.

### C.   Summary judgment is proper because ACE previously released all claims against Coates and AJMC with respect to the IAAC Alaska Map Photo Album Design, the exact same Design at issue here.

As set forth herein, there is no dispute that Coates and AJMC fall within the definition of "Roth Releasees" under the Settlement Agreement. Moreover, there is no dispute that the scope of the release and covenant not to sue under the Settlement Agreement relieved Coates and AJMC of any liability with respect to their use of the IAAC Alaska Map Photo Album Design. ACE knew that Coates claimed ownership of that Design and knew that it was used by Roth in creating the allegedly-improper albums in the Roth Suit. *See supra,* n.4 - n.6. Consequently, as a matter of law, ACE's release of Coates and AJMC with respect to any claims regarding the IAAC Design allowed Coates and AJMC to make and sell additional IAAC Alaska Map Photo Albums.

### 1.   It is undisputed that Coates and AJMC were "customers" of Roth and therefore "Roth Releasees" under the Settlement Agreement.

The Settlement Agreement applies to all "Roth Releasees", which were defined as Roth and "all persons acting by, through, under or in concert with [Roth], including Roth's customers and end users of Roth's products or services." Keyes Aff., Ex. 12, pp. 4-5 at 2(b). It is undisputed that when this Agreement was executed Coates and AJMC were "customers" of Roth. In fact, Coates had employed Roth to manufacture or import the allegedly-infringing photo albums for sale in

Coates' retail outlets, such as AJMC. Coates Aff., ¶ 9, Ex. 5; Keyes Aff., Ex. 3, p. 4 at ¶ 7; p. 5 at ¶¶ 12-14; Ex. 8, p. 8 Coates II Depo. at p. 49, lns. 10-22; Ex. 18, p. 5 ("ACE 2007 Depo.") at p.88, lns. 5-25. Coates and AJMC thus unambiguously fall within the definition of "Roth Releasees" under the Settlement Agreement. *See* Keyes Aff., Settlement Agreement, Ex. 12, p. 4 at 2(b).

### 2.     It is further undisputed that the Roth Settlement extinguished any claim against Coates or AJMC related to the IAAC Alaska Map Design.

The scope of the release and covenant not to sue contained in the Settlement Agreement released Roth customers Coates (and AJMC) from any and all liability regarding their use of the IAAC Alaska Map Photo Album Design. As the express language of the Settlement Agreement provided, ACE released Coates for any claim:

REDACTED

Settlement Agreement, 2(b) (emphasis supplied).

In the Roth Suit, ACE claimed that Coates was "largely responsible" for the infringement for having directed Roth to use the IAAC Design to create the photo albums at issue in that case. *Supra,* n.9. ACE also **knew** that Coates claimed that he had purchased the rights to the IAAC Alaska Map Photo Album Design and **knew** that Roth testified that her "infringing" photo albums were based on the IAAC Design. *Supra,* n.4 – n.6. Thus, ACE's own allegations against Coates prove that ACE knew it could have brought suit against Coates, and Coates' retail stores. *See A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1019 (2001) (noting that contributory copyright infringement may apply to "one who, with knowledge of the infringing activity, induces, causes or

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC          -12-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\JMK\JMK_P21J

materially contributes to the infringing conduct of another").[13]  ACE chose not to name Coates or any of his stores as parties in the Roth Suit.  But, to achieve settlement, ACE did agree to **forever** release and covenant not to sue Coates, AJMC, or any other Roth customer for any claim ACE "had" or "claimed to have had" regarding use of the IAAC Design.  This extinguished any claim by ACE against Coates or AJMC for use of the IAAC Design. *Martech Const. Co., Inc. v. Ogden Environmental Services, Inc.*, 852 P.2d 1146, 1151-1152 (Alaska,1993) (holding that subsequent claim was barred by the settlement agreement because it was "reasonably ascertainable at the time of executing the settlement").

In sum, the broadly-worded, all encompassing language contained within the release unambiguously extinguished any and all claims against Coates or AJMC related to the IAAC Alaska Map Photo Album Design because ACE: (i) knew about the IAAC Design; (ii) knew Coates claimed rights to it; and (iii) knew that Roth testified that she based her allegedly-infringing photo albums on it; and (iv) claimed Coates was "largely responsible" for the allegedly-infringing Roth albums that were based on the IAAC Design.  As a matter of law, Coates and his company AJMC (both of whom were Roth customers) are insulated from any and all liability regarding the IAAC Design.

---

[13]    It is also undisputed that before Coates purchased the rights to the IAAC Alaska Map Photo Album Design, he had purchased the actual IAAC Photo Albums from Gift Connections and had done so since 2000 and then sold those items in his stores.  Coates Aff., Ex. 8, p. 7 ("Coates II Depo."), p. 27, lns. 5-18.  Thus, ACE also could have alleged Coates infringed its copyright in the ACE Alaska Map Photo album Design but did not do so.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

3.    **As a matter of law, ACE's release of any and all claims with respect to the IAAC Alaska Map Photo Album Design allowed Coates to create new IAAC Alaska Map Photo Albums and supply them to AJMC without either party incurring liability to ACE.**

There is no dispute that the allegedly "infringing" photo albums in this case contain the same IAAC Design that Coates purchased and claimed rights to during the Roth Suit. *See supra,* notes 4-6. Additionally, there is no dispute that Coates had these albums with the IAAC Design reproduced and supplied to AJMC for retail distribution to its customers. Coates Aff., ¶ 11; Ex. 8, Coates II Depo. at p. 14, lns. 11-21. Based on these undisputed facts, the Settlement Agreement insulates both Coates and AJMC from any liability with respect to these albums created using the IAAC Design supplied to AJMC for distribution. This is so for at least the following two reasons.[14]

a.    ACE knew Coates routinely had his companies distribute gift and souvenir items and ACE never "made manifest" its intent to preserve any claims against Coates or his businesses for distributing photo albums bearing the IAAC Design.

It is undisputed that ACE was fully aware that Coates's business practice was to have gift and souvenir items produced and then he would supply those items to his various retail stores for sale to the public. *Supra,* n.3. ACE was aware of the names of these businesses and was aware that in 2004 Coates had launched a new business in Juneau, the Alaska Juneau Mining Company.

---

[14]    There is also an additional reason based on federal law. The Copyright Act affirmatively grants to Coates, as the owner of the IAAC Alaska Map Photo Album Design, the "exclusive right" to reproduce and distribute copies of the IAAC Alaska Map Photo Album Design and authorize others, such as AJMC, to do the same. *See* 17 U.S.C. § 106 (1) and (3). Nothing in the Settlement Agreement (or the stipulated order dismissing the Roth Suit with prejudice) required or even hinted that Coates or any of his businesses were somehow precluded from exercising their rights under the Copyright Act with respect to the IAAC Design. Nowhere did the Settlement Agreement purport to limit Coates's and AJMC's rights under 17 U.S.C. § 106.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC          -14-
Case No.    3:06-cv-00170-TMB
K:\55853\00001\JMK\JMK_P21J

*Supra,* n.3, n.10. Despite this knowledge, ACE did not require or even hint that Coates was precluded from supplying photo albums with the IAAC Design photo albums to his businesses or that AJMC was somehow not authorized to receive these photo albums from Coates and redistribute them.

Numerous courts have held that when "general release" language is used it "indicates an intent to make an ending of every matter arising under or by virtue of the contract. If the parties intend to leave some things open and unsettled, their intent to do should be **made manifest**." *Augustine Medical, Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1369, 1373 (C.A.Fed. 1999) (citing *See William Cramp & Sons Ship & Engine Bldg.*, 206 U.S. at 128, 27 S.Ct. 676) (emphasis added); *see also, Bolling Federal Credit Union v. Cumis Ins. Soc., Inc.* 475 A.2d 382, 386 (D.C. 1984) (noting that "Bolling may not have known the extent of its losses when it signed the release agreement, but it did have the means to articulate and bargain for appropriate language of reservation, if that was its intent."); *Martech Const. Co., Inc.*, 852 P.2d at 1152. (holding that the broad language used in a settlement agreement "implies that claims not **specifically contemplated are settled**.")(emphasis supplied).

Here, ACE used very broad release language that extinguished any and all claims, "known or unknown" regarding Coates's use of the IAAC Design. If ACE wanted to preserve a claim against Coates or his designee for distributing albums with the IAAC Design, ACE should have made that intention "manifest." *Augustine Medical,* 194 F.3d at 1373; *Martech Const. Co., Inc.*, 852 P.2d at 1152. ACE failed to do so and cannot meet its burden of proving that the release is something other than a full "satisfaction." *See Monzingo,* 112 P.3d at 660-661 ("the law presumes a release to be a satisfaction unless the plaintiff can prove otherwise").

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

b.   <u>The present claim against AJMC for its distribution of the IAAC Alaska Map Photo Album Design is barred because, as a matter of law, it is "substantially related" to the claim extinguished under the Settlement Agreement.</u>

Finally, cases that have interpreted similarly-worded settlement agreements demonstrate that, as a matter of law, the Roth Settlement Agreement extinguished the present claim against AJMC.

It is well settled that when a subsequent claim is "substantially related" to a claim that was previously extinguished by a settlement agreement, the subsequent claim is barred by virtue of the settlement. *See Augustine Medical*, 194 F.3d at 1371. For example, in *Augustine Medical*, Augustine Medical, Inc. ("AMI") sued Progressive Dynamics, Inc. ("PDI") for various unfair competition and false advertising claims related to PDI's sale of convective warming blankets. The parties settled that litigation in a written settlement agreement that provided:

> AMI does hereby ... release and forever discharge PDI from any and all manner of action or actions ... that AMI and/or its owners ... *have, have had, or may have* against PDI upon or by reason of or relating to any acts, omissions or statements made by PDI on or before the date of this Settlement Agreement, including, but not limited to, *any and all claims that were or could have been asserted* by AMI in the [present lawsuit].... AMI covenants and agrees not to commence any action or proceeding against PDI arising out of or related to, statements *not otherwise precluded by this Settlement Agreement made after the date hereof* that are in substance repetitions of statements made by PDI prior to the date of this Settlement Agreement that were at issue in the above-referenced litigation.

*Augustine Medical*, 194 F.3d at 1369 (ellipses and emphasis in original).

After execution of the agreement, AMI sued PDI for patent infringement on patents covering the convective warming blankets. *Id.* The patents had issued before the settlement agreement was executed and PDI's accused convective blankets were on sale in a "materially

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

identical form prior to the execution of the Settlement Agreement." *Id.* The trial court entered summary judgment for PDI and held that AMI was trying "simply to reopen that which the parties have already agreed upon and settled...." *Id.* at 1370. The Federal Circuit Court of Appeals affirmed.

In attempting to resuscitate its claim for patent infringement on appeal, AMI argued that the settlement agreement was limited to "claims based on PDI's pre-settlement actions and does not refer to future claims." *Id.* The Court of Appeals flatly rejected that argument and held that:

> Augustine has discharged its ability to sue Progressive not for claims that existed on or before the date of the Settlement Agreement, ***but for claims related to any actions taken by Progressive on or before the date of the Settlement Agreement.*** Prior to and on the date of the Settlement Agreement, as well as after the date of the Settlement Agreement, Progressive was producing and marketing the convective warming blankets at issue. Augustine's claims for patent infringement then are undeniably *related to* Progressive's production and marketing of the goods at issue on or before the date of the Settlement Agreement. While Augustine's claims for patent infringement in the present litigation are not directly *based on* Progressive's actions prior to the date of the Settlement Agreement, they are sufficiently *related to* those pre-settlement actions so as to fall within the clear meaning of the language of the agreement.

*Augustine Medical*, 194 F.3d at 1371 (emphasis in original).

Just like the court in *Augustine Medical*, courts in Alaska have held that a subsequent claim will be barred when it "substantially echoes" the claim settled in a prior lawsuit under a broadly-worded general release contained in a settlement agreement, *Mapco*, 687 P.2d at 928, or when the subsequent claim is not "wholly independent" from the prior claim that was settled as a result of a general release. *Martech Const. Co., Inc.*, 852 P.2d at 1151.

Here, there is no dispute that the claim against AJMC "substantially echoes"—and is clearly not "wholly independent" from—the claim ACE gave up against Coates, AJMC, and all of

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

the "Roth Releasees" in the Roth Suit. As such, ACE is barred from bringing this claim and AJMC is entitled to summary judgment as a matter of law.

### D.    ACE is estopped from bringing this claim under the doctrine of *res judicata*.

"The doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Nevada v. United States,* 463 U.S. 110, 129-30, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) (internal quotes omitted). In the Ninth Circuit, *res judicata* is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity of parties or privity between parties." *Owens v. Kaiser Foundation Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir. 2001). *Res judicata* applies to claims brought in a subsequent action when those claims <u>could have</u> <u>been brought</u> in the prior action. *Green v. North Seattle Community College*, 2007 WL 709308, *4 (W.D. Wash., 2007) (noting that plaintiff "could have brought copyright infringement claims in the first suit that he filed. That he did not join all of his claims does not entitle him to a second opportunity to litigate claims arising from the same transactional nucleus of facts.") (emphasis supplied). Whether *res judicata* applies is a question of law. *Communications Telesystems Intern. v. California Public Utility Com'n*, 196 F.3d 1011, 1015 (9th Cir. 1999).

As a matter of law it is undisputed that all three elements are met in this case.

### 1.    ACE's suits against Roth, and against AJMC, share an identity of claims.

The Ninth Circuit has listed four criteria to determine whether two proceedings share an "identity" of claims: "(1) whether the two suits arise out of the same transactional nucleus of facts;

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC         -18-
Case No.    3:06-cv-00170-TMB
K:\55853\00001\JMK\JMK_P21J

(2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." *Mpoyo v. Litton Electro-Optical Sys.,* 430 F.3d 985, 987 (9th Cir. 2005).

Here, both suits arise out of the same transactional nucleus of facts. "Determining whether two events are part of the same transaction is essentially dependent on whether the events are related to the same set of facts and whether the events could conveniently be tried together." *Gary Fong, Inc. v. Halton*, 158 F.Supp.2d 1012, 1015 (N.D. Cal. 2001). As was made clear during the Roth Litigation, Coates claimed rights to the IAAC Design and provided Roth with a license to make the allegedly-infringing photo albums based on the IAAC Design. *Supra,* n.4 – n.6. The license allowed Roth to reproduce the IAAC Alaska Map Photo Album Design. *Supra,* n.6. Roth reproduced versions of the IAAC Design and it was the resulting photo albums that gave rise to ACE's claim in that case. *Supra,* n.8. Similarly, in this case Coates had the IAAC Alaska Map Photo Album Design reproduced on photo albums for AJMC, one of his retail outlets. Coates Aff., ¶ 11; *compare* Hogberg Aff., Ex. 1 (IAAC photo album design) with Coates Aff., Ex. 7, p. 15 (depiction of alleged infringing map design produced by AJMC attached as Exhibit to the ACE Complaint in this action). Thus, both cases involve allegedly-infringing reproductions from the same source, the IAAC Alaska Map Photo Album, and arise out of the same nucleus of facts.

Additionally, the prior case concluded with the execution of the Roth Settlement Agreement and the Court's order dismissing the case "with prejudice." Keyes Aff., Ex. 12, Ex. 13. That Agreement released Coates, AJMC, and all of the "Roth Releasees" from any and all claims arising out of Coates' reproduction of photo albums bearing the IAAC Design. If the present case

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

were allowed to move forward, Coates could potentially face a claim from AJMC (or other companies) for supplying them with "allegedly-infringing" photo albums. *See* AK ST § 45.02.312 ("Unless otherwise agreed, a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of a third person by way of infringement."). Thus, this suit has the potential to destroy the very rights that Coates received under the Settlement Agreement, i.e., a release from any and all claims related to his use or reproduction of the IAAC Design.

Further, it is undisputed that both cases involve the infringement of the same "right"—the "right" to the ACE Alaska Map Photo Album Design and/or the right to the IAAC Alaska Map Photo Album Design. The fact that ACE may have alleged "trademark infringement" in the prior case and "copyright infringement" in this case is irrelevant. As the Ninth Circuit has stated, one does not "avoid the bar of res judicata…merely because he has pleaded a new legal theory. Rather, the crucial question is whether appellant has stated in the instant suit a cause of action different from those raised in his first suit." *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201 (9th Cir. 1982). ACE has alleged "infringement" of the same right in both cases.

Finally, both cases would require the presentation of substantially the same evidence. In both cases ACE would have to establish its "right" to the ACE Alaska Map Photo Album Design and would have to show that Coates and AJMC were both infringers, respectively. Both Coates and AJMC would show that their "allegedly infringing" photo albums originated from the IAAC Alaska Map Photo Album Design. Thus, both cases would require the presentation of substantially the same evidence. *Forest Guardians v. Thomas,* 967 F.Supp. 1536, 1549 (D.Ariz.1997) (observing that "the test is not whether the cases involve the presentation of *identical* evidence, but

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

rather whether the cases involve the presentation of *substantially the same* evidence.") (emphasis in original).

In sum, there is no dispute that the two suits share the identity of claims.

### 2. The Roth Settlement and stipulated dismissal constitutes a "final judgment" on the merits.

"Dismissal of [an] action with prejudice pursuant to a settlement agreement constitutes a final judgment on the merits and precludes parties from reasserting the same claim in a subsequent action." *Gurney v. Wave Crest Laboratories, LLC*, 441 F.Supp.2d 1055, 1059 (C.D.Cal. 2005); *Int'l Union of Operating En's-Employers Construction Indus. Pension, Welfare and Trust Funds v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993) (holding that claim for accurate payments and claim for delinquent payments arose from the same transaction and therefore the second action was barred by res judicata); *see also Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1052 (9th Cir.2005) (holding that a stipulated dismissal with prejudice has *res judicata* effect). Here, ACE and Roth ended the prior lawsuit through the Roth Settlement Agreement and the case was dismissed with prejudice. The second element is satisfied.

### 3. There is sufficient identity of interests because ACE previously claimed in the Roth Litigation that Roth and Coates had "identical" interests and that Roth was the "virtual representative" of Coates.

"The determination of whether sufficient 'privity' exists for purposes of *res judicata* should be based on a functional analysis, on the reasons for holding a party bound by a prior judgment, and not on labels and rigid rules." *Davis Wright & Jones v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 709 F.Supp. 196, 201 (W.D.Wash., 1989). "Privity" has been found where there is a "substantial identity" between the party and nonparty, *U.S. v. ITT Rayonier*, 627 F.2d 996, 1003 (9th Cir. 1980) (citing *Chicago, R.I. & P. Ry. Co. v. Schendel*, 270 U.S. 611, 621, 46 S.Ct. 420,

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC          -21-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\JMK\JMK_P21J

424, 70 L.Ed. 757 (1926)); where the nonparty "had a significant interest and participated in the prior action," *id.* (citing *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)); and where the interests of the nonparty and party are "so closely aligned as to be 'virtually representative,'" *id.* (quoting *Aerojet-General Corp. v. Askew,* 511 F.2d 710, 719 (5th Cir. 1975), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975)); *Transclean Corp. v. Jiffy Lube Intern., Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007) (holding defendant and its customers were "in privity" for purposes of res judicata).

For example, in *Transclean Corp.*, Transclean brought suit against Bridgewood alleging that its "T-Tech machine" infringed Transclean's patent. Transclean obtained a judgment in its favor, including a damages award of $1,874,500. *Transclean Corp.*, 474 F.3d at 1301. Transclean then filed a separate patent infringement suit against Jiffy Lube International, Inc. and others, all of which had purchased one of the T-Tech machines from Bridgewood. Transclean argued that Jiffy Lube was bound by the prior judgment because it was "closely related" to Bridgewood. The trial court dismissed the suit against Jiffy Lube and certain other defendants as *res judicata.* In upholding the dismissal, the Federal Circuit noted that because Transclean admitted that Jiffy Lube was "closely related" to Bridgewood, Transclean should have named Jiffy Lube in the first case. *Id.*

Here, just as the plaintiff in *Transclean*, ACE previously argued in the Roth Litigation that Coates and Roth had a "very close relationship", that Ms. Roth was Mr. Coates's "virtual representative", and that their interests in that case were "identical." Keyes Aff., ¶ 6. Given these admissions in the Roth Litigation, ACE is bound by these statements and cannot now somehow claim that Coates and Roth are unrelated. Additionally, during the Roth Litigation ACE knew of

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC     -22-
Case No.    3:06-cv-00170-TMB
K:\55853\00001\JMK\JMK_P21J

Coates and AJMC (Keyes Aff., Ex. 3, ¶ 7), knew that Coates claimed rights to the IAAC Design, (*supra*, n.4) and knew that the Roth photo albums were based on the IAAC Design (*supra*, n.5 – n.6). Thus, ACE could have "brought copyright infringement claims in the first suit" and it is not entitled to a second opportunity to litigate claims arising from the same transactional nucleus of facts." *Green v. North Seattle Community College*, 2007 WL 709308, *4.

In sum, "[the doctrine of res judicata] is intended to force a plaintiff to explore all the facts, develop all the theories, and demand all the remedies in the initial suit." *Gary Fong, Inc.*, 158 F.Supp.2d at 1016. ACE failed to do that in the Roth Litigation when it was apprised of Coates's claims regarding the IAAC Design. It should not now be given a second chance to take a second bite of the same apple.

### E.     AJMC Should Be Awarded Its Attorneys' Fees And Costs For Being Forced To Defend This Lawsuit.

17 U.S.C. § 505 provides as follows:

> "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."

The U.S. Supreme Court held this statutory provision applies with equal force to prevailing plaintiffs *and* defendants in copyright cases. *Fogerty v. Fanasty*, 510 U.S. 517 (1994). Accordingly, "[i]n deciding whether to award fees under the Copyright Act, the district court should consider, among other things: the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence." *Maljack Productions, Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996). Since *Fogerty*, a number of courts have held that an award of attorneys' fees

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

to the prevailing party under the Copyright Act is the "rule" and not the "exception", particularly where the unsuccessful party's claims were unreasonable or otherwise lacking in merit. *See e.g., PAR Microsystems, Inc. v. Pinnacle Development Corp.,* 995 F.Supp. 655, 656 (N.D.Tex., 1997) (noting that "warding attorney's fees to a prevailing party pursuant to § 505 is the rule rather than the exception, and fees should be awarded routinely."); *Diamond Star Bldg. Corp. v. Freed,* 30 F.3d 503, 506 (4th Cir. 1994) (reversing a denial of fees to defendant due to court's failure to accord appropriate weight to plaintiff's "pursuit of an utterly meritless claim."); *Positive Black Talk Inc. v. Cash Money Records, Inc.,* 394 F.3d 357, 380 (5th Cir. 2004) ("[A]n award of attorney's fees to the prevailing party in a copyright action, although left to the trial court's discretion, "is the rule rather than the exception and should be awarded routinely.").

Here, as discussed above, ACE's lawsuit was extinguished by the all-encompassing, general release contained in the Roth Settlement Agreement. ACE has not and cannot advance any colorable claim as to why the Settlement Agreement is inapplicable to AJMC. Accordingly, an award of attorneys' fees under the Copyright Act is fully justified and should be awarded in this case.

## IV.    CONCLUSION

For all of these reasons, this Court should enter summary judgment in favor of Alaska Juneau Mining Company, LLC and should award it its attorneys' fees and costs.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

DATED this 29th day of March, 2007.

KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP

By   /s/ J. Michael Keyes
    J. Michael Keyes, *Pro Hac Vice*
    Email:  mike.keyes@klgates.com
    Gregory F. Wesner, *Pro Hac Vice*
    Email:  gregory.wesner@klgates.com
    Attorneys for Defendant
    Alaska-Juneau Mining Company LLC
    KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
    618 West Riverside Avenue, Suite 300
    Spokane, WA  99201
    Telephone No.:  509-624-2100

    Paul L. Davis
    Email:  paul.davis@klgates.com
    Attorneys for Defendant
    KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
    420 L Street, Suite 400
    Anchorage, AK  99501-1971
    Telephone No.:  907-276-1969
    Fax: 907-276-1365

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC      -25-
Case No.    3:06-cv-00170-TMB
K:\55853\00001\JMK\JMK_P21J

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

James N. Leik, jleik@perkinscoie.com

Ramsey M. Al-Salam, RalSalam@perkinscoie.com

Ryan McBrayer, RMcBrayer@perkinscoie.com

By /s/ J. Michael Keyes
    J. Michael Keyes, *Pro Hac Vice*
    KIRKPATRICK & LOCKHART PRESTON
    GATES ELLIS LLP
    618 W. Riverside Ave. #300
    Spokane, WA 99201
    Telephone: 509-624-2100
    Facsimile: 509-456-0146
    Email: mike.keyes@klgates.com
    Attorneys for Defendant
    Alaska-Juneau Mining Company
    LLC

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC          -26-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\JMK\JMK_P21J