James N. Leik, Alaska Bar No. 8111109
Kyan Olanna, Alaska Bar No. 0405024
PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
Telephone:  907.279.8561
Facsimile:  907.276.3108
JLeik@perkinscoie.com
KOlanna@perkinscoie.com

Ryan J. McBrayer (*Pro Hac Vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Telephone: 206.359-8000
Facsimile:  206.359.9000
rmcbrayer@perkinscoie.com

Attorneys for Plaintiff
Arctic Circle Enterprises, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ARCTIC CIRCLE ENTERPRISES, LLC, | Case No. 3:-06-CV-170 (TMB) |
| Plaintiff, | |
| v. | |
| ALASKA JUNEAU MINING COMPANY LLC, | |
| Defendant. | |

## PLAINTIFF ARCTIC CIRCLE ENTERPRISES, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
907.279.8561 / Facsimile 907.276.3108

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................1

II.   ARCTIC CIRCLE DID NOT RELEASE ALASKA JUNEAU'S
      NEW PHOTO ALBUM ...........................................................................2

      A.    Arctic Circle Designed Its Original Alaska Map Photo Album
            in 1998 .........................................................................................3

      B.    Indian Arts and Crafts Copied Arctic Circle in 1999.....................4

      C.    The 2003 Roth Lawsuit Was Limited to Two Specific Photo
            Album Designs..............................................................................5

            1.    Arctic Circle Accused Two Photo Album Designs.................5

            2.    The IAAC Photo Album Was Not "Alleged in Any
                  Pleading."..........................................................................7

      D.    The Roth Settlement Agreement Did Not Release Future
            Conduct........................................................................................8

            1.    The Release Was Limited to Past Claims. ...........................8

            2.    The Parties Considered and Rejected a Release that
                  Expressly Covered Future Products by Mr. Coates and
                  Others Based on the IAAC Portfolio. ..................................9

      E.    The Photo Album at Issue in This Case Did Not Exist Before ...........13

III.  THE ROTH SETTLEMENT AGREEMENT DOES NOT COVER
      AJMC'S NEW PHOTO ALBUM .........................................................15

      A.    AJMC Bears the Burden as a Putative Third-Party Beneficiary .........15

      B.    The Court Should Closely Analyze the Release For
            Distinctions Between Claims Based on Past and Future
            Conduct......................................................................................16

      C.    The Plain Language of the Release does not Cover Future
            Conduct......................................................................................18

      D.    The Court should Reject AJMC's Backdoor Attempt to Expand
            the Release to Reach the Future......................................................20

            1.    AJMC ignores that inducement is a theory of vicarious
                  liability. ..........................................................................21

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

# TABLE OF CONTENTS
## (continued)

**Page**

      2.    The Release did not cover the mere tools of inducement..........21

      3.    The Release here was limited to claims "arising out of facts alleged in the pleadings" in the Roth Lawsuit ..................22

    E.    Evidence Regarding Negotiation of the Scope of the Release Confirms its Plain Meaning ..................................................24

    F.    The Court Should Grant Summary Judgment in Favor of Arctic Circle..................................................................................25

IV.    *RES JUDICATA* DOES NOT PRECLUDE ARCTIC CIRCLE'S CLAIM ..........................................................................................26

    A.    *Res Judicata* Does Not Apply to Claims That Did Not Exist at the Time of the Prior Judgment..........................................26

    B.    *Res Judicata* Does Not Bar Arctic Circle's Claim..............................28

V.    THIS COURT SHOULD DENY AJMC'S FOOTNOTE MOTIONS AND REQUEST FOR ATTORNEYS' FEES ..............................................29

    A.    The Footnote Motions are Contrary to Fact and Law .........................29

    B.    The Court Should Not Order Arctic Circle to Pay Attorneys' Fees..................................................................................31

VI.    CONCLUSION..................................................................................33

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
907.279.8561 / Facsimile 907.276.3108

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Augustine Medical, Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367 (Fed. Cir. 1999) .............................................................................. 19, 23, 24

*Blackman v. Hustler Magazine, Inc.*, 620 F. Supp. 792 (D.C. D.C. 1985).......................................................................................................17

*Botefur v. City of Eagle Point*, 7 F.3d 152 (9th Cir. 1993)..................17, 20

*Bresnahan v. Bowen*, 263 F. Supp. 2d 131 (D. Me. 2003) .........................19

*Brod v. Gen. Publ'g Group, Inc.*, No. 98-cv-09520 (C.D. Cal., Aug. 15, 2000) ...............................................................................33

*Brown v. Brown*, 983 P.2d 1264 (Alaska 1999)........................................16

*Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002)...........................31

*CK Co. v. Burger King Corp.*, 34 U.S.P.Q. 2d 1319 (S.D.N.Y. 1995)..........................................................................................33

*Cory v. Physical Culture Hotel, Inc.*, 14 F. Supp. 977 (D.C.N.Y. 1936)..........................................................................................17

*Fadaie v. Alaska Airlines, Inc.*, 293 F. Supp. 2d 1210 (W.D. Wash. 2003)..........................................................................................27

*Fairbanks Northstar Borough v. Tundra Tours, Inc.*, 719 P.2d 1020 (Alaska 1986) ..............................................................16

*Fogerty v. Fantasy, Inc.*, 521 U.S. 517 (1994)....................................31, 32

*Froines v. Valdez Fisheries Development Ass'n Inc.*, 75 P.3d 83 (Alaska 2003)..............................................................................24

*Geol v. Jain*, 259 F. Supp.2d 1128 (W.D. Wa 2003) .............................26

*Gov't Employees Ins. Co. v. Dunst*, 2005 WL 856819 (D. Alaska 2005)...........................................................................................7

*Green v. N. Seattle Cmty. Coll.*, 2007 WL 709308 (W.D. Wash. 2007)..........................................................................................29

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Hiser v. Franklin*, 94 F.3d 1287 (9th Cir. 1996) .......................................................27

*Hispec Wheel & Tire, Inc. v. Tredit Tire & Wheel Co. Inc.*, 2007
    WL 101827 (N.D. Ind. 2007) ............................................................................29

*Howell v. Ketchikan Pulp Co.*, 943 P.2d 1205 (Alaska 1987) ..................................16

*Intermedics, Inc. v. Ventritex, Inc.*, 804 F. Supp. 35 (N.D. CA
    1992) .................................................................................................27, 28

*Jackson v. Axton* 25 F.3d 884 (9th Cir. 1994) .........................................................31

*Kodiak Elec. Assoc. Inc. v. Delaval Turbine, Inc.*, 694 P.2d 150
    (Alaska 1984) ....................................................................................................16

*Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955) ....................26, 27, 28

*Magnuson v. Video Yesteryear*, 85 F.3d 1424 (9th Cir. 1996) .................................32

*Martech Const. Co., Inc. v. Ogden Envtl. Servs. Inc.*, 852 P.2d
    1146 (Alaska 1993) ..........................................................................19, 23, 24

*Mediterranean Ent. Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th
    Cir. 1983) ....................................................................................................22, 23

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S.
    913 (2005) .........................................................................................................21

*Miles v. American Seafoods Co.*, 197 F.3d 1032 (9th Cir. 1999) .............................18

*Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985 (9th Cir.
    2005) .................................................................................................................27

*Petroleum Sales Limited v. Mapco Alaska, Inc.*, 687 P.2d 923
    (Alaska 1984) ..............................................................................................17, 20

*Philbin v. Matanuska-Susitna Borough*, 991 P.2d 1263 (Alaska
    1999) .................................................................................................................24

*Smallwood v. Cent. Peninsula Gen. Hosp.*, 151 P.3d 319 (Alaska
    2006) ..............................................................................................16, 18, 20, 26

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996) ......................................................31

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Sobhani v. Radical.Media Inc.*, 257 F. Supp.2d 1234 (C.D. Cal. 2003)..................................................................................................30

*Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc.*, 307 F.3d 775 (9th Cir. 2002)...............................................................31

*Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064 (9th Cir. 2003)..................................27

*Tatum v. Barnhart*, 359 F. Supp. 2d 866 (D. Alaska 2004).........................................7

*Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292 (9th Cir. 1994)...................................................................................23

*Unova, Inc. v. Acer, Inc.*, 363 F.3d 1278 (Fed. Cir. 2004) ..............................17, 19, 20

*Western Pioneer, Inc. v. Harbor Enters., Inc.*, 818 P.2d 654 (Alaska 1991)..................................................................................24

**Statutes**

17 U.S.C. § 106(1) ......................................................................................30

17 U.S.C. § 106(3) ......................................................................................30

Berne Convention Implementation Act of 1988, Pub. L. 100-568, 102 stat. 2853 (1988) ..........................................................................30

**Other Authorities**

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[e][2][a] (1993).......................................................................17

H.P. Abrams, *The Law of Copyright* (2006) .......................................30

Restatement (Second) of Contracts § 302 (1981) .....................................16

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

# I.    INTRODUCTION

This is an action for copyright infringement arising from defendant's blatant copying of plaintiff Arctic Circle's unique and copyrighted photo album.  Defendant has moved for summary judgment claiming that Arctic Circle's earlier settlement with a third party – Ms. Sandy Roth – somehow provided defendant a prospective license to sell infringing goods.  The motion should be denied, and to the extent summary judgment should be granted at all, it should be granted to Arctic Circle for the reasons set forth below.

Arctic Circle did not agree to release Alaska Juneau Mining Company's future products when Arctic Circle settled with Ms. Roth in 2005.  Arctic Circle and Ms. Roth bargained for a release that covered past claims.  The plain meaning of the release is limited to claims based on past conduct.  The release did not include a license for Ms. Roth or anyone else to sell infringing goods in the future.  Yet, the album at issue here did not exist until six months after the earlier settlement.

This Court can walk a thousand miles in this motion in a single step by understanding that the photo album at issue did not exist – as a design or an actual album – until 2006.  The undisputed facts show that Alaska Juneau Mining Company took a pre-existing design, changed it, and manufactured the album at issue for the first time in 2006.  The album did not exist before that.  This simple fact precludes Alaska Juneau Mining Company's entire motion.  The release at issue does not cover new designs or new photo albums.  The doctrine of *res judicata* does not bar claims against products or courses of conduct that arise after the prior judgment.

Summary judgment in favor of Arctic Circle extinguishing Alaska Juneau Mining Company's release defense also is appropriate.  The language of the release

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
907.279.8561 / Facsimile 907.276.3108

in the earlier agreement with Ms. Roth does not, as a matter of law, bar Arctic Circle's claim against defendant. This is supported by the undisputed evidence of the negotiations. During those negotiations, Arctic Circle twice rejected the very release and future license the defendant now seeks – a "release" of future claims to future products based on designs once owned by Indian Arts and Crafts, Inc. This Court should not "interpret" that same release back into the contract. The Court should instead grant summary judgment that the 2005 release does not cover Alaska Juneau Mining Company's album.

## II.     ARCTIC CIRCLE DID NOT RELEASE ALASKA JUNEAU'S NEW PHOTO ALBUM

Five undisputed facts should lead this Court to deny Alaska Juneau Mining Company's LLC's ("AJMC") Motion for Summary Judgment and compel summary judgment in favor of Arctic Circle Enterprises LLC ("Arctic Circle"):

- Fact No. 1:  Arctic Circle created its copyrighted Alaska Map Photo Album in 1998.

- Fact No. 2:  Arctic Circle sued its former employee, Ms. Sandy Roth, in 2003 and accused two specific photo albums of infringement.

- Fact No. 3:  Arctic Circle settled that dispute in 2005 and agreed to a release that did not cover claims based on future conduct.

- Fact No. 4:  Arctic Circle and Ms. Roth considered and expressly rejected a separate clause in the release that would have covered claims based on future conduct.

- Fact No. 5:  The AJMC photo album accused in this case did not exist – as either a design or an actual photo album – until months after Arctic Circle agreed to the release.

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

These facts are undisputed and preclude, as a matter of law, the summary judgment AJMC seeks. These same undisputed facts also compel partial summary judgment in Arctic Circle's favor.

## A.    Arctic Circle Designed Its Original Alaska Map Photo Album in 1998

Arctic Circle is a family-run business that has designed, manufactured and distributed goods for the tourism industry from its Anchorage headquarters since 1956. McBrayer Decl., Ex. 6, p. 3 (Godfred Deposition at 7:10-8:24). Arctic Circle employs a substantial graphic design staff that produces thousands of original designs and products every year. *Id*. at p. 4 (11: 5-11). Arctic Circle's Alaska Map Photo Album has been the most popular and profitable of those designs in the last ten years. *Id*. at p. 5 ( 20:19-23).

Arctic Circle employee, Ms. Lorraine Wyles created the Alaska Map Photo Album in 1998. Ms. Wyles first received a request from Arctic Circle President, Mr. Mitchell Godfred in June 1998 to create a photo album featuring "an embossed Alaska map" with detailed features. *Id.* at Ex. 12, p. 4 (Wyles Deposition at 30:20 - 31:23). Ms. Wyles created an original design over the course of June and July 1998, designing



features that included the embossed map and symbols of Alaska such as a bald eagle, a float plane, and a cruise ship. *Id.* at pp. 3-4, 6 (28-29, 41-44). Ms. Wyles also designed the photo album with unique coloring, stitching, and embossing. *Id.* at Ex. 6, p. 6 (39-40); Ex. 12, pp. 3-4. Ms. Wyles was assisted by other Arctic Circle

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

artists, including Mr. Jason Reynolds and Ms. Pam Ruatto[1], but Ms. Wyles was the primary creative force behind the Alaska Map Photo Album. *See Id.* at Ex. 7, pp. 6-7 (25-26, 37-39); Ex. 12, pp. 3-5.

In July 1998, Arctic Circle turned to Pioneer Photo Album, Inc., the world's largest manufacturer of photo albums, to manufacture the album bearing Ms. Wyles' design. Mr. Sheldon Plutsky was Pioneer's President at the time. McBrayer Decl. Ex. 9, p. 4 (Plutsky Deposition 70:10 - 71:18). He had been an executive with Pioneer for more than 25 years and was very familiar with the photo albums being produced for the U.S. market. *Id.* at p. 5 (73:21 - 74:21). Mr. Plutsky and Pioneer Photo Album manufacture millions of photo albums in 300 standard and 500 - 1,000 custom styles every year. *Id.* at p. 4 (71:19-72:10). He also regularly monitored his competitors and was familiar with their photo album designs. *Id.* at p. 5 (73:21 - 74:21). Mr. Plutsky had never seen a photo album with the color, size or configuration of Arctic Circle's design. *Id.* p. 3 (34:7-10, 35:15-16). Arctic Circle's Alaska Map Photo Album was "totally unique." *Id.* (36:15-18).

**B.    Indian Arts and Crafts Copied Arctic Circle in 1999**

Indian Arts and Crafts, Inc. ("IAAC") designed a beige embossed Alaska map photo album in 1999 that indisputably post-dated Arctic Circle's design.   IAAC was

---

[1] Ms. Ruatto considered herself "an employee" of Arctic Circle at the time. McBrayer Decl. Ex. 11, p. 3 (Ruatto Deposition 7:22-25); *Id.* at p. 4 (12:8-13:5). She believed that any of her work belonged to Arctic Circle as a work-for-hire. *Id.* p. 9 (90:8-92:6). Arctic Circle owned the rights to any contribution, including the Alaska map she had and later embellished for Arctic Circle, that Ms. Wyles made. *Id.* Ms. Ruatto later executed an assignment to Arctic Circle as a means to memorialize the agreement that existed at the time of Ms. Wyles' engagement with Arctic Circle. *Id.* p. 8 (59-60). It is thus undisputed between Ms. Ruatto and Arctic Circle (and in the record) that Arctic Circle owned all copyrights and intellectual property in the Alaska Map Photo Album from the time of its creation.

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

a Seattle-based competitor of Arctic Circle during the 1990s.  Like Arctic Circle,
IAAC manufactured a broad range of goods, including photo albums.



See Coates Decl ¶ 5, Ex. 1.  In 1999, IAAC hired Mr. Jeff Knutson, a graphic artist who had worked for Arctic Circle until September 1998 (including during the timeframe Ms. Wyles and Arctic Circle created the Alaska Map Photo Album). *See* Godfred Decl. ¶ 5-7.  IAAC management directed their new employee to design a "photo album with a map," McBrayer Decl. Ex. 7, p. 8 (81:1-8).

Mr. Knutson then designed the album pictured above (the "IAAC Photo Album")
some time in 1999.[2]  McBrayer Decl. Ex. 7, p. 3 (14:16-21), 8 (81:20–82:17).  The
record is undisputed that the IAAC Photo Album postdated Arctic Circle's Alaska
Map Photo Album.

## C.    The 2003 Roth Lawsuit Was Limited to Two Specific Photo Album Designs

### 1.    Arctic Circle Accused Two Photo Album Designs.

Arctic Circle filed suit against Ms. Sandy Roth and Tandem Imports, Inc.
(collectively, "Roth") on June 24, 2003 ("the Roth Litigation").  Ms. Roth was Arctic
Circle's former employee who violated her non-compete agreement with Arctic
Circle by starting a new competing business selling copies of several Arctic Circle
products.  *See* McBrayer Decl. Ex. 14, ¶¶ 9-14.  Arctic Circle accused Roth of

---

[2] Indian Arts and Crafts went out of business within one to two seasons thereafter and sold
its design portfolio to a group of buyers including Mr. David Coates.  Coates Decl. ¶¶ 4-5.

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
907.279.8561 / Facsimile 907.276.3108

breaching her contract and of infringing Arctic Circle's trademarks and trade dress.
McBrayer Decl., Ex. 14, ¶¶ 23-30. Among several products at issue in the Roth
Litigation were photo albums with two designs[3].





**ROTH I**                    **ROTH II**

Ms. Roth conceived these photo albums in 2003 at the request of Mr. David
Coates. McBrayer Decl., Ex. 22, p. 4 (Roth Deposition 80:5-6), p. 5 (88:1-14). He
asked her to design a "beige color" photo album with a "map design." *Id.*
Mr. Coates gave Ms. Roth several sources for the suggested design including a
sample photo album from J.C. Marketing and a page from IAAC's 2000 catalog. *Id.*
at p. 4 (86:5-20). Mr. Coates agreed to Ms. Roth's suggestion that she incorporate
these designs and "change them to make them better." *Id.* at Ex. 8, p. 3 (82:24-25).

---

[3] Arctic Circle accused four total photo albums of infringing its intellectual property rights.
One was a "panoramic photo album" and is not material to this case. The remaining three albums
were item Nos. 8688 (100-pocket album) and No. 8689 (200-pocket album) with an identical design
(pictured above as "Roth I") and Roth item No. -41235 ("Roth II"). These two designs were the only
photo album designs accused in the Roth Litigation. *See* McBrayer Decl. Ex. 14-15; Ex. 27. The
IAAC Photo Album was not an accused product because Ms. Roth did not make the IAAC Photo
Album.

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Ms. Roth came up with a new design "concept" in January 2003. *Id.* at Ex. 22, p. 7 (97:18 - 98:5). Ms. Roth then sent her material to a freelance graphic artist in Shanghai named Lu Fei. *Id.* at p. 3 (83:1-24). Lu Fei designed the Roth I and Roth II photo albums in January - February 2003, and sent Ms. Roth email samples through three or four successive revisions. *Id.* at p 6 (89:16 - 90:5). Ms. Roth then manufactured and sold the Roth I and Roth II albums to retailers in Southeast Alaska, including Mr. Coates, in a manner that prompted Arctic Circle's lawsuit.

## 2.     The IAAC Photo Album Was Not "Alleged in Any Pleading."

Roth I and Roth II were the only photo albums accused in the pleadings[4] of the Roth Litigation. The parties filed four pleadings - a Complaint and Amended Complaint by Arctic Circle and an Answer and Amended Answer by Roth. *See* McBrayer Decl. Ex. 14-17; Keyes Decl. Ex. 1 (docket sheet). None of these four pleadings contains an allegation that the IAAC Photo Album existed. *See* McBrayer Decl., Exs. 14-17; Ex. 27.

Roth's Amended Answer of September 24, 2003 did not mention the IAAC Photo Album. It alleged an option to buy unnamed IAAC designs, specifically that "Roth owns the right to purchase the Indian Arts and Crafts products and designs (many of which were designed by her) from suppliers." *Id.,* Ex. 17 ¶ 48. This right to buy unnamed products was not an allegation that any one product or design existed in fact. Moreover, the only "Indian Arts and Crafts products and designs" discussed

---

[4] Federal Rule of Civil Procedure 7(a) defines a "pleading" in civil litigation as a complaint, answer, a reply to counterclaims, an answer to cross-claims or a third-party complaint or answer. "No other pleading shall be allowed." *Id.* Motions, affidavits, depositions and documents are not pleadings. *See Tatum v. Barnhart*, 359 F. Supp. 2d 866, 871 (D. Alaska 2004) (affidavits are not pleadings); *Gov't Employees Ins. Co. v. Dunst*, 2005 WL 856819, *1 (D. Alaska 2005) (motions are not pleadings).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Arctic Circle v. Alaska Juneau Mining          -7-
Case No. 3:06-cv-0170-TMB
59840-0003/LEGAL13188872.1

in the Amended Answer were those created during Roth's employment with IAAC until 1995. The IAAC Photo Album was not part of that group because it was designed four years later in 1999. *See id.* ¶¶ 14-20. The IAAC Photo Album was not "alleged" in the pleadings.

**D.    The Roth Settlement Agreement Did Not Release Future Conduct**

Arctic Circle and Roth mediated their dispute with Magistrate Judge Branson on March 21, 2005. The parties agreed in principle to a settlement and proceeded for two months to draft a Settlement Agreement and Mutual Release ("Roth Settlement Agreement"). McBrayer Decl., Ex. 23. The Roth Settlement Agreement contained a release of current claims and was further limited to such current claims arising out of facts alleged in the pleadings.

**1.    The Release Was Limited to Past Claims.**

Arctic Circle released Roth, her customers and end-users of her products and services (the "Roth Releases"), and gave a covenant not to sue the same, for:

**R E D A C T E D**

McBrayer Decl., Ex. 23, ¶ 2(b) (the "Release").

Arctic Circle did not release claims based on future conduct or products. A clause-by-clause breakdown of the Release shows that *at the time of the Release* it covered all claims known or unknown that ACE:

**R E D A C T E D**

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Arctic Circle v. Alaska Juneau Mining                    -8-
Case No. 3:06-cv-0170-TMB
59840-0003/LEGAL13188872.1

**R E D A C T E D**

against the Roth Releasees.  Nothing in the Release extends to claims based on future

conduct or future products or otherwise provided a license to Arctic Circle's

copyrights.

> **2.      The Parties Considered and Rejected a Release that Expressly
> Covered Future Products by Mr. Coates and Others Based on the
> IAAC Portfolio.**

Ms. Roth's attorney transmitted the first draft of the Roth Settlement

Agreement to Arctic Circle's attorney on April 14, 2005.  McBrayer Decl., Ex. 21,

p. 2.  The first draft contained the Release in the identical form in which it was later

executed.  *Compare id*. at Ex. 23, p. 4 with Ex. 21 p. 5.  Roth also proposed an

additional release in paragraph 2(c):

**R E D A C T E D**

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
907.279.8561 / Facsimile 907.276.3108

**R E D A C T E D**

*Id.* at Ex. 21, p. 3 (emphasis in original) (the "Future IAAC Covenant").

Arctic Circle's attorney, Mr. Bruce Bookman, responded to Roth's proposal four days later and rejected the Future IAAC Covenant in the email reproduced below.

**R E D A C T E D**

*Id.* at p. 11. Ms. Roth's attorney, Mr. Ken Kagan, responded 19 minutes later and again requested a release that would cover future products based on IAAC's designs.

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Arctic Circle v. Alaska Juneau Mining                    -10-
Case No. 3:06-cv-0170-TMB
59840-0003/LEGAL13188872.1

**R E D A C T E D**

*Id.*  Mr. Bookman promptly rejected any covenant or license for future products, including the Future IAAC Covenant.  "Please send me an appropriate settlement agreement.  We cannot fight battles over IAAC that might never happen."  *Id.* at p. 13.

Ms. Roth's attorney then dropped Roth's demand for the Future IAAC Covenant or any other provision dealing with future claims.  He instead offered an idea to "recognize the potential for conflict, and to try to find a way of waging peace."

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
907.279.8561 / Facsimile 907.276.3108

Arctic Circle v. Alaska Juneau Mining                    -11-
Case No. 3:06-cv-0170-TMB
59840-0003/LEGAL13188872.1

**R E D A C T E D**

*Id.* p. 15.  Mr. Bookman and Arctic Circle then rejected even this idea to deal with claims based on future designs.

**R E D A C T E D**

*Id.* at p. 14.

Mr. Kagan sent a "Revised Settlement Agreement" on April 27, 2005 in which Roth abandoned her attempt to obtain a covenant or license relating to future products.  *Id.* at pp. 15-24.  The Revised Settlement Agreement did not contain the Future IAAC Covenant or any substitute provision.  Arctic Circle and Roth signed the final Roth Settlement Agreement on May 12, 2005.  *Id*. at Ex. 23.

Mr. Godfred, President of Arctic Circle, confirmed this sequence of events during his deposition.  Arctic Circle understood that the Release was limited to past actions and the existing stock of Roth I and Roth II albums.  *Id.* at Ex. 6, p. 10 (127:3-10).  The Release did not allow Ms. Roth or anyone else to reproduce or re-order the same items in the future.  *Id.*

**R E D A C T E D**

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
907.279.8561 / Facsimile 907.276.3108

Arctic Circle v. Alaska Juneau Mining                    -12-
Case No. 3:06-cv-0170-TMB
59840-0003/LEGAL13188872.1

**R E D A C T E D**

*Id.* (128:1-17). The purpose of the Release in its final form was to allow Ms. Roth and her customers to sell existing inventory, not to give them "carte blanche" to produce a "different design and produce a copyright violation." *Id.* at p. 11 (129:14-18).

E.     **The Photo Album at Issue in This Case Did Not Exist Before**

The Alaska Juneau Mining Company photo album at issue in this case did not exist when Arctic Circle settled the Roth Litigation in 2005. The album at issue was not designed or manufactured until 2006.

Mr. Coates and Alaska Juneau Mining Company needed another photo album supplier and approached Hayes Specialties, Inc., a souvenir manufacturer in Michigan in December 2005. Hayes Specialties did not make the albums accused in the Roth Litigation. Mr. Coates asked Hayes to design and manufacture an embossed Alaska map photo album. McBrayer Decl. Ex. 7, p. 3. Mr. Coates sent Hayes a picture of the 1999 IAAC Photo Album as a starting point. *Id.* (14:11-19). A graphic designer in Hayes' Shanghai office, Ms. Ellen Liu, then "revised" the design. McBrayer Decl. Ex. 24, p. 3. Mr. Coates did not approve that new and modified design until January 6, 2006. *Id.* at p. 2; *see also* Ex. 7 at p. 4 (25:2–26:14), 6 (33:6–35:1), 7 (39:7-40:20). The first albums arrived in the United States in April 2006. *Id.* at Ex. 25. *See also,* Ex. 7, p. 7 (37: 7-20).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108




**IAAC Photo Album**                    **2006 AJMC Photo Album**

The 2006 AJMC Photo Album is different from the IAAC Photo Album design in at least the following ways:

- AJMC changed the color of the IAAC design to a lighter tan[5] (much closer to the color of Arctic Circle's album);

- AJMC changed the binding and spine to remove the dark band covering the spine;

- AJMC changed the "Alaska" banner and used smaller text, with a different text design, printed in a different color;

- AJMC decreased the font size of the city and other geographic labels;

- AJMC moved the salmon emblem toward the bottom edge of the album; and

---

[5] The color of the IAAC Photo Album shown above at left is a true copy of the color document provided to Arctic Circle and used by AJMC at a deposition in this matter. McBrayer Decl. ¶ 3, Ex. 2. Arctic Circle verified the accuracy of this color with AJMC in two different communications, and heard no objection before filing this Opposition. *Id.* Ex. 2, pp. 3-5.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

- AJMC decreased the size of the bald eagle emblem and moved it away from the outline of Southeast Alaska.

As a consequence, the 2006 AJMC Photo Album design is a new and separate design. Moreover, the albums themselves did not physically exist until Hayes manufactured them in 2006.

## III.    THE ROTH SETTLEMENT AGREEMENT DOES NOT COVER AJMC'S NEW PHOTO ALBUM

Arctic Circle did not release claims against Alaska Juneau Mining Company's new photo album. The release did not cover claims arising from future conduct. Yet, AJMC now seeks to apply the Release to a photo album that did not even exist when Arctic Circle agreed to the Release. The language of the Release, its negotiation history, and the timing of the AJMC Photo Album are undisputed. They alone justify denial of AJMC's motion and a grant of partial summary judgment in favor of Arctic Circle.

Alaska Juneau Mining Company tries to avoid the backward-looking nature of the Release with a backdoor approach. AJMC first applies the wrong law to this issue and ignores the burdens on a party claiming to be a third-party beneficiary of a contract. Alaska law squarely places the burden on such a claimant to show that the parties intended to cover it in the manner asserted. AJMC then argues that Arctic Circle released an old claim against Mr. Coates for inducing copyright infringement. AJMC's argument regarding the inducement claim ignores the law, the Release, and its negotiation history.

## A.    AJMC Bears the Burden as a Putative Third-Party Beneficiary

AJMC first stumbles when it ignores Alaska contract law. AJMC is at best a third-party beneficiary of the Roth Settlement Agreement. As such, AJMC bears the

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

burden under Alaska law to prove it was an "intended beneficiary" of the contract between Arctic Circle and Roth. *Kodiak Elec. Assoc. Inc. v. Delaval Turbine, Inc.*, 694 P.2d 150, 154 (Alaska 1984); *Howell v. Ketchikan Pulp Co.*, 943 P.2d 1205, 1207-08 (Alaska 1987).

In evaluating whether a putative beneficiary can show it was an intended beneficiary, Alaska courts follow the approach of the Restatement (Second) of Contracts and focus on the intent of the promissee to confer the benefit sought. *Smallwood v. Cent. Peninsula Gen. Hosp.*, 151 P.3d 319, 324 (Alaska 2006). The circumstances surrounding the transaction, as well as the language of the contract itself are relevant. Restatement (Second) of Contracts § 302 cmt. a (1981); *see also Fairbanks Northstar Borough v. Tundra Tours, Inc.*, 719 P.2d 1020, 1024 (Alaska 1986) (intent should be assessed from the language of the disputed provision and relevant extrinsic evidence, whether or not the contract is ambiguous). The burden remains with the putative third-party beneficiary throughout the process. *See Kodiak Elec.*, 694 P.2d at 154.

**B.     The Court Should Closely Analyze the Release For Distinctions Between Claims Based on Past and Future Conduct**

This Court's analysis of the Release should start with the language of the Release itself. In doing so, the Court should draw careful distinctions between the language required to release claims based on past conduct and that required to provide a covenant or license to future events or products. Assertions detached from the contract itself, for example that the language is "broad" or "all encompassing," are useless. The Court should interpret the contract based on the contract itself and the parties' intent. *Brown v. Brown*, 983 P.2d 1264, 1267-68 (Alaska 1999).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Alaska and Ninth Circuit Courts have been careful to distinguish releases of claims based on past conduct from those reaching claims based on future conduct. *See Unova, Inc. v. Acer, Inc.*, 363 F.3d 1278, 1280-81 (Fed. Cir. 2004); *Petroleum Sales Limited v. Mapco Alaska, Inc.*, 687 P.2d 923, 930 (Alaska 1984). In *Mapco*, the release at issue was contained in a settlement of a prior antitrust action and covered all claims based on conduct up to and including the settlement date. *Id*. at 928-929. The defendant, an alleged monopolist, increased its prices after the settlement. *Id*. The plaintiff then claimed antitrust violations based on the prior course of conduct and added the single post-settlement pricing event to its allegations. *Id*. The Alaska Supreme Court distinguished between claims based on past and future conduct. *See id*. at 929. The alleged monopolistic activity up to the date of the settlement was released. The remaining conduct - the single pricing event - was not released. *Id*. The Court dismissed the new claim only because the new act by itself was not sufficient to support a new cause of action. *Id*. The Alaska Supreme Court continued:

> This is not to say that appellants are forever barred from bringing a future antitrust claim against Mapco. There is no dispute that a new cause of action accrues for damages caused by post-settlement antitrust conduct each time such new or renewed conduct is engaged in.

*Id*.[6] *See also Botefur v. City of Eagle Point*, 7 F.3d 152, 157-58 (9th Cir. 1993) (a release of claims for matters through the date of settlement does not release liability

---

[6] This is true in the copyright context as well. A new distribution, performance, reproduction, or display is a new infringement. *Blackman v. Hustler Magazine, Inc.*, 620 F. Supp. 792, 796 (D.C. D.C. 1985) (three successive publications of the same photographs involving a distinct machinery set-up were separate infringements); *See also* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[e][2][a] (1993), citing *Cory v. Physical Culture Hotel, Inc.*, 14 F. Supp. 977, 985 (D.C.N.Y. 1936) (each independently arranged printing of the same copyrighted photograph in separate issues of the same magazine constituted a separate infringement).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

for conduct that occurred after the settlement agreement); *Miles v. American Seafoods Co.*, 197 F.3d 1032, 1033 (9th Cir. 1999).

## C.    The Plain Language of the Release does not Cover Future Conduct

As a preliminary matter, the Release does not cover claims arising from future conduct. It is limited to claims that Arctic Circle had or claimed to have had, or which Arctic Circle "at any time heretofore" had or claimed to have had at the time of the Release. McBrayer Decl. Ex. 23. It is unmistakably backward-looking. Nothing in the Release shows that the promisee (Roth) intended to cover future conduct. *See Smallwood*, 151 P.3d at 324. The Court need look no further than the four corners of the Release to rule in Arctic Circle's favor.[7]

The testimony in this case confirms the plain meaning. Even ignoring the Bookman/Kagan correspondence, the parties' intent to release only past conduct is undisputed. AJMC submitted no testimony from Ms. Roth regarding her intent at the time. Meanwhile, Mr. Godfred testified that Arctic Circle did not intend the release to cover future products. *Id.* at Ex. 6 pp. 10-12 (125:2-134:12). This evidence alone confirms Arctic Circle's interpretation.

The plain meaning of the Release does not cover Arctic Circle's current claim. AJMC made a new album in 2006. Compare McBrayer Decl. Exs. 2, 5. It changed the color, spine, and binding. *Id.*; *see also id.,* Exs. 24 - 25; Ex. 7, p. 5 (29:11-32:15). It changed the "Alaska" banner to use smaller text with a different design and a different color. *Id.* It changed the printing of the cities and moved the salmon and eagle emblems. Compare *id.*, Exs. 2, 5; *see also id.* Ex. 6 (126:20-22) ("It's a

---

[7] Arctic Circle and AJMC are conferring as this Opposition is filed regarding a discovery dispute over the correspondence between Messrs. Bookman and Kagan. Regardless of the outcome of the discovery dispute, the Court need not rely on the Bookman/Kagan correspondence to find for Arctic Circle. That part of the negotiation history merely confirms, albeit forcefully, the plain meaning of the Release.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

different design that Mr. Coates has produced."). AJMC then manufactured and sold the new album – in 2006. *Id.* Ex. 7, p. 5 (29:7-15); Ex. 25 (albums scheduled to arrive in U.S. in April 2006). Even setting aside the design changes, the AJMC Photo Album was a new infringement because it was made in a new printing. *Blackman*, 620 F. Supp. at 796. The Release did not cover such future conduct.

AJMC's own cases highlight the difference between a release of past claims and one extending to claims arising from future conduct. The release in *Augustine Medical* extended to future claims. *Augustine Medical, Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1371 (Fed. Cir. 1999) ("the phrase 'may have' is necessarily future-oriented"). Similarly, the release in *Martech* expressly covered future claims. *Martech Const. Co., Inc. v. Ogden Envtl. Servs. Inc.*, 852 P.2d 1146, 1148 (Alaska 1993) (the release "specifically encompasses…claims...which might have arisen in the future."). Both the Federal Circuit and the Alaska Supreme Court relied on such "future-oriented" clauses in each respective release when they found the *release at issue* covered post-settlement claims. *Augustine Medical*, 194 F 3d at 1371; *Martech*, 852 P.2d at 1152 ("Care was not taken to limit the application of this release. On the contrary, care was taken to include any and all liability which arose, or might arise."). These cases do not apply here to a release that is not "future-oriented."[8]

---

[8] *Augustine Medical* and *Martech* also are inapplicable here because they did not address the applicability of a release to a third party beneficiary. The courts in both cases placed the burden on the releasor to prove that later claims were not released. *See e.g., Augustine Medical*, 194 F 3d at 1373. More recently than *Augustine Medical*, the Federal Circuit examined a third-party's request to be covered by a release and recognized that state law placed the burden on the putative third-party beneficiary. *Unova, Inc. v. Acer, Inc.*, 363 F.3d 1278, 1280-81 (Fed. Cir. 2004). The Court held the third-party did not meet its burden to show the release extended to claims based on future conduct. *Id.* Interpreting a contract between for later applicability to the same two parties is different than determining whether *and the extent to which* those parties intended the contract to benefit another person. *See Bresnahan v. Bowen*, 263 F. Supp. 2d 131, 136 (D. Me. 2003) (precedent regarding a

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Arctic Circle v. Alaska Juneau Mining          -19-
Case No. 3:06-cv-0170-TMB
59840-0003/LEGAL13188872.1

The release in this case is more like the releases at issue in *Botefur* and *Mapco*. Both releases covered claims arising from conduct through the date of the settlement agreement. In *Botefur* the Ninth Circuit allowed the plaintiff's later suit to proceed. *Botefur*, 7 F.3d at 157-58. The Alaska Supreme Court in *Mapco* rejected the future claims, but not because they were barred by the release. *Mapco*, 687 P.2d at 929. The Court took care to note that the release would allow "a new cause of action" if it were based on post-settlement conduct. *Id*. As in *Botefur* and *Mapco,* the release here does not cover future conduct.

### D.    The Court should Reject AJMC's Backdoor Attempt to Expand the Release to Reach the Future

AJMC instead tries to find another route to preclude future claims. AJMC argues that Arctic Circle did have a claim against AJMC at the time of the settlement because Arctic Circle "knew about the IAAC design" and that Mr. Coates used that design to induce or contribute to Ms. Roth's infringement. Thus (the story goes), Arctic Circle released that inducement claim. AJMC then argues that Arctic Circle released not only a *claim*, but also gave a covenant and license for future use of the infringing Roth I and Roth II albums *and* all other designs used as a design reference. *See* Motion at 13. AJMC concludes by saying its new album is "similar to" one of those design references such that its 2006 infringing acts were already released. *Id.* ("Coates and his company … are insulated from any and all liability regarding the IAAC design"). This statement is nothing short of astonishing. It ignores the Release, the negotiation history, Alaska contract law, and common sense.

---

release between immediate parties is inapplicable when an independent third party attempts to apply the release to new claims). Here as in *Unova*, AJMC is a putative third party beneficiary and bears the burden to prove it is an intended beneficiary of a release covering claims arising from future conduct. *See Smallwood*, 151 P.3d at 324; *Unova*, 363 F.3d at 1281-82.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Arctic Circle v. Alaska Juneau Mining                    -20-
Case No. 3:06-cv-0170-TMB
59840-0003/LEGAL13188872.1

### 1.    AJMC ignores that inducement is a theory of vicarious liability.

Alaska Juneau Mining Company's argument ignores the fact that the Release covers *claims* not *designs*.  Any claim for inducement or contributory infringement would have been based on Mr. Coates' acts to aid and abet the infringement by the Roth I and Roth II albums.[9]  Roth I and Roth II infringed; any other albums (such as the IAAC design) were only tools in that infringement.  Any claim was necessarily limited to the Roth I and Roth II photo albums because those albums were the only albums accused of infringement in the pleadings.  The Court should deny AJMC's motion because any inducement claim covered by the Release extended only to Roth I and Roth II.

AJMC seeks to avoid this by arguing that Arctic Circle "knew" about other designs merely "related to" Roth I and Roth II, including the IAAC Photo Album design.  Its argument fails in several ways.

### 2.    The Release did not cover the mere tools of inducement

Any release of an inducement claim did not excuse all future use of the tools of that inducement.  Again, assuming *arguendo* that Mr. Coates induced Ms. Roth, he did so using several tools.  He used the photo album sample from J.C. Marketing and a catalog photograph of the IAAC Photo Album design to suggest designs.  *See* McBrayer Decl. Ex. 22, p. 4 (86:5-16).  He also used his telephone to discuss the order with Ms. Roth.  *Id*. at p. 5 (88:16-25).  The Release might now prevent Arctic Circle from pursuing a legal claim against Mr. Coates for earlier sales of Roth I and Roth II.  It does not excuse other post-settlement torts accomplished with those same

---

[9]  Inducement is a theory of vicarious liability akin to aiding and abetting.  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005).  If such a claim and release existed, Arctic Circle could not seek to establish that Mr. Coates was vicariously liable for damages caused by Ms. Roth with sales of the *Roth I and Roth II photo albums*.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Arctic Circle v. Alaska Juneau Mining        -21-
Case No. 3:06-cv-0170-TMB
59840-0003/LEGAL13188872.1

tools.  For instance, the Release would not cover Mr. Coates or AJMC if he now used the same telephone to order or sell a new infringing souvenir product.  The telephone may have been a tool in the earlier released inducement but its later use in a manner that gives rise to a new claim is not covered.[10]

> ### 3.    The Release here was limited to claims "arising out of facts alleged in the pleadings" in the Roth Lawsuit

Alaska Juneau Mining Company's argument fails in a third way because the Release is limited to claims "arising out of facts alleged in the pleadings."  This is narrower than AJMC acknowledges in two ways.  First, the Release is limited by facts alleged in the Roth Litigation pleadings.  Roth I and Roth II were the only material photo albums accused in the pleadings.  *See* McBrayer Decl. Ex. 27.  Avoiding this, AJMC now argues that Arctic Circle "knew" about the IAAC Photo Album design.  This may be true, but the Release did not extend to all claims about which Arctic Circle "knew."

Second, the Release was limited to claims "arising out of" certain facts.  The phrase "arising out of" is significantly narrower than the phrase "arising out of or relating to."  *Mediterranean Ent. Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983); *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th

---

[10] Using another legal theory as an example, imagine Mr. Coates owned a baseball bat and a separate design for a baseball bat.  Mr. Coates might be liable for aiding and abetting (inducing) an assault if he showed Ms. Roth the design and the bat (to enable her to design a bat herself) and encouraged her to assault another person with the new Roth bat.  Were the victim to sue Ms. Roth, she might settle the action and obtain a release for both her and Mr. Coates for all claims "arising out of" the assault.  Such a release would not cover Mr. Coates if he later made a new Coates bat (different than the Roth bat and changed from the Coates design) and then used the Coates bat to assault the same person.  Such a release would not cover his conduct even if the Coates bat were *exactly* the same as the Coates design he used to induce Ms. Roth.  The Coates design may have been used as a tool of inducement, but the later claim is not covered by the release because the release covers earlier *claims* not later use of the same tools.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Cir. 1994) ("the omission of the 'relating to' language is significant").[11]  Avoiding this too, AJMC argues the 2006 AJMC Photo Album is merely related to designs used in the course of Mr. Coates' earlier inducement. Motion at 11 ("Consequently, as a matter of law, ACE's release of Coates and AJMC *with respect to* any claims *regarding* the IAAC Design allow Coates and AJMC to make and sell additional IAAC Alaska Map Photo Albums").  This argument ignores the Release at issue. The Release at issue in this case does not extend to claims "relating to," "with respect to" or "regarding" the facts alleged in Roth.  The IAAC design (and any photo albums later designed by someone looking at it) does not "arise out of" any fact "alleged in the pleadings" in the Roth Litigation.

In this regard, the Court should reject AJMC's reliance on *Augustine Medical* and *Martech* because the releases at issue were materially different.  *Augustine Medical* and *Martech* both addressed releases that expressly covered claims "related to" certain facts.  *See Augustine Medical*, 194 F. 3d at 1373 ("in the case before us, the Settlement Agreement contains the phrase 'or relating to,' which implies the same *permissible indirect relationship* between Augustine's possible future claims and [the defendant's] actions") (emphasis added); *Martech*, 852 P.2d at 1148, 1152 n.11.  The Federal Circuit in *Augustine Medical* placed particular significance on the presence of the phrase "related to" in the contract.  The Court italicized its own use of "related to" three times in the relevant paragraph.  *See Augustine Medical*, 194 F. 3d at 1371.  Moreover, the Court hinted in dicta that the future claims would not have been released if the contract had instead used the phrase "based on." *Id.*  (Augustine's claims were not based on earlier acts but were sufficiently related to those earlier acts

---

[11]  *Mediterranean Ent.* and *Tracer Research* are arbitration cases but apply here because the underlying analysis is the same.  The Ninth Circuit was interpreting a contract to determine whether the contract covered later claims based on future conduct.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

to fall within the release).  The phrase "related to" was crucial in *Augustine Medical* and *Martech* and is wholly absent from the Release here.  The Court should accordingly decline to find the "permissible indirect relationship" in this Release that AJMC now seeks.

**E.    Evidence Regarding Negotiation of the Scope of the Release Confirms its Plain Meaning**

AJMC's proposed interpretation of this contract mirrors the Future IAAC Covenant initially offered by Mr. Kagan.  The Future IAAC Covenant, however, was rejected.  Repeatedly.  It should not be "interpreted" back into the contract.

The parties did not intend that the Release would cover future use of IAAC Designs.  McBrayer Decl. Ex. 6, pp. 10-12 (125:2–134:12).  Arctic Circle rejected the possibility that Roth or Mr. Coates could even sell new copies of Roth I and Roth II.  *Id.*  Future sales of a new design were even more out of the question.  *Id.*; *see also*  McBrayer Decl. Ex. 21, p. 13 ("We cannot fight battles over IAAC that might never happen.").  Roth signed the contract without resolving those future battles; any remaining desire on her part to cover future use of IAAC designs is not "intent" to have a broader release.[12]  Alaska Juneau Mining Company should not be permitted to litigate into the Release what Roth failed to negotiate.

_____

[12]  Even if AJMC produces in Reply new evidence of the parties' intent that supports its reading of the contract, such evidence would not be sufficient to support a grant of summary judgment.  *Froines v. Valdez Fisheries Development Ass'n Inc.*, 75 P.3d 83, 87 (Alaska 2003) *quoting Western Pioneer, Inc. v. Harbor Enters., Inc.*, 818 P.2d 654, 657 n.4 (Alaska 1991) ("Determining the meaning of a contract is treated as a question of law for the court except where there is conflicting extrinsic evidence on which resolution of the contract's meaning depends. . . If the language is susceptible to [two] asserted meanings, the interpretation of the contract is a question of fact for the jury.")  To the extent that any uncertainty remains, the case cannot be decided on summary judgment.  *Philbin v. Matanuska-Susitna Borough*, 991 P.2d 1263, 1269 (Alaska 1999) (reversing a summary judgment which held that a claim was precluded by a release, because the scope of the settlement was not clear.)

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
907.279.8561 / Facsimile 907.276.3108

The negotiation history also confirms that Arctic Circle did "make manifest" its reservation of claims based on future products. In fact, Arctic Circle hardly could have communicated its reservation in a more manifest manner. It twice rejected a release, the "express purpose" of which was to release all claims by Arctic Circle against the Roth Releasees relating to "designs that are the same or similar to the IAAC Designs." McBrayer Decl. at Ex. 21, p. 5. As with above, the testimony of record and the Bookman/Kagan emails confirm Arctic Circle's reservation of claims based on future products. *Id.* at p. 2, 12-16.

**F.     The Court Should Grant Summary Judgment in Favor of Arctic Circle**

The Court can and should grant partial summary judgment precluding AJMC's defense based on the Release because no genuine issues of material fact exist. For the reasons discussed above, the following facts are undisputed in the record and establish that the Release does not cover Arctic Circle's current claims:

- Fact No. 1: Arctic Circle created its copyrighted Alaska Map Photo Album in 1998. McBrayer Decl. Ex. 12, pp. 3-5, Ex. 13.

- Fact No. 2: Arctic Circle sued its former employee, Ms. Sandy Roth, in 2003 and accused two specific photo albums of infringement. McBrayer Decl. Ex. 14-15.

- Fact No. 3: Arctic Circle and Ms. Roth settled their dispute in 2005 and agreed to a release that did not cover claims based on future conduct. McBrayer Decl. Ex. 23.

- Fact No. 4: Arctic Circle and Ms. Roth considered and expressly rejected a separate clause in the release that would have covered claims based on future conduct. McBrayer Decl. Ex. 21; Ex. 6, pp. 10-12.

- Fact No. 5: The AJMC photo album accused in this case did not exist - as either a design or an actual photo album - until months after

Arctic Circle agreed to the release.  McBrayer Decl. Ex. 7, p 5;
Ex. 24-25.

Partial summary judgment extinguishing AJMC's defense based on the Release is appropriate.  *See Asmus v. Pacific Bell*, 159 F.3d 422, 424 (9th Cir. 1998) (granting summary judgment based on a clearly interpretable release is appropriate); *see also Geol v. Jain*, 259 F. Supp.2d 1128, 1138 (W.D. Wa. 2003) (unambiguous terms of a valid release are proper bases for summary judgment).  AJMC will bear the burden at trial to show it is an intended beneficiary.  *See Smallwood*, 151 P.3d at 324.  Yet, no evidence in the record supports its version of the contract.  Even drawing all inferences in Alaska Juneau Mining Company's favor, no disputed facts exist.  The Court should grant summary judgment.

## IV.    *RES JUDICATA* DOES NOT PRECLUDE ARCTIC CIRCLE'S CLAIM

Alaska Juneau Mining Company's claim preclusion argument is wrong on the law and ignores one crucial fact - its own album did not exist until after the prior judgment.

### A.    *Res Judicata* Does Not Apply to Claims That Did Not Exist at the Time of the Prior Judgment

Alaska Juneau Mining Company's summary of *res judicata* precedent omitted a long-standing core principle:

> While [a prior judgment] precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.

*Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 328 (1955).  A plaintiff cannot be deprived of new claims substantially based on new wrongs or post-judgment events even if the parties and the legal theory in the later case are identical.

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

*Id.*; *see also Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1078-79 (9th Cir. 2003).

Claims that stand alone based on post-settlement events are not precluded because such claims do not satisfy two factors of the Ninth Circuit's four-part test for application of *res judicata*.[13]  New events or new products that arise after the settlement agreement are not barred because they do not arise "out of the same transactional nucleus of facts" and do not involve "substantially the same evidence" as the first action.  *Intermedics, Inc. v. Ventritex, Inc.*, 804 F. Supp. 35, 43 (N.D. CA 1992) (*res judicata* did not bar trade secret claims based on post-settlement conduct even though the second action involved identical intellectual property rights).  Post-settlement conduct creates an independent claim with a new nucleus of operative fact.  *Lawlor*, 349 U.S. at 328.

In this regard, Ninth Circuit courts sometimes focus on whether "the claims could have been brought" in the prior case.  *See Tahoe Sierra*, 322 F.3d at 1078.  Plainly, claims based on post-settlement conduct are claims that could not have been brought in the prior case because the claim and facts did not yet exist.  *Id.*; *Hiser v. Franklin*, 94 F.3d 1287, 1292 (9th Cir. 1996) (claim preclusion does not apply if the claim "is based on a different set of operative facts and is not merely an alternative remedy or theory of recovery."); *Fadaie v. Alaska Airlines, Inc.*, 293 F. Supp. 2d 1210, 1218 (W.D. Wash. 2003).

---

[13] In a claim prelusion analysis the Court should consider whether (1) the two suits arise out of the same transaction or nucleus of facts; (2) the rights or interests established in the prior judgment will be destroyed or impaired by prosecution of the second action; (3) the two suits involve infringement of the same right; and (4) substantially the same evidence is presented in the two actions.  *Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985, 987 (9th Cir. 2005).

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
907.279.8561 / Facsimile 907.276.3108

Arctic Circle v. Alaska Juneau Mining          -27-
Case No. 3:06-cv-0170-TMB
59840-0003/LEGAL13188872.1

**B.    *Res Judicata* Does Not Bar Arctic Circle's Claim**

AJMC disregards *Lawlor* and *Tahoe Sierra* and avoids the fact that the 2006 AJMC Photo Album did not exist - as a design or as an actual photo album - until 2006. Instead, AJMC argues that the 2005 judgment extinguishes the claim here because both cases are related to the same design. *See* Motion at 19. Like the Release, however, the doctrine of *res judicata* applies to claims, not designs. *Res judicata* does not apply here because Mr. Coates and AJMC created a new claim when they started selling the 2006 AJMC Photo Album in April 2006.

Arctic Circle's claim does not arise out of the same transactional nucleus of facts as the prior judgment. *See Intermedics*, 804 F. Supp. at 43. The transactional nucleus of facts in the prior action involved Ms. Roth's and Lu Fei's design of Roth I/Roth II and Ms. Roth's 2003 sales of those albums. In contract, the transactional nucleus of facts here involves Mr. Coates' contact with Hayes Specialties, the changes incorporated into the 2006 AJMC Photo Album and AJMC's sales of that album. Arctic Circle could not possibly have sued AJMC in the Roth Litigation for its later contact with Hayes Specialties or its 2006 sales. *See Lawlor*, 349 U.S. at 328. Arctic Circle's current claim could not have been brought in the prior case. *Tahoe Sierra*, 322 F.3d at 1078.

Second, this trial will not involve "substantially the same evidence" as the earlier case. *See Intermedics*, 804 F. Supp. at 43. The evidence here is directed at the accused AJMC Photo Album and will include testimony from Mr. Coates and other AJMC members regarding their contact with Hayes Specialties and their 2006 sales. In contrast, the Roth I and Roth II albums were at issue in the Roth Litigation. The primary evidence would have been testimony by Ms. Roth and Ms. Lu. The evidence here is not substantially similar.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

AJMC attempts to sidestep these deficiencies by arguing that Arctic Circle could have brought this case in 2003-2005 and cites *Green v. N. Seattle Cmty. Coll.*, 2007 WL 709308 (W.D. Wash. 2007). *Green* does not apply to these facts because the claim at issue in *Green* was based entirely on actions that occurred before the earlier judgment. *Id*. at *3. The facts here are more similar to *Hispec Wheel & Tire, Inc. v. Tredit Tire & Wheel Co. Inc.*, 2007 WL 101827 (N.D. Ind. 2007). There, the parties settled trademark infringement claims based on Tredit's sale of infringing "Series #35" wheels. *Id*. at *3. Tredit redesigned the Series #35 after the stipulated dismissal and started selling "Series #135" wheels. *Id.* The Court refused to apply *res judicata* to the later claims against Series #135 wheels because the wheels were not created until after the earlier judgment. *Id*. ("these claims arise from new wrongs and couldn't have been presented in the first case").

As with the wheels in *Hispec*, the 2006 AJMC Photo Album did not exist at the time of the first case. Mr. Coates had not yet contacted Hayes Specialties. AJMC had not yet advised Hayes regarding design changes. Hayes had not yet set up its embossing press and other manufacturing facilities, and most importantly, had not yet made any 2006 AJMC Photo Albums. Arctic Circle could not have sued AJMC in the prior suit. *Res judicata* does not apply here.

## V.    THIS COURT SHOULD DENY AJMC'S FOOTNOTE MOTIONS AND REQUEST FOR ATTORNEYS' FEES

### A.    The Footnote Motions are Contrary to Fact and Law

Alaska Juneau Mining Company attempts to raise three separate and independent motions in footnotes. The Court should reject all three. In footnote 1, AJMC questions Arctic Circle Enterprises, LLC's ownership of the copyrights at issue. Arctic Circle Enterprises, Inc. obtained the copyright registrations at issue and

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Arctic Circle v. Alaska Juneau Mining          -29-
Case No. 3:06-cv-0170-TMB
59840-0003/LEGAL13188872.1

later reorganized as Arctic Circle Enterprises, LLC.  *See* Godfred Decl. ¶¶ 2-3, Ex. 1.

That reorganization included an express assignment of the copyrights at issue by

Arctic Circle Enterprises, Inc. to Arctic Circle Enterprises, LLC.  *See id.* Ex. 1 p. 9

(transferring "all assets"), pp. 40-41 (listing intellectual property), p. 43 (assigning all

assets).  Arctic Circle Enterprises, LLC is not required to record the assignment to

perfect that ownership.  *See* H.P. Abrams, *The Law of Copyright*, § 10:73 (2006),

*citing* Berne Convention Implementation Act of 1988, Pub. L. 100-568, 102 stat.

2853 (1988) (Berne Convention Implementation Act repealing an earlier requirement

in 17 U.S.C. § 205 to record assignments before filing suit).  Arctic Circle

Enterprises, LLC owns the copyrights in issue and is the real party in interest.

Godfred Decl. ¶¶ 2-3.

 AJMC also questions Arctic Circle's ownership in footnote 2 related to

Ms. Ruatto.  As Arctic Circle noted above, Ms. Ruatto and Arctic Circle were the

parties to her employment agreement.  Both agree that, at the time of her work for

Arctic Circle, Arctic Circle owned the copyright and other intellectual property rights

to Ms. Ruatto's contributions and creations.  McBrayer Decl., Ex. 11, p. 6 (90:8–

92:6); Ex. 6, p. 8 (69:2-12).  The later assignment by Ms. Ruatto only memorialized

the earlier agreement between Ms. Ruatto and Arctic Circle.  *Id.*  Ms. Ruatto and

Arctic Circle both agree that Arctic Circle owns the copyrights at issue.

 The Court should likewise reject AJMC's argument in footnote 14 that

Mr. Coates is otherwise insulated by 17 U.S.C. § 106(1) and (3).  The Copyright Act

does not grant an "exclusive right" to use one's own designs and products if they

*post-date* and *infringe* another copyright.  *Sobhani v. Radical.Media Inc.*, 257 F.

Supp.2d 1234, 1238 (C.D. Cal. 2003) (new works that infringe on a formerly

copyrighted work are infringing and unauthorized by 17 U.S.C. § 106).  The record

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Arctic Circle v. Alaska Juneau Mining                    -30-
Case No. 3:06-cv-0170-TMB
59840-0003/LEGAL13188872.1

contains no evidence that Mr. Coates or AJMC have a copyright registration related to the IAAC design; even if they did, such a registration would not insulate AJMC from a finding of infringement because Arctic Circle's album predates the IAAC design. *Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc.*, 307 F.3d 775, 781 (9th Cir. 2002) (copyright registrations, although presumptively valid, are rebutted by showing that the registered work was not original); *see also Christian v. Mattel, Inc.*, 286 F.3d 1118, 1123 (9th Cir. 2002) (defendant rebutted the presumption of a valid registration by producing evidence of predated, copyrighted works). The Court should accordingly reject AJMC's footnote argument.

**B.     The Court Should Not Order Arctic Circle to Pay Attorneys' Fees**

AJMC is not entitled to an award of attorneys' fees. None of the factors required for such an award are present. To make up for this shortcoming, AJMC argues directly contrary to established Supreme Court precedent that an award of attorneys' fees to the prevailing party in copyright cases is the "rule" and not the "exception." *See* Motion at 23-24. The Supreme Court, in *Fogerty v. Fantasy, Inc.*, rejected this position outright. 521 U.S. 517, 533 (1994).

The Court held that attorneys' fees may be awarded when the prevailing party makes a showing that the case was frivolous, objectively unreasonable, or otherwise deserving of sanction. *Id.* at 533-34. A court should evaluate factors such as the "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) [of the lawsuit] and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 535 n. 19; *see also Jackson v. Axton* 25 F.3d 884, 890 (9th Cir. 1994) (adopting *Fogerty* factors). A prevailing defendant must make some showing of the *Fogerty* factors. *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996) (District Court's refusal to

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

award fees absent a finding of frivolousness or bad faith motivation was a proper exercise of its discretion after *Fogerty*).

None of the required factors are present here even if the Court rules in AJMC's favor on the underlying motion. Foremost, Arctic Circle has not adopted a frivolous legal position. The Release does not cover future conduct - AJMC does not even bother to argue that it does. This fact alone defeats AJMC's request for fees. Arctic Circle was not objectively unreasonable to assert its copyright against a product that undisputedly did not exist until 2006.

Arctic Circle also relied on statements by Mr. Coates himself to conclude that no inducement or contributory infringement claim existed in 2005. Mr. Coates vehemently denied inducing or contributing to Roth's earlier infringement. *See* McBrayer Decl. Ex. 26 (Non-party motion in Roth Litigation arguing for relief from injunction because he did not induce or abet Ms. Roth). AJMC now disavows Mr. Coates' earlier representations because it helps its defense. The facts surrounding the existence of any inducement claim were at best muddled. Arctic Circle did not act in bad faith given the muddled facts any more than Mr. Coates now does when he argues a diametrically opposed position to this Court on the same facts. Arctic Circle was not reckless, frivolous or acting in bad faith when it relied on Mr. Coates' own testimony and Motion to form its belief before filing this suit that it did not release an inducement claim.

Lastly, Arctic Circle's claim does not raise a need to deter future copyright infringement. Attorneys' fees should be awarded to further the purpose of the Copyright Act, which is to deter future infringement. *See Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996). Even defendants who prevail on summary judgment are not entitled to attorneys' fees in copyright actions without a

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

showing that the plaintiff's arguments were objectively unreasonable, or that the claim was frivolous. *CK Co. v. Burger King Corp.*, 34 U.S.P.Q. 2d 1319 (S.D.N.Y. 1995) (defendant that prevailed at summary judgment was not entitled to attorneys' fees without a showing of objective unreasonableness); *see also, Brod v. Gen. Publ'g Group, Inc.*, No. 98-cv-09520, at 3-5 (C.D. Cal., Aug. 15, 2000) (McBrayer Decl. Ex. 28) (refusing to award fees to a prevailing defendant because the plaintiff raised colorable issues, and defendant failed to show bad faith, or a need to protect the Copyright Act) (*aff'd* in unpublished decision).  Arctic Circle did not act in bad faith when it raised this claim given the Release at issue.  Moreover, awarding attorney's fees to a defendant when the plaintiff brings a complicated set of facts or an otherwise colorable claim does not deter infringement.  Such an award encourages infringement by significantly amplifying the risk for plaintiffs to defend their copyrights.  The purpose of the Copyright Act would not be furthered by an award of attorneys' fees under these facts.

## VI.    CONCLUSION

The 2006 AJMC Photo Album was a new design.  It did not exist when Arctic Circle and Roth signed the Release or when the Court entered the prior judgment. The Court should accordingly deny Alaska Juneau Mining Company's motion and grant partial summary judgment to Arctic Circle.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Arctic Circle v. Alaska Juneau Mining                -33-
Case No. 3:06-cv-0170-TMB
59840-0003/LEGAL13188872.1

Respectfully submitted this 24th day of April, 2007.

s/ Ryan J. McBrayer
Ryan J. McBrayer (*Pro Hac Vice*)
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Tel: 206.359.8000/Fax: 206.359.9000
RMcBrayer@perkinscoie.com

James N. Leik, Alaska Bar No. 8111109
JLeik@perkinscoie.com
Kyan Olanna, Alaska Bar No. 0405024
KOlanna@perkinscoie.com
**Perkins Coie LLP**
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
Tel: 907.279.8561/Fax: 907.276.3108

Attorneys for Plaintiff
Arctic Circle Enterprises, LLC

Arctic Circle v. Alaska Juneau Mining                    -34-
Case No. 3:06-cv-0170-TMB
59840-0003/LEGAL13188872.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 24, 2007, I electronically filed the foregoing Arctic Circle Enterprises, LLC's Opposition to Defendant's Motion for Summary Judgment, and Cross-Motion for Partial Summary Judgment with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Gregory F. Wesner
gwesner@klgates.com
K&L Gates LLP
925 4th Ave Suite 2900
Seattle WA 98104
Ph: (206) 370-6746
Fax: (206) 370-6319

J. Michael Keyes, Esq.
jmkeyes@klgates.com
Brook C. Kuhl
brooke.kuhl@klgates.com
K&L Gates LLP
W. 601 Riverside, Suite 1400
Spokane, WA 99201
Ph: (509) 241-1527
Fax: (509) 444-7863

Paul L. Davis, Esq.
davisp@klgates.com
K&L Gates LLP
420 L Street, Suite 400
Anchorage, AK 99501-1937
Ph: (907) 777-7609
Fax: (907) 777-7009

Dated:  April 24, 2007.

/s/  James N. Leik
James N. Leik

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Arctic Circle v. Alaska Juneau Mining        -35-
Case No. 3:06-cv-0170-TMB
59840-0003/LEGAL13188872.1