# Exhibit 15

Bruce A. Bookman, Esq.
BOOKMAN & HELM, LLP
810 N. Street, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 279-4889
Facsimile: (907) 279-4851
Attorneys for Plaintiff,
Arctic Circle Enterprises, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ARCTIC CIRCLE ENTERPRISES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> SANDY ROTH and TANDEM IMPORTS, INC., ) <br> a WASHINGTON CORPORATION, ) <br> LAWRENCE H. PRESS d/b/a PIERCE ) <br> DISTRIBUTORS and KEYSTAR ) <br> INTERNATIONAL, LTD. ) <br> ) <br> ) <br> Defendants. )  Case No. A03-139 CV.(JWS) <br> _____ ) | |

**FIRST AMENDED COMPLAINT**
**(15 U.S.C. § 1125(a) and § 1114; AS 45.50.471 et. seq.)**

COMES NOW plaintiff, Arctic Circle Enterprises, Inc., (hereinafter "Arctic Circle") by and through its attorneys, Bookman & Helm, and for its complaint against defendants alleges as follows:

**PARTIES**

1.  Plaintiff, Arctic Circle, is a corporation duly organized and existing under the laws of the state of Alaska with its principal place of business in Anchorage, Alaska.

FIRST AMENDED COMPLAINT
*Arctic Circle Enterprises Inc. v. Roth*
Case No. A03-139 CV (JWS)

Ex. 15 - 2

2.      Defendant, Tandem Imports, Inc., is a Washington Corporation, doing business in Alaska, and Sandy Roth is a resident of the state of Washington. Keystar International, Ltd ("Keystar") is the parent corporation of Tandem Imports, Inc. Defendants are engaged in trade and commerce in Alaska. Roth is an employee of Tandem Imports, Inc. and was acting within the course and scope of her employment at all times relevant to the allegations of the complaint. Lawrence H. Press is a Vermont resident, who does business in Alaska as Pierce Distributors and who is acting in concert with defendant Sandy Roth by allowing her to use his Uniform Price Code number on all of her merchandise. Hereinafter all defendants shall be referred to as "Roth."

### JURISDICTION AND VENUE

3.      This is an action for federal trademark infringement and federal unfair competition under the provision of the Trademark Act of 1946, 15 U.S.C. §1051 et seq., particularly under 15 U.S.C. §1125(a) and §1114; for violation of Alaska's Unfair Business Practices and Consumer Protection Act, AS 45.50.471, et seq., for common law trade name infringement and unfair competition; for breach of contract, and for tortious interference with prospective economic advantage.

4.      This court has jurisdiction over the subject matter of this claim pursuant to 15 U.S.C. §1121 and 28 U.S.C §1331, as well as the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. §1367.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

### FACTS COMMON TO ALL COUNTS

6.      Arctic Circle is engaged in the business of wholesale manufacturing and importing tourist goods and souvenirs for sale to retailers in Alaska and the Pacific Northwest. Among the goods that Arctic Circle sells are various kinds of dolls, photo albums, mugs, playing cards, small

FIRST AMENDED COMPLAINT
*Arctic Circle Enterprises Inc. v. Roth*
Case No. A03-139 CV (JWS)                                                                                           Ex. 15 - 3

vials of gold flakes, umbrellas, hats, golf balls and candles. Arctic Circle has been in business for over 45 years and has developed a large number of distinctive products which are manufactured in P.R. China by Keystar International Ltd. in Hong Kong, Hvar International Co. in Taipei, Ideal Gift Ltd., Hong Kong and Golden Shell International Gifts (hereinafter "Suppliers").

7. Over the course of many years, Arctic Circle has sold its goods to certain Alaska retailers, namely, David Coates and Kathy Fleener at Dockside Trading and Ketchikan Mining Company in Ketchikan, Alaska, Toni and Neal Murphy at Glacier Bear Gifts in Juneau, Dennis Corrington at Skagway Outlet Store and Skagway Brewing Co. of Skagway, Alaska, and Craig Carson at Great Alaska Clothing Co. Ketchikan, Alaska (hereinafter "Retailers").

8. Arctic Circle has a registered trademark "Alaskan Friends" Registration No. 2,155,444, and has a trademark "Alaska Friends" which it has used continuously for over 5 years on various plush toys, stuffed toys, soft sculpture toys, dolls, and stuffed toy animals.

9. On January 11, 2000, Arctic Circle hired Roth as a product development employee at an annual salary of $70,000. Roth signed an employment contract in which she agreed not to disclose or use the confidential information belonging to Arctic Circle at any time during or after her employment with Arctic Circle terminated. She further agreed that for a period of 24 months following her termination, she would not compete with Arctic Circle nor would she solicit any customer, vendor or supplier of Arctic Circle to do business with a competitor of Arctic Circle. Ex. A hereto is a true copy of the agreement signed by Roth and Arctic Circle.

10. During her employment with Arctic Circle, Roth gained access to the confidential business information of Arctic Circle including knowledge of its designs, costs, pricing, suppliers, customers and sales data. During her employment, Arctic Circle sent her to Asia to work with its Suppliers.

11. On November 14, 2000, Roth terminated her employment with Arctic Circle effective December 1, 2000. Ex. B. Arctic sent her a letter of November 15, 2000, reminding her

of her obligations under her employment contract for the two years following her termination. Ex. C. Pursuant to the employment contract, Arctic Circle paid Roth $25,000 per year for the two years following her termination until December 2002.

12. Prior to December 1, 2002, Roth arranged for Arctic Circle's Suppliers to copy many of the goods in Arctic Circle's product line in order to sell them to Arctic Circle's Retailers at lower prices. Prior to December 1, 2002, Roth contacted, solicited and placed orders with Arctic Circle's Suppliers in China. Prior to December 1, 2002, she solicited and took sales orders from Arctic Circle's Retailers in Alaska. All of these actions were in direct competition with Arctic Circle and constituted a breach of her employment contract.

13. Arctic Circle's Suppliers produced the copied goods ordered by Roth, and Roth has sold them and continues to sell them in large quantities to Arctic Circle's Retailers for resale during the 2003 tourist season in Southeast Alaska. Arctic Circle believes that she may have sold as much as $800,000 worth of copied goods to Arctic Circle's Retailers.

14. The goods produced and sold by Roth are deceptively similar to those of Arctic Circles, and Roth's goods have the capacity and are likely to deceive, cause confusion and mistake as to the origin, sponsorship or approval of Roth's goods with Arctic Circle's commercial activities. Examples of some of Roth's goods that are deceptively similar to Arctic Circle's goods are the

| | |
|---|---|
| Totem box, | Ex. D. page 1 |
| Baseball cap, | Ex. D. page 1 |
| Knit watch cap, | Ex. D. page 2 |
| Dipper playing cards, | Ex. D. page 2 |
| Chenille husky dog, | Ex. D. page 2 |
| Large Photo album, | Ex. D. page 4 |
| Eskimo Doll | Ex. D. page 4 |

FIRST AMENDED COMPLAINT
*Arctic Circle Enterprises Inc. v. Roth*
Case No. A03-139 CV (JWS)

To date, Arctic Circle has discovered that Roth has copied approximately 50 products that are deceptively similar to products offered by Arctic Circle. For the "Totem Box" listed above, Roth had Arctic Circle's supplier use Arctic Circle's own product mold that Arctic Circle paid for and that was designed by Arctic Circle's art department on April 14, 2000. In general, Roth's goods are of inferior quality and will tend to damage Arctic Circle's goodwill and reputation in the business community.

15. Without the knowledge or permission of Arctic Circle, Roth has labeled her chenille husky dog and other products as "Frontier Alaska Friends" which infringes on Arctic Circle's registered trademark "Alaskan Friends" and its trademark "Alaska Friends" used by Arctic Circle on a similar chenille husky dog toy. Ex. D. page 2. By virtue of her employment at Arctic Circle, Roth had actual knowledge of Arctic Circle's registered trademark "Alaskan Friends."

16. Roth has mislabeled her 10 inch porcelain-face doll, her plush angel ornament and other dolls as "Handcrafted Alaska Native Dolls" which falsely implies that the dolls are hand crafted, made in Alaska or made by Alaska Natives. Ex. E. Roth's misrepresentation was and is material and made with the intent that others rely upon it in connection with the sale of the goods.

17. Both Arctic Circle and Roth sell identical small vials filled with liquid and containing pieces of gold leaf in the liquid; however, Roth has falsely labeled the gold vials she sells by attaching them to cards that state that the gold is "Exclusively Mined for Alaska" falsely implying that the gold was mined and was mined in Alaska. Ex. D. page 3. Roth's misrepresentations were and are material and made with the intent that others rely upon them in connection with the sale of the goods.

18. When Roth's goods began appearing in the Alaska market in May 2003, Arctic Circle asked Keystar if it were involved, and Keystar stated to Arctic Circle that Ms. Roth had "built up a new company" and would develop "new items." Keystar did not mention that it was

importing goods for sale in Alaska through its own wholly-owned subsidiary. Keystar's omission of the fact that it is the sole owner of "Ms. Roth's" new company was an intentional misrepresentation. Following Keystar's omission, Arctic Circle disclosed its confidential plans to develop products for the upcoming 2004 tourist season.

19. Upon information and belief, the activities of Roth set forth herein constitute willful, malicious and intentional infringement on Arctic Circle's trademark and common law and statutory rights and were commenced and have continued despite Roth's knowledge that the sale of deceptively similar goods and use of "Alaska Friends" on stuffed animal toys was and is in direct contravention of Arctic Circle's rights.

20. By reason of the acts of Roth alleged herein, Arctic Circle has sustained actual damages in excess of $1,000,000. In addition, Arctic Circle has suffered, is suffering and will continue to suffer damages and irreparable harm to its goodwill and customer relationships, and, unless Roth is restrained from her wrongful conduct, the damage to Arctic Circle will be greatly increased.

21. Though some damages may be quantified, Arctic Circle has no adequate remedy at law for the destruction of its business relationships with its Retailers and its good will.

22. On June 5, 2003, Arctic Circle sent a cease and desist letter to Roth demanding that Roth stop her unlawful actions. Ex. F. Roth has not stopped any of her unlawful acts.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

23. Arctic Circle repeats and realleges the allegations contained in paragraphs 1 through 22 above.

24. Roth's conduct as alleged above in connection with the promotion and sale of her goods using Arctic Circle's registered trademark constitutes trademark infringement in violation of section 32 of the Lanham Act, 15 U.S.C §1114.

## COUNT II
## FEDERAL UNFAIR COMPETITION

25. Arctic Circle repeats and realleges the allegations contained in paragraphs 1 through 22 above.

26. Roth's conduct as alleged above in connection with the promotion and sale of her goods in Alaska constitutes unfair competition, false advertising, false designation of origin and false or misleading description of fact, in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

## COUNT III
## UNFAIR COMPETITION UNDER ALASKA LAW

27. Arctic Circle repeats and realleges the allegations contained in paragraphs 1 through 22 above.

28. The acts of Roth constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Alaska's Unfair Business Practices and Consumer Protection Act, AS 45.50.471(3), (11) and (12) and at common law.

## COUNT IV
## BREACH OF CONTRACT

FIRST AMENDED COMPLAINT
*Arctic Circle Enterprises Inc. v. Roth*
Case No. A03-139 CV (JWS)

Ex. 15 - 8

29.     Arctic Circle repeats and realleges the allegations contained in paragraphs 1 through 22 above.

30.     Roth has materially breached her contract of employment by soliciting Arctic Circle's Suppliers and Retailers within 24 months of her termination of employment.

31.     Roth has materially breached her contract of employment by competing with Arctic Circle by booking sales orders within 24 months of her termination of employment.

32.     Roth has materially breached her contract of employment by disclosing and using confidential information of Arctic Circle in order to compete directly with Arctic Circle in the sale of goods to Arctic Circle's Retailers.

## COUNT V
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

33.     Arctic Circle repeats and realleges the allegations contained in paragraphs 1 through 22 above.

34.     Arctic Circle had prospective business relationships with its Retailers, and Roth, knowing of these relationships, intentionally prevented or lessened those relationships by selling to the Retailers inferior, lower cost goods that were deceptively similar.

35.     Roth's conduct constituted a malicious, unprivileged and unjustified interference with Arctic Circle's prospective business relationship and has caused Arctic Circle damages as set forth herein.

## COUNT VI
## INTENTIONAL MISREPRESENTATION

36.     Arctic Circle repeats and realleges the allegations contained in paragraphs 1 through 22 above.

37.     Keystar's actions constitute an intentional misrepresentation upon which Arctic Circle reasonably relied to its detriment.

WHEREFORE, Arctic Circle prays for the following relief

FIRST AMENDED COMPLAINT
*Arctic Circle Enterprises Inc. v. Roth*
Case No. A03-139 CV (JWS)                                                                                    Ex. 15 - 9

1.  That defendants their agents, employees, attorneys, any related business entities and all persons acting for, with, by, through or under them be preliminarily enjoined during the pendency of this action and thereafter be permanently enjoined and restrained from the manufacture and sale of products that are so deceptively similar to those of Arctic Circle as to create a likelihood of confusion, mistake or deception.

2.  That defendants be ordered to buy back from the Retailers and destroy all unsold merchandise that is so deceptively similar to those of Arctic Circle as to create a likelihood of confusion, mistake or deception, and that Roth and Tandem Imports, Inc. be ordered to deliver up for destruction all advertisements, catalogs, products or other similar material in her possession or under her control that are so deceptively similar to those of Arctic Circle as to create a likelihood of confusion, mistake or deception.

3.  That pursuant to U.S.C. §1116, defendants and their agents, employees, attorneys, any related business entities and all persons acting for, with, by, through or under them be preliminarily enjoined during the pendency of this action and thereafter be permanently enjoined and restrained from using on or in connection with the importation, sale, offering for sale or distribution of her goods the Arctic Circle trademark "Alaska Friends" and any other marks or words that are confusingly or deceptively similar to Arctic Circle's trademark.

4.  That defendants be required to account to Arctic Circle for the profits they have made, and that Arctic Circle be awarded damages incurred as a result of their actions in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a), §32 of the Lanham Act, 15 U.S.C. §1114, and AS 45.50.471.

5.  That defendants compensate Arctic Circle for its lost sales profits and other actual damages in an amount in excess of $1,000,000.

6.  That Arctic Circle be awarded treble damages pursuant to §35 of the Lanham Act, 15 U.S.C. §1117(a) and AS45.50.531(a).

FIRST AMENDED COMPLAINT
*Arctic Circle Enterprises Inc. v. Roth*
Case No. A03-139 CV (JWS)

7. That Arctic Circle be awarded punitive damages in excess of $1,000,000.

8. That pursuant to 15 U.S.C §1117 and AS 45.50.537(a) Arctic Circle be awarded its actual reasonable attorney's fees and costs incurred in bringing this action.

DATED at Anchorage, Alaska this 21th day of August, 2003.

BOOKMAN & HELM, LLP

Attorneys for Plaintiff Arctic Circle Enterprises, Inc.

By:
Bruce A. Bookman
Alaska Bar # 6802002