**Paul L. Davis**
Email: paul.davis@klgates.com
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
420 L Street, Suite 400
Anchorage, AK  99501-1971
Phone:  907-276-1969
Fax: 907-276-1365

**Gregory F. Wesner**
Email:  gregory.wesner@klgates.com
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA  98104-1158
Phone:  206-623-7580
Fax: 206-623-7022

**J. Michael Keyes**
**Brooke Castle Kuhl**
Email:  mike.keyes@klgates.com
Email:  brooke.kuhl@klgates.com
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
618 West Riverside Avenue, Suite 300
Spokane, WA  99201
Phone:  509-624-2100
Fax: 509-456-0146

Attorneys for Defendant
Alaska-Juneau Mining Company, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| ARCTIC CIRCLE ENTERPRISES, LLC, <br><br>                    Plaintiff, <br><br>     v. <br><br> **ALASKA-JUNEAU MINING COMPANY LLC,** <br><br>                    Defendant. | **Case No. 3:06-cv-00170-TMB** <br><br> **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO ARCTIC CIRCLE'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**I.**

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

## II. INTRODUCTION

Arctic Circle Enterprises, LLC's ("ACE") response memorandum underscores precisely why summary judgment should be granted to Alaska-Juneau Mining Company, LLC ("AJMC"). ACE had the burden to come forward with admissible evidence that would create a genuine issue of material fact as to why the Roth Settlement Agreement does not preclude this claim. It was also ACE's burden to demonstrate there is a genuine issue of material fact that would somehow preclude the application of the *res judicata* doctrine to this claim for copyright infringement. ACE failed to meet its burden on both fronts.

As a matter of law, the Roth Settlement Agreement precludes this claim against AJMC. In an attempt to survive summary judgment, ACE makes unsupportable legal arguments including that Mr. David Coates ("Coates") and AJMC are somehow not covered under the Roth Settlement Agreement and that it did not apply to "future claims." There is no dispute: Coates and AJMC are unambiguously "Roth Releasees" and the Release and Covenant Not To Sue applies to future conduct because, by its express terms, it <u>forever</u> releases any Roth Releasees from <u>any</u> cause of action of <u>any</u> nature whatsoever arising out of any fact alleged in <u>any</u> pleading in the Litigation. ACE further compounds its error by offering extrinsic evidence to directly contradict and supplement the express terms of the Roth Settlement Agreement. ACE does not mention the parol evidence rule, much less explain how its proffered submission is consistent with that rule. Finally, ACE relies on inapposite or readily distinguishable case law to support its argument that summary judgment should be denied. In short, ACE's argument regarding the Roth Settlement Agreement provides a compelling reason for this Court to grant summary judgment in favor of AJMC.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC          -2-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\BCK\BCK_P213I

AJMC is also entitled to summary judgment based on *res judicata*. Whether *res judicata* applies is a question of law for this Court to decide. *Res judicata* applies when there is: (1) an identity of claims; (2) involving the same parties or their privities; and (3) a final adjudication on the merits. ACE's only argument is that the photo albums that gave rise to the present claim were created in 2006 after the execution of the Roth Settlement Agreement and, therefore, cannot be barred by *res judicata*. ACE is wrong. *Res judicata* applies to any claims that <u>could have</u> been brought in the prior action. It is undisputed that in the Roth Litigation, Coates claimed ownership of the IAAC Alaska Map Photo Album Design and ACE was fully aware of Coates' claimed ownership. It is further undisputed that during the Roth Litigation, ACE was fully apprised that Coates would manufacture souvenir items (or have a third party manufacture them for him) and then Coates would supply those goods to his various retail stores, including AJMC, which had been in existence since 2004. Thus, ACE could have asserted a claim against Coates in the Roth Litigation challenging his ownership of the IAAC Alaska Map Photo Album Design and could have sought relief that would preclude Coates from supplying his businesses (including AJMC) with any copies of the IAAC Alaska Map Photo Album Design. ACE chose not to do so and instead <u>forever</u> released Coates (and AJMC) from any and all claims of any nature whatsoever "arising out of any facts alleged in any pleading in the Litigation." Because ACE could have challenged Coates' rights to the IAAC Alaska Map Photo Album Design in the Roth Litigation, the present claim is barred.

Accordingly, AJMC is entitled to summary judgment and should be awarded its fees and costs for having to defend this suit.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC        -3-
Case No.    3:06-cv-00170-TMB
K:\55853\00001\BCK\BCK_P213I

### III. LAW AND ARGUMENT

In an attempt to resuscitate this claim that was already extinguished by the Roth Settlement Agreement and barred by *res judicata*, ACE relies on immaterial facts, offers evidence in an attempt to contradict the express terms of the Roth Settlement Agreement, and posits legal conclusions that are demonstrably wrong. ACE has failed to meet its burden of establishing a genuine issue of fact and, therefore, AJMC is entitled to summary judgment.

#### A. It is undisputed that Coates and AJMC are "Roth Releasees" under the Roth Settlement Agreement.

ACE claims that Coates and AJMC have not established that they were intended beneficiaries of the Roth Settlement Agreement. ACE Memorandum, p. 15. ACE is incorrect. A third party is an intended beneficiary under a contract when "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Rathke v. Corr. Corp. of America, Inc.*, 153 P.3d 303, 310, (Alaska, 2007). By its terms, the Release and Covenant Not To Sue provision of the Roth Settlement Agreement applies to Roth and the "Roth Releasees", which were defined as "all persons acting by, through, under or in concert with [Roth], including Roth's customers and end users of Roth's products or services . . ." Keyes Aff., Ex. 12, pp. 4-5 at 2(b). It is undisputed that both Coates and AJMC were Roth's customers at the time the Roth Settlement Agreement was executed. Keyes Aff., Ex. 18, p. 8 (ACE 30(b)(6) Dep., p. 118, lns. 13-25; p. 119, ln. 1). ACE provides _no_ facts to suggest otherwise and, therefore, as a matter of law Coates and AJMC are "Roth Releasees."

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

**B. ACE advances a patently incorrect legal conclusion that the Roth Settlement Agreement does not apply to "future conduct."**

ACE provides a supposed "clause by clause breakdown" of the Release and Covenant Not To Sue provision and then self-servingly concludes that "nothing in the release extends to claims based on future conduct or future products." *See* ACE Memorandum, pp. 8-9. This assertion is demonstrably wrong. Notably, ACE's selective editing of the release omitted the word "**forever**" and ignores other pertinent portions of the Agreement. *Id.* at p. 8. The entirety of the Release and Covenant Not To Sue provision provides as follows:

REDACTED

Keyes Aff., Ex. 12, p. 4-5, ¶ 2(b) (emphasis supplied).

As is plain from this provision, any post-settlement claim that "arises out of any facts alleged in any pleading in the Litigation" was **forever** extinguished. Other provisions of the Roth Settlement Agreement (which ACE ignores in its response memorandum) confirm that the parties were unambiguously looking to resolve potential future claims if those claims arose out of any facts alleged in any of the Roth pleadings. For example, the Roth Settlement Agreement specifically states that "[i]n consideration of the mutual promises and representations by the parties

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC      -5-
Case No.    3:06-cv-00170-TMB
K:\55853\00001\BCK\BCK_P2131

as set forth herein, and to avoid the burden and expense of current and ***future*** litigation, the parties agree to dismiss the Litigation and to resolve globally their disputes over their <u>respective uses</u> of the ACE IP and Roth IP." *Id.* ¶ D, p. 2 Roth Settlement Agreement.   The Roth Settlement Agreement also provides that "[i]t is the express purpose of this Agreement to completely and globally settle and extinguish all possible causes of action, known or unknown as of the date of this agreement, that the parties ***might be able to bring*** against one another." *Id.* ¶ E, p. 2 Roth Settlement Agreement.   The "might be able to bring" language necessarily looks to the future. *Augustine Med. Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1371 (Fed. Cir. 1999) (noting that "the phrase 'may have' is necessarily future-oriented").

This Release and Covenant Not To Sue provision could not be clearer:   ACE **forever** released and **forever** covenanted not to sue Coates and AJMC (the Roth Releasees) for any cause of action, known or unknown, of any nature whatsoever, "arising out of any facts alleged in any pleading in the Litigation."   ACE does not dispute that Roth asserted in her Proposed Amended Answer filed on September 23, 2004, that "[i]n 2002, Great Northern sold its entire right, title and interest in and to all of its designs . . . which included the IAAC designs, and all intellectual property therein, to a group of individuals comprised of Steve Hogberg, David Coates, and Kathy Fleenor."   McBrayer Decl., Ex. 18, p. 13, ¶ 18.   It is further undisputed that one of those IAAC Designs that Coates claimed ownership of was the IAAC Alaska Map Photo Album Design (Coates Aff., ¶¶ 5, 8), which is the exact design Coates used to create the design at issue in this case. Keyes Aff., Ex. 11, p. 5 ("Roth 2004 Depo.") at p. 86, lns. 5-16; p. 88, lns. 4-10.

Thus, because ACE released Coates from any and all claims of any nature whatsoever regarding his ownership of the IAAC Alaska Map Photo Album Design, ACE is precluded from

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC          -6-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\BCK\BCK_P213I

bringing this claim because AJMC's right to sell copies of the photo album necessarily arises out of Coates' ownership of the IAAC Alaska Map Photo Album Design. *See Cont'l Cas. Co. v. City of Richmond,* 763 F.2d 1076 (9th Cir. 1985) (arising out of is understood to mean "originating from" "having its origin in," "growing out of" or "flowing from" or in short, "incident to," or "having connection with").

It is immaterial that the AJMC photo albums were manufactured after the Roth Settlement Agreement was executed or that there are slight variations between the original IAAC Alaska Map Photo Album Design and the AJMC version of 2006. This same argument was rejected by the *Augstine Medical* court. As it noted:

> Augustine unpersuasively counters this by arguing that its claims for patent infringement were not ripe at the time of the Settlement Agreement <u>because the post-settlement infringing actions had not yet occurred</u>. Augustine's argument, however, relies on cases addressing when a claim is *ripe* for adjudication, not when a claim *exists* for purposes of a release. We have held that when dealing with post-settlement claims, the issue becomes not one of when a claim is ripe, but rather whether the "claimant 'had' or possessed a claim, sufficiently to reserve it from a general release."

*Augustine Medical, Inc.*, 194 F.3d at 1373 (emphasis supplied).

Here, the scope of the Roth Settlement Agreement forever released any cause of action whatsoever that arises out of any facts alleged in any of the pleadings in the Roth Litigation that the parties "might be able to bring" against one another. *See* Keyes Aff., Ex. 12, 2(b). Because it was alleged that Coates owned the IAAC Designs (and it was specifically testified to by Coates that he claimed ownership of the IAAC Alaska Map Photo album Design), any cause of action that arises out of his claimed ownership—like the one here—was forever extinguished.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC        -7-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\BCK\BCK_P213I

In sum, the release provision as well as the Roth Settlement Agreement as a whole indicates that the parties intended to extinguish any and all possible future causes of action, at least insofar as those future causes of action arise out of any facts alleged in any pleading in the Roth Litigation. This Court should reject ACE's "interpretation" of the Roth Settlement Agreement to the contrary.

**C. ACE violates the parol evidence rule because it offers extrinsic evidence to contradict the express terms of the fully-integrated Roth Settlement Agreement.**

To resuscitate its claim against AJMC, ACE offers extrinsic evidence that supposedly shows "the parties considered and rejected a release that expressly covered future products by Mr. Coates and others based on the IAAC portfolio." ACE Memorandum, p. 9. In proffering this extrinsic "evidence", ACE violates the parol evidence rule, which provides that "an integrated written contract cannot be varied or contradicted by prior negotiations or agreements." *Still v. Cunningham*, 94 P.3d 1104, 1109 (Alaska 2004). In assessing whether the rule is to be applied, this Court determines (1) whether the contract is integrated; (2) the meaning of the contract; and (3) whether the proffered evidence would conflict with the integrated agreement. *Alaska N. Dev., Inc. v. Alyeska Pipeline Serv. Co.*, 666 P.2d 33, 37-40 (Alaska 1983), *cert. denied*, 464 U.S. 1041, 104 S.Ct. 706, 79 L.Ed.2d 170 (1984). As the following analysis demonstrates, the email exchange between counsel and the deposition testimony of Mr. Godfred violates the rule because ACE proffers this extrinsic evidence to impermissibly contradict and supplement the Roth Settlement Agreement.

1. ACE does not dispute that the Roth Settlement Agreement is a fully-integrated writing expressing the complete and final agreement between the parties.

A fully-integrated agreement "is a document which the parties intended as the complete and final embodiment of the terms of their agreement." *Royal Indus. v. St. Regis Paper Co.*, 420 F.2d

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

449, 452 (9th Cir. 1969). Whether an agreement is fully integrated is a question of law for the court to decide. *Alaska Diversified Contractors, Inc. v. Lower Kuskokwim School Dist.*, 778 P.2d 581, 584 (Alaska 1989). ACE does not dispute that the Roth Settlement Agreement is fully integrated. Indeed, the integration clause in the Roth Settlement Agreement expressly states as such:

REDACTED

Keyes Aff., Ex. 12, ¶ 4(d).

Additionally, the parties were represented by counsel when they entered into the Roth Settlement Agreement, and the terms had been "completely explained to them by those attorneys; and they fully understand the terms of this Agreement." *Id.* at ¶ 4(g). Thus, as a matter of law, the Roth Settlement Agreement is a fully-integrated expression of the settlement terms between the parties and cannot be contradicted or supplemented by extrinsic evidence. *Still*, 94 P.3d at 1109.

    2.  <u>The Release and Covenant Not To Sue provision released Coates and AJMC from any and all claims of any nature whatsoever arising out of Coates' claimed ownership of the IAAC Alaska Map Photo Album Design.</u>

As noted above, the "Mutual Release and Covenant Not To Sue" is clear: ACE **forever** released and **forever** covenanted not to sue Coates and AJMC (the Roth Releasees) for any causes of action, known or unknown, of any nature whatsoever, "arising out of any facts alleged in any pleading in the Litigation." Keyes Aff., Ex. 12, ¶ 2(b). It was alleged by Roth that Coates owned the IAAC Designs. McBrayer Aff., Ex. 18, p. 13, ¶ 18. ACE knew that Coates' claim of

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC    -9-
Case No.  3:06-cv-00170-TMB
K:\55853\00001\BCK\BCK_P2131

ownership included the IAAC Alaska Map Photo Album Design. Coates Aff., ¶ 4, Ex. 1; Keyes

Aff., Ex. 11, p. 5 ("Roth 2004 Depo.") at p. 86, lns. 5-16; p. 88, lns. 4-10. Thus, ACE forever

extinguished all possible causes of action that it might be able to bring that would challenge

Coates' ability to use and make reproductions of the IAAC Alaska Map Photo Album Design and

provide those reproductions to his companies, including AJMC.

> 3. <u>ACE proffers extrinsic evidence in an attempt to impermissibly contradict the terms contained within the Mutual Release and Covenant Not To Sue provision and supplement the terms of the fully-integrated Roth Settlement Agreement.</u>

ACE offers extrinsic evidence from settlement discussions and the self-serving statement of

Mr. Mitchell Godfred to somehow suggest that Coates did not have the right to use the IAAC

Alaska Map Photo Album Design after the Roth Settlement Agreement was executed. The Court

should reject ACE's proffered evidence for several reasons.

First, with regards to the pre-settlement negotiation emails, ACE is offering this extrinsic

evidence to purportedly show that Coates and the other Roth Releasees were not released from any

claims with respect to the creation of future products based on the IAAC Designs.[1] Yet, as

explained above, the express terms of the settlement did ***forever*** release Coates and the Roth

Releasees from any and all claims of any nature whatsoever "arising out of any facts alleged in any

pleading in the Litigation." Keyes Aff., Ex. 12, ¶ 2(b). It is undisputed that it was alleged as a fact

in Roth's Answer that Coates owned rights to the IAAC Designs (McBrayer Decl., Ex. 18, p. 13, ¶

18), and ACE knew that one of those Designs Coates claimed ownership to was the IAAC Alaska

Map Photo Album Design—the exact same design used to create the AJMC albums. Keyes Aff.,

---

[1] As explained directly below, though, Mr. Bookman's email can be read consistently with the express terms of the Roth Settlement Agreement.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

Ex. 11, p. 5 ("Roth 2004 Depo.") at p. 86, lns. 5-16; p. 88, lns. 4-10. Notwithstanding this clear and unambiguous statement in the Roth Settlement Agreement, the clear and unambiguous statement in Roth's Answer, and the undeniable fact that Coates was claiming ownership to the IAAC Alaska Map Photo Album Design, ACE proffers this extrinsic evidence to somehow suggest that ACE reserved a claim against Coates and his business for any future uses of the IAAC Alaska Map Photo Album Design. This is a classic example of a party offering extrinsic evidence to contradict the express words of a fully-integrated agreement. *See, e.g., Johnson v. Curran,* 633 P.2d 994, 996-997 (Alaska 1981) (determining that evidence of an oral early termination option was inadmissible to contradict the time period specified in the contract); *S & B Min. Co. v. N. Commercial Co.,* 813 P.2d 264, 270 (Alaska 1991) (affirming superior court's exclusion of evidence of oral assurances given at the time the contract was signed). The Court should reject ACE's attempt to obliterate the parol evidence rule in this fashion.[2]

Second, although ACE is offering this extrinsic evidence to directly contradict the express terms of the Roth Settlement Agreement, Mr. Bookman's email can actually be read in harmony

---

[2] There are additional reasons why this Court should reject ACE's invitation to use this "evidence." For example, for the first time in its response to AJMC's motion for summary judgment—and approximately 45 days after the close of discovery—ACE disclosed this supposed email exchange between Mr. Kagen and Mr. Bookman even though ACE has known since August of 2006 that AJMC took the position that the release barred this claim. *See* Keyes Aff., Ex. 16. Thus, ACE should have produced these emails pursuant to Fed. R. Civ. P. 26(a) last fall. Additionally, "[i]n a summary judgment motion, documents authenticated through personal knowledge" must be "attached to an affidavit that meets the requirements of [Fed.R.Civ.P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Orr v. Bank of America, NT & SA,* 285 F.3d 764, 774 (9th Cir. 2002). Neither of these email communications are offered through the affidavit of Mr. Bookman or Mr. Kagen, and Mr. McBrayer provides no statement as to how he has personal knowledge regarding the authenticity of these communications. Finally, the evidence attached as Exhibit 21 to the McBrayer Decl. is inadmissible hearsay. These infirmities provide the Court with additional reasons not to consider this proffered evidence.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC          -11-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\BCK\BCK_P213I

with it. As Mr. Bookman's email indicates, ACE refused to include the IAAC Design language, not because the IAAC Designs were somehow excluded from the scope of the Roth Settlement Agreement, but because ACE was not willing to "recognize the legitimacy of __*all*__ IAAC designs past and present." *See* ACE Memorandum p. 10 (McBrayer Decl., Ex. 21, p. 12) (emphasis supplied). In other words, ACE was simply interested, as Mr. Bookman stated in his email, in "dropping the claims litigated in these pleadings." *Id.* "Dropping the claims litigated in these pleadings" obviously means that ACE was dropping the claims to the IAAC Alaska Map Photo Album, the ownership to which was claimed by Coates during the Roth Litigation. Thus, Bookman's statement can be read to confirm what the express provision the Roth Settlement Agreement provides: that ACE was releasing Roth and the Roth Releasees from any causes of action arising out of any facts alleged in any pleading in the litigation.

Third, ACE offers the self-serving testimony of Mr. Godfred to supposedly show that the release and covenant not to sue was "limited to past actions and the existing stock of Roth I and Roth II albums" and that the Release and Covenant Not To Sue "was to allow Ms. Roth and her customers to sell existing inventory." *See* McBrayer Decl., Ex. 6, pp. 9-10 (ACE 30(b)(6) dep., p. 128, lns. 18-24; p. 129, lns. 23-25; p. 130, lns. 1-9). This proffered evidence violates the parol evidence rule. When an agreement is fully-integrated as is the one here, it cannot be supplemented with, or contradicted by, additional terms. *Still,* 94 P.3d at 1109. Mr. Godfred's proffered testimony does both. Mr. Godfred admitted in his deposition that there was no provision in the fully-integrated Roth Settlement Agreement that referred to this "selling off" of existing inventory:

REDACTED

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC          -12-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\BCK\BCK_P213I

\*\*\*

REDACTED

McBrayer Decl., Ex. 6, p. 10 (ACE 30(b)(6) dep., p. 129, lns. 23-25; p. 130, lns. 1-9).

Thus, because Godfred's self-serving testimony seeks to supplement and contradict the fully-integrated Roth Settlement Agreement, the Court should reject it. *See Goel v. Jain*, 259 F.Supp.2d 1128, 1138 (W.D. Wn. 2003) (observing that the policy of the parol evidence rule "is grounded in the inherent reliability of a writing as opposed to the memories of contracting parties"); *Still,* 94 P.3d at 1110 ("we are also justified in disregarding parties' statements made during litigation as to their subjective impressions or intent at the time of a transaction 'unless the party in some way expressed or manifested his understanding at the time of contract formation'").

For these reasons, the Court should refuse to allow ACE to use the proffered extrinsic evidence to contradict the express terms of the Roth Settlement Agreement.

**D.     ACE relies on legal authority that does not remotely demonstrate or suggest that Coates and AJMC somehow face liability for their use of the IAAC Alaska Map Photo Album Design.**

ACE relies on inapposite legal authority to somehow suggest that the Roth Settlement Agreement did not apply to "future conduct." For example, ACE relies on *Unova, Inc., v. ACER Inc.,* 363 F.3rd 1278 (Fed. Cir. 2004) and *Botefur v. City of Eagle Point,* 7 F.3d 152, 157 (9th Cir. 1993). Both of those cases are easily distinguishable.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC          -13-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\BCK\BCK_P213I

In *Unova, Inc.,* Hewlett-Packard, the existing corporate parent of Compaq, claimed it was released by Unova in a settlement agreement executed prior to the date Hewlett-Packard became Compaq's corporate parent. *Id.* at 1282. That settlement agreement provided:

> Unova hereby releases Compaq, its parents, and its Subsidiaries from all claims that relate to 'an allegation of infringement of any of the Smart Battery Patents based in whole or in part on any act, event, occurrence, transaction, or omission which took place on or before [May 4, 2001]."

*Id.* at 1282. Not surprisingly, the *Unova* court read that language to "mean simply that, as of May 4, 2001, Unova released Compaq, its parents, and its subsidiaries from liability for prior acts of infringement." *Id.* Here, by contrast, the release language states that ACE "forever released" the Roth Releasees for any causes of action of any nature whatsoever "arising out of any facts alleged in any pleading in the Litigation." This difference between the two settlement provisions is obvious: the Unova settlement contained a release for conduct tied to a particular date whereas the Roth Settlement Agreement applied to all causes of action "arising out of any facts alleged in any pleading in the Litigation".

Likewise, the settlement language in *Botefur* provided as follows:

> In compromise of a disputed claim by Botefur against City relating to Botefur's separation from employment with City as a sworn police officer, the parties hereby fully and completely release and remise each other from any and all claims, . . . which each may have against the other, . . . *to the extent such claims or other matters arise from the beginning of time to the date of execution of this Agreement*. . . .

*Id.,* 7 F.3d at 157 (emphasis added).

Nothing in the *Botefur* release mentions anything about "forever releasing" or "forever covenanting" not to sue. By contrast, ACE did not restrict its release to any actions that pre-dated the Roth Settlement Agreement; instead, it chose to "forever release and covenant not to sue" Roth

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC          -14-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\BCK\BCK_P213I

Releasees for any claims ACE "has, owns or holds, or claims to have, own or hold . . . arising out

of any facts alleged in any pleading in the Litigation." Keyes Aff., Ex. 12, ¶ 2(b).  There is no

question that as of the date of the Roth Settlement Agreement, ACE "had, owned or held" a claim

against Coates for his claimed ownership of the IAAC Alaska Map Photo Album Design.  Further,

this present claim against Coates' business, AJMC, necessarily challenges Coates' rights to the

IAAC Alaska Map Photo Album Design, a claim that was extinguished by the Roth Settlement

Agreement.

     ACE argues the release in *Augustine Medical* is distinguishable because the phrase "'related

to' was critical" to the court's analysis.  ACE Memorandum, p. 24.  ACE's argument completely

overlooks this portion of the court's analysis:

> Our interpretation of the language of the Settlement Agreement is
> consistent with judicial interpretation of general releases in
> settlement agreements.  Both parties agree that their settlement
> provided a general release containing very broad language, such as
> "release and forever discharge," "any and all manner of action or
> actions," "relating to any acts, omissions or statements made by
> Progressive," and "including, but not limited to, any and all claims
> that were or could have been asserted by AMI in the [present
> lawsuit]."  General language such as these phrases have consistently
> been held by the courts to constitute a waiver of all claims and causes
> of action "arising under or by virtue of the contract," *United States v.*
> *William Cramp & Sons Ship & Engine Bldg. Co.,* 206 U.S. 118, 128,
> 42 Ct.Cl. 532, 27 S.Ct. 676, 51 L.Ed. 983 (1907), and of all "claims
> based upon events occurring prior to the date of the release."
> *Johnson, Drake & Piper, Inc. v. United States,* 209 Ct.Cl. 313, 531
> F.2d 1037, 1047 (1976).

*Augustine Med., Inc.,* 194 F.3d at 1372.

     Just as with the release in *Augustine Medical*, the release here employs "very broad

language."  Keyes Aff., Ex. 12, ¶ 2(b).  As a matter of law, this constitutes a "waiver of claims

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

based upon events occurring prior to the date of the release." *See Augustine Med., Inc.,* 194 F.3d at 1372.

Finally, *Petroleum Sales Limited* actually undercuts ACE's argument. *Petroleum Sales LTD. v. Mapco Alaska, Inc.,* 687 P.2d 923 (Alaska 1984). In that case, Mapco—an oil refinery— was sued by certain fuel distributors for allegedly offering discount prices to other fuel distributors in violation of Alaska antitrust laws. 687 P.2d at 926. The case settled and the parties entered into a "Settlement Agreement, Release of Claims and Covenant Not to Sue" whereby both parties released each other:

> from any and all claims, equitable and legal, known or unknown, which they presently have . . . and each covenant not to sue [the other] based on any such claims existing as of this date.

*Id.* at 926 (brackets and ellipses in original).

There, a stipulated order of dismissal "with prejudice" was entered. *Id.* A second action was initiated against Mapco by some of the same parties from the first action, but this time for alleged anticompetitive conduct associated with Mapco's pricing increases (as opposed to pricing decreases in the first action). *Id.* The trial court granted Mapco's motion for summary judgment concluding that the second suit was "barred by the settlement of the prior suit." *Id.* at 927. In upholding the dismissal, the Alaska Supreme Court stated that the claim in the second suit was not "sufficiently distinct from those which [the plaintiffs] voluntarily relinquished in settlement of a prior antitrust action against appellee Mapco." *Id.* It further noted that dismissal was proper because the complaint in the second suit "substantially echoes that in the prior case." *Id.* at 928. So too is dismissal appropriate here. The second suit against AJMC substantially echoes the first suit against Roth.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC          -16-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\BCK\BCK_P213I

E.  **The doctrine of *res judicata* provides an independent and powerful reason for this Court to conclude that ACE's claims are barred.**

*Res judicata* bars this claim because ACE could have previously challenged Coates' claim to ownership of the IAAC Alaska Map Photo Album Design. As an initial matter, whether *res judicata* applies is a legal question for this court. *Communications Telesystems Intern. v. California Public Utility Com'n*, 196 F.3d 1011, 1015 (9th Cir. 1999). *Res judicata* bars a second suit when there is: (1) an identity of claims; (2) identity of parties or privities; and (3) a final judgment on the merits in the first suit. ACE does not dispute that AJMC established elements (2) and (3). ACE Memorandum, pp. 26-29. The only reason ACE provides as to why *res judicata* does not apply is because Coates had additional photo albums created in 2006 and the Roth Settlement Agreement was reached in 2005. Thus, because ACE "could not have sued AJMC in the prior suit" for this specific production of photo albums (ACE Memorandum, p. 29), "[r]es judicata does not apply." *Id.* ACE is wrong.

As ACE's own legal authority provides, "[r]es judicata bars relitigation of all grounds of recovery that were asserted, ***or could have been asserted***." *Tahoe Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) (emphasis supplied); *Green v. N. Seattle Cmty College*, 2007 WL 709308, *2 (W.D. Wn. 2007). As the *Green* court observed regarding the "same claim" element (and the only element that ACE attempts to dispute):

> The Court considers the following factors: (a) whether the two suits arise out of the same transactional nucleus of facts; (b) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (c) whether the two suits involved infringement of the same right; and (d) whether substantially the same evidence is presented in the two actions. Whether the two suits arise out of the same transactional "nucleus of facts" is considered the most important of the foregoing factors, often

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

becoming "outcome determinative" as to the first *res judicata* element.

*Id.* (internal citations omitted).  AJMC has satisfied all four factors.

    1.  <u>The two suits arise out of the same transactional nucleus of facts.</u>

Here, the claims asserted in *Roth* regarding the photo album and the claim asserted here regarding the photo album arise out of the same nucleus of facts.  In *Roth*, ACE alleged it owned the intellectual property rights to the ACE Alaska Map Photo Album Design and that Roth's photo albums were illicit copies of that ACE Design.  McBrayer Decl., Ex. 14, p. 5; Keyes Aff., Ex. 18, pp. 6-7 (ACE 30(b)(6) Dep., p. 113, lns. 13-25; p. 114, lns. 1-18).  Roth alleged that she had the rights to create her photo albums <u>because she had a license from Coates to use his IAAC Alaska Map Photo Album Design</u>.  Keyes Aff., Ex. 10, ¶¶ 5-6; Coates Aff., ¶ 6; Ex. 3, p. 7, lns. 7-11; Keyes Aff., Ex. 11, p. 5 ("Roth 2004 Depo.") at p. 86, lns. 5-16; p. 88, lns. 4-10.

Similarly, in this case, ACE alleges AJMC copied the ACE Design and AJMC has alleged—just like Roth did previously—that it had the right to sell the accused photo albums because Mr. Coates owned the rights to the IAAC Alaska Map Photo Album Design.  Compare McBrayer Decl., Ex. 18, p. 13, ¶ 18 with Coates Aff., ¶ 5.  Thus, the critical fact in both cases is Coates' ownership of the IAAC Alaska Map Photo Album Design.  The ownership to the IAAC Alaska Map Photo Album Design (and any and all claims of any nature whatsoever known or unknown regarding that ownership) was resolved in the Roth case and ACE is precluded from bringing this cause of action that seeks to relitigate that issue.

The fact that Coates had not manufactured additional copies of the IAAC Alaska Map Photo Album Design until 2006 is irrelevant for purposes of *res judicata*.  What is relevant is that

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC    -18-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\BCK\BCK_P213I

ACE could have previously brought a claim against Coates to preclude him and his businesses from selling the IAAC Alaska Map Photo Album Design. ACE chose not to do so.[3]

Contrary to ACE's argument, the facts of this case are not at all like the facts of *Hispec v. Tredit Tire and Wheel Co., Inc.,* 2007 WL 101827, Slip Opinion (N.D. Ind. 2007). There, the defendant had previously signed a settlement agreement expressly acknowledging that its prior actions of selling the "Series #35 wheel" was "in violation of [plaintiff's] trademark rights relating to the Series #4 Wheel." *Id.* at *2. Also, under the terms of the settlement in that case, the Defendants agreed to "forever cease selling or advertising its Series #35 Wheel." *See* Keyes Suppl. Decl., ¶ 12, Ex. 2 at ¶ 10. Not surprisingly, the court found that the alleged trademark infringement caused by the defendant's sale of the Series #35 Wheel that took place post-settlement was a "new wrong" and was not precluded by the prior suit. *Hispec,* 2007 WL 101827 at *2-3. Here, unlike the situation in *Hispec,* neither Coates nor AJMC signed any such statement admitting that they violated ACE's rights in the Roth Litigation. Further, unlike the defendant in *Hispec,* neither Coates nor AJMC ever agreed to stop selling or manufacturing any photo albums based upon the IAAC Alaska Map Photo Album Design. Quite the contrary, the Roth Settlement Agreement <u>forever</u> released Coates and AJMC from any and all claims of any nature whatsoever arising out of

---

[3] ACE's reliance on *Lawlor* is also misplaced. ACE Memorandum, p. 26-28. In *Lawlor,* "new antitrust violations [were] alleged in the second action-deliberately slow deliveries and tie-in sales, among others," and that "there was a substantial change in the scope of the defendants' alleged monopoly. . . ." *Lawlor v. Nat'l Screen Service Corp.,* 349 U.S. 322, 328 (1955). Because all of the conduct that gave rise to the second suit occurred after the termination of the first suit, and because what was challenged in the second suit included significant kinds of activities not alleged in the first, the Court held *res judicata* did not apply. The facts presented here are wholly distinguishable as ACE's claim against AJMC necessarily turns on ACE challenging Coates' ownership of the IAAC Alaska Map Photo album Design.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

any facts alleged in any pleading in the Litigation. The differences between the facts in *Hispec* and the facts presented here could not be clearer. *Res judicata* bars this claim.

2. <u>Coates' ownership of the IAAC Alaska Map Photo Album Design that was established in the Roth Litigation would be impaired by the present action against AJMC.</u>

As a result of the settlement in the Roth suit, Coates was released from any and all liability of any nature regarding his claim to ownership of the IAAC Alaska Map Photo Album Design. If the present suit were allowed to go forward, it would obliterate the release that Coates received because neither he nor his businesses would be immune from suit for selling copies of the IAAC Alaska Map Photo Album Design.

3. <u>Both suits involve the alleged infringement of the same right.</u>

The same right is identical in both cases—the supposed intellectual property right owned by ACE in its Alaska Map Photo Album Design. *Compare* Complaint, filed July 7, 2006 *with* Keyes Aff., Ex. 18, p. 5 (ACE 30(b)(6) Dep., p. 88, lns. 11-25; p. 89, lns. 1-2).

4. <u>Substantially the same evidence would be presented in both actions.</u>

In both cases, ACE would present its supposed claim to ownership of the Alaska Map Photo Album Design. Similarly, both cases would require the exact same evidence regarding Coates' claim to ownership of the IAAC Alaska Map Photo Album Design. Thus, substantially the same evidence would be presented.

For all of these reasons, the court should find that *res judicata* bars the present claim.

F. **<u>ACE's cross-motion for summary judgment fails as ACE is wrong on the facts and the law.</u>**

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ACE is not entitled to partial summary judgment for two reasons. First, several of the facts that ACE cites are either disputed, incorrect legal conclusions, or both. Second, the law relied upon by ACE is inapposite and wholly inapplicable here.

ACE supports its motion with disputed facts and erroneous legal conclusions. For example, ACE's "Fact No. 1" regarding the validity of its supposed copyright is disputed. Although ACE claims that "an embossed map was not on the market [in 1998]" and its Alaska map photo album design was "an original creation", other Alaska gift and souvenir designers and importers dispute this. McBrayer Decl., Ex. 6, p. 5 (ACE 30(b)(6) Dep., p. 26, lns. 3-8). James Cottrell, the owner of JC Marketing, created an "embossed, souvenir album with the word 'Alaska' on them and the state of Alaska" in 1994. Keyes Supplemental Aff., Ex. 1 (Cottrell Dep., p. 9, lns. 13-18; p. 22, lns. 9-14). According to Cottrell, these elements were all incorporated by ACE into its Alaska Map Photo Album at issue in this suit. *Id.* Mr. Cottrell's testimony echoes Ms. Roth's claims that it is ACE that "knocked off" designs from other producers. *Compare* McBrayer Decl., Ex. 16, p. 12, ¶ 49 *with* Keyes Suppl. Aff., Cottrell Dep., p. 23, lns. 10-15 (ACE "like[s] to copy people. They copied me. They copied my other colleagues in the industry.")

"Fact No. 2" claims that the Roth Litigation was confined to two photo albums. This misstates the facts in that action. The IAAC Alaska Map Photo Album Design was the basis of the Roth "accused albums." *See* Keyes Aff., Ex. 11, p. 5 ("Roth 2004 Depo.") at p. 86, lns. 5-16; p. 88, lns. 4-10; Coates Aff., ¶ 8.

"Fact No. 3" claims that the Roth Settlement "did not cover claims based upon future conduct." This is not a "fact", but a legal conclusion, and one that is demonstrably incorrect as

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

already set forth above in Sections B and C, *supra*. The Roth Settlement Agreement unambiguously is future-oriented.

"Fact No. 4" directly violates the parol evidence rule. *See* Section C.

"Fact No. 5" is immaterial and, based on its own concessions regarding the IAAC Design, untrue. *See* ACE Memorandum pp. 4-5. The scope of the release extinguished any and all claims of any nature whatsoever arising out of any facts alleged in any pleading in the Roth Litigation. The fact that Coates had a new batch of IAAC Alaska Map Photo Albums created in 2006, does not take away from the scope of the release. *See, supra*, p. 7; *Augustine Medical*, 194 F.3d at 1373.

The "legal authority" relied on by ACE in support of its motion for partial summary judgment has no applicability here. Despite offering *Asmus v. Pacific Bell* in support of its proposition that it is entitled to summary judgment based on the Release Language, the question of law to be answered by the court was "[o]nce an employer's unilaterally adopted policy-which requires employees to be retained so long as a specified condition does not occur-has become a part of the employment contract, may the employer thereafter unilaterally rescind the policy, even though the specified condition has not occurred?" 159 F.3d 422, 424 (9th Cir. 1998). Apparently ACE relies on the court's note in passing that "The district court granted summary judgment in favor of the defendants on all claims brought by the 52 appellants who signed releases. We affirmed the district court's decision on these issues." *Id.* However, under no reading can that case support ACE's claim that this court should disregard the language of the Roth Settlement Agreement and Mutual Release in favor of ACE's 30(b)(6) deposition testimony that the Release was limited to "existing inventory" and prohibited Roth from future production  McBrayer Decl., Ex. 6, pp. 9-10 (ACE's 30(b)(6) Dep. p. 127, lns. 1-21; p. 129, lns. 23-25; p. 130, lns. 1-9).

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC                    -22-
Case No.   3:06-cv-00170-TMB
K:\55853\00001\BCK\BCK_P2131

Likewise, *Geol v. Jain* provides no help to ACE. F.Supp.2d 1128 (W.D. Wn. 2003). To the contrary, the Court in *Geol* recognized the hazards of allowing one party to avoid the provisions of its written contract through subsequent testimony. *See id.* at 1138 ("If the Court were to allow plaintiff to avoid the clear and unambiguous terms of the release, not to mention the [ ] Agreement's integration clause, 'contracts would not be worth the paper on which they are written.'").

In sum, ACE is not entitled to partial summary judgment because it relies on disputed facts, legal conclusions that are directly contradicted by the express terms of the Roth Settlement Agreement, and legal authority that has no application in any event. The motion for partial summary judgment should be denied.

**G.    An award of attorneys' fees is warranted here based on the express terms of the Roth Settlement Agreement extinguishing ACE's claims against Coates and AJMC.**

AJMC should be awarded its attorneys' fees. In *Fogerty v. Fantasy, Inc.*, the Supreme Court determined that attorney fees may be awarded as a matter of the court's discretion and that prevailing plaintiffs and prevailing defendants are to be treated alike. 510 U.S. 517, 534 (1994). Unlike the rule advocated by ACE, "[t]here is no precise rule or formula for making these determinations. . . ." *Id.* Factors such as "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence . . . may be used to guide courts' discretion. . . ." *Id.* Here, the record is clear that AJMC advised ACE prior to date set for 26(a) disclosures and before either party incurred the costs attendant to discovery that ACE's claims were barred by the Roth Settlement Agreement. Keyes Aff., Ex. 17. AJMC's counsel also indicated that if ACE refused to dismiss this action, AJMC

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE (907) 276-1969

would "move forward with defending the case" and "ask the court to award our fees and costs upon prevailing." Keyes Aff., Ex. 17. ACE refused to dismiss the suit. Despite this evidence, ACE now claims that even if AJMC is wholly successful on its motion AJMC is not entitled to an award of attorney fees. *See* ACE Memorandum at p. 32. Simply put, ACE's claims could and should have been asserted in the prior action. ACE's failure to do so and the attendant costs imposed on the court system and AJMC would be remedied by an award of attorneys' fees against ACE.[4]

## IV.  CONCLUSION

For all of these reasons, this Court should enter summary judgment in favor of AJMC and should award it its attorneys' fees and costs.

---

[4] Lastly, AJMC did not make any "footnote motions", whatever that means. ACE for some reason seems troubled by AJMC asserting that ACE LLC lacks the right to bring this suit. Only the copyright owner is entitled to bring an action to enforce its rights. *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2nd Cir. 1991) ("the Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf.") On April 20, 2007, ACE LLC produced a document that purportedly shows the LLC's ownership of copyrights filed in the name of a corporation. Mitchell Aff., Ex. 1 (ACE-000720-764). This production came over six months after ACE's 26(a) disclosures were due and over fifty days after discovery closed. AJMC's original objection to ACE LLC prosecuting this action was simply made to put ACE LLC on notice. Similarly, ACE also failed to obtain an assignment from Pam Ruatto, the individual who claims to have designed the Alaska map used by ACE. *See* ACE Memorandum p. 30. ACE filed its lawsuit against AJMC in July of 2006 and then waited until September 2006 before obtaining an assignment from Ms. Ruatto. McBrayer Decl., Ex. 6, p. 7 (ACE 30(b)(6) Dep., p. 69, lns. 2-12) Notably, the assignment from Ms. Ruatto lacks any assignment of accrued causes of action and AJMC was simply pointing out that undeniable deficiency as well.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

DATED this 14th day of May, 2007.

KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP

By   /s/ J. Michael Keyes
    J. Michael Keyes, *Pro Hac Vice*
    Email:  mike.keyes@klgates.com
    Gregory F. Wesner, *Pro Hac Vice*
    Email:  gregory.wesner@klgates.com
    Attorneys for Defendant
    Alaska-Juneau Mining Company LLC
    KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
    618 West Riverside Avenue, Suite 300
    Spokane, WA  99201
    Telephone No.:  509-624-2100

    Paul L. Davis
    Email:  paul.davis@klgates.com
    Attorneys for Defendant
    KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
    420 L Street, Suite 400
    Anchorage, AK  99501-1971
    Telephone No.:  907-276-1969
    Fax: 907-276-1365

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE: (907) 276-1969

## CERTIFICATE OF SERVICE

I hereby certify that on May 14th, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

James N. Leik, jleik@perkinscoie.com

Ramsey M. Al-Salam, RalSalam@perkinscoie.com

Ryan McBrayer, RMcBrayer@perkinscoie.com

By  /s/ J. Michael Keyes
    J. Michael Keyes, *Pro Hac Vice*
    KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
    618 W. Riverside Ave. #300
    Spokane, WA  99201
    Telephone:  509-624-2100
    Facsimile:  509-456-0146
    Email:  mike.keyes@klgates.com
    Attorneys for Defendant
    Alaska-Juneau Mining Company LLC

ARCTIC CIRCLE ENTERPRISES vs.
ALASKA-JUNEAU MINING COMPANY LLC    -26-
Case No.    3:06-cv-00170-TMB
K:\55853\00001\BCK\BCK_P213I

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1971
TELEPHONE (907) 276-1969